# EXHIBIT 1

*received certified 5.2.11*

# NIRO, HALLER & NIRO

RAYMOND P. NIRO
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE
DAVID J. SHEIKH
VASILIOS D. DOSSAS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS
PAUL C. GIBBONS

181 WEST MADISON STREET - SUITE 4600

CHICAGO, ILLINOIS 60602
——

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

GREGORY P. CASIMER
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK
KARA L. SZPONDOWSKI
ROBERT A. CONLEY
LAURA A. KENNEALLY
TAHITI ARSULOWICZ
BRIAN E. HAAN
JOSEPH A. CULIG
ANNA B. FOLGERS
CHRISTOPHER W. NIRO
DANIEL R. FERRI
GABRIEL I. OPATKEN
OLIVER D. YANG

OF COUNSEL:
JOHN C. JANKA

April 27, 2011

## VIA CERTIFIED MAIL

Writer's E-mail: mmcandrews@nshn.com
Writer's Direct: (312) 377-3291

Mr. Leigh Perkins Sr.
Chairman
The Orvis Company, Inc.
178 Conservation Way
Sunderland, VT 05250

     Re:   Innovatio IP Ventures, LLC

Dear Mr. Perkins:

     We represent Innovatio IP Ventures, LLC ("Innovatio") in the licensing and enforcement of its patent portfolio, which has broad application in the field of wireless local area network ("WLAN") technology (popularly referred to as "Wi-Fi"), including the emerging field of wireless "mesh" networking. The Innovatio portfolio currently includes 31 issued United States patents (collectively, "the Innovatio Patents"). The issued Innovatio Patents are:

| U.S. Patent No. 5,295,154 | U.S. Patent No. 7,386,002 |
| U.S. Patent No. 5,428,636 | U.S. Patent No. 7,457,646 |
| U.S. Patent No. 5,504,746 | U.S. Patent No. 7,483,397 |
| U.S. Patent No. 5,546,397 | U.S. Patent No. 7,535,921 |
| U.S. Patent No. 5,673,031 | U.S. Patent No. 7,536,167 |
| U.S. Patent No. 5,740,366 | U.S. Patent No. 7,548,553 |
| U.S. Patent No. 5,844,893 | U.S. Patent No. 7,552,246 |
| U.S. Patent No. 5,940,771 | U.S. Patent No. 7,558,557 |
| U.S. Patent No. 6,046,992 | U.S. Patent No. 7,710,907 |
| U.S. Patent No. 6,374,311 | U.S. Patent No. 7,710,935 |
| U.S. Patent No. 6,665,536 | U.S. Patent No. 7,826,818 |
| U.S. Patent No. 6,697,415 | U.S. Patent No. 7,856,003 |
| U.S. Patent No. 6,714,559 | U.S. Patent No. 7,873,343 |
| U.S. Patent No. 6,826,165 | U.S. Patent No. 7,916,747 |
| U.S. Patent No. 7,013,138 | U.S. Patent No. 7,917,145 |
| U.S. Patent No. 7,107,052 | |

The Orvis Company, Inc.
April 27, 2011
Page 2 of 4


The newest members of the Innovatio portfolio, U.S. Patent Nos. 7,916,747 and 7,917,145, issued just recently on March 29, 2011. We encourage you to obtain copies of the Innovatio Patents, which you can download free of charge from the United States Patent and Trademark Office's website at www.uspto.gov or the free online service "PAT2PDF" at www.pat2pdf.org.

Our purpose in writing is threefold. First, we wish to specifically acquaint The Orvis Company, Inc. ("Orvis") with the Innovatio Patents, which are controlling patents in the area of WLAN (e.g., Wi-Fi) and mesh networking technologies. In this regard, we have identified the Innovatio Patents above and asked that you obtain copies of those patents for your review and analysis. Further, as discussed in greater detail below, this notifies Orvis of its likely infringement of the Innovatio Patents. And, finally, we write to offer Orvis a license with highly favorable terms under the Innovatio Patents. The general terms of Innovatio's licensing offer are summarized in the last section of this letter below.

### The Methods and Systems at Issue

Although an exhaustive analysis of infringement of the Innovatio Patents by Orvis is beyond the scope of this letter, the following generally summarizes its likely areas of infringement:

### 1. WLANs Used in Business Operations

Orvis infringes numerous of the Innovatio Patents to the extent it operates WLANs deployed in any manufacturing, distribution, retail, inventory management, warehousing, industrial monitoring or control, "smart energy," or corporate office environments. Claims of the Innovatio Patents cover, among other things, WLANs that use the IEEE 802.11 communication protocols. The operation and use of any such systems by Orvis would constitute infringement of, by way of example and not limitation, claims of at least the following Innovatio Patents:

| | |
|---|---|
| U.S. Patent No. 5,546,397 | U.S. Patent No. 7,457,646 |
| U.S. Patent No. 5,740,366 | U.S. Patent No. 7,535,921 |
| U.S. Patent No. 5,844,893 | U.S. Patent No. 7,536,167 |
| U.S. Patent No. 5,940,771 | U.S. Patent No. 7,548,553 |
| U.S. Patent No. 6,374,311 | U.S. Patent No. 7,558,557 |
| U.S. Patent No. 6,665,536 | U.S. Patent No. 7,710,907 |
| U.S. Patent No. 6,697,415 | U.S. Patent No. 7,826,818 |
| U.S. Patent No. 6,714,559 | U.S. Patent No. 7,873,343 |
| U.S. Patent No. 7,013,138 | U.S. Patent No. 7,916,747 |
| U.S. Patent No. 7,386,002 | U.S. Patent No. 7,917,145 |

The Orvis Company, Inc.
April 27, 2011
Page 3 of 4

To the extent Orvis has implemented mesh networking technology in any of the environments identified above, it likely infringes claims of the 20 Innovatio Patents identified immediately above as well as, by way of example and not limitation, claims of at least the following additional Innovatio Patents:

U.S. Patent No. 5,295,154
U.S. Patent No. 5,428,636
U.S. Patent No. 5,504,746
U.S. Patent No. 6,046,992
U.S. Patent No. 6,826,165
U.S. Patent No. 7,483,397

## 2.  WLANs Providing User-Level "Hotspot" Services to the Public

Orvis further infringes numerous of the Innovatio Patents to the extent it operates WLANs at its retail locations, which networks provide Orvis customers and/or employees wireless network access.  Locations that provide this type of service are frequently (but not always) referred to as "hotspots."  Certain companies charge users for use of their hotspot; others provide hotspot connectivity free of charge as a value-added service.

The operation and use of any such hotspot-type systems by Orvis would constitute infringement, including contributing to or inducing infringing operation or use by others, of, by way of example and not limitation, claims of at least the following Innovatio Patents:

| | |
|---|---|
| U.S. Patent No. 5,546,397 | U.S. Patent No. 7,457,646 |
| U.S. Patent No. 5,740,366 | U.S. Patent No. 7,535,921 |
| U.S. Patent No. 5,844,893 | U.S. Patent No. 7,536,167 |
| U.S. Patent No. 5,940,771 | U.S. Patent No. 7,548,553 |
| U.S. Patent No. 6,374,311 | U.S. Patent No. 7,558,557 |
| U.S. Patent No. 6,665,536 | U.S. Patent No. 7,710,907 |
| U.S. Patent No. 6,697,415 | U.S. Patent No. 7,826,818 |
| U.S. Patent No. 6,714,559 | U.S. Patent No. 7,873,343 |
| U.S. Patent No. 7,013,138 | U.S. Patent No. 7,916,747 |
| U.S. Patent No. 7,386,002 | U.S. Patent No. 7,917,145 |

## Innovatio's Proposed License

Innovatio proposes that the most reasonable, practical, and economical course of action is for the parties to amicably and promptly resolve issues relating to the use of Innovatio Patents through a suitable negotiated licensing arrangement.  To that end, and to encourage the continued use of Innovatio's essential patented technology in the marketplace, Innovatio proposes granting Orvis an upfront, paid-up license for its use under all of 31 of the issued Innovatio Patents.  The amount of Innovatio's paid-up license fee will be determined by the specific nature and extent of

The Orvis Company, Inc.
April 27, 2011
Page 4 of 4

the use of WLAN (e.g., Wi-Fi) and meshing networking technologies by Orvis covered by the
Innovatio Patents. Innovatio will also discount the license fee if the parties are able to finalize a
suitable license within the next 30 days.

      Please contact me at your earliest possible convenience to discuss this important matter,
and thank you in advance for considering Innovatio's licensing proposal. I can be reached at
direct dial (312) 377-3292 or e-mail address mmcandrews@nshn.com.

Very truly yours,

Matthew G. McAndrews

# EXHIBIT 2

## Enterprise networking equipment markets down in 1Q11

Boston, MASSACHUSETTS, June 10, 2011—Market research firm Infonetics Research today released excerpts from 3 first quarter 2011 (1Q11) enterprise networking market share reports: *Ethernet Switches*, *Wireless LAN Equipment and WiFi Phones* and *Enterprise Routers*.

### ANALYST NOTE

"Enterprise network equipment sales fell across the board in the first quarter of 2011, partially due to seasonality, partially due to hiccups in the economic recovery as public sector spending dries up. But not all segments are faring equally: wireless LAN equipment is proving resilient, with global revenue up 17% from this time last year. Enterprises and SMBs are building out their wireless infrastructure to lay the foundation for a new generation of devices, particularly tablets, that can only connect wirelessly to the network," notes Matthias Machowinski, directing analyst for enterprise networks and video at Infonetics Research.

### ETHERNET SWITCH MARKET HIGHLIGHTS

- After a growth streak throughout 2010 that propelled the enterprise Ethernet switching market to record levels, worldwide revenue was down 12% sequentially to $4.2 billion in 1Q11, and 9% lower year-over-year (from 1Q10)
- Weakness in the public sector vertical due to sun-setting stimulus programs and pressure on government budgets contributed to the decline, and will be a drag on market growth for the rest of the year
- Almost every vendor posted negative revenue results in 1Q11 compared with 4Q10, with #1 Cisco down 14%, #2 HP down 3%, and #3 Juniper down 23%
- Only 3 vendors--Avaya, Force10, and Adtran--bucked the downward trend, each posting global Ethernet switch revenue gains ranging from 1.5% (Avaya) to 24% (Adtran)

### WIRELESS LAN MARKET HIGHLIGHTS

- After a record fourth quarter at the end of 2010, worldwide WLAN equipment revenue decreased 8% in 1Q11, to $698 million, due to ASP pressure, a seasonal decline in APAC, and slowing public sector sales
- Global WLAN equipment revenue is up a healthy 17% year-over-year (1Q10 to 1Q11), continuing a trend of strong double-digit YoY growth for 6 quarters in a row
- In 4Q10, 802.11n access points APs outnumbered legacy a/b/g APs for the first time, and the march toward 802.11n continues: in 1Q11, 11n APs were up 4% sequentially, while legacy APs declined 9%

### ENTERPRISE ROUTER MARKET HIGHLIGHTS

- Worldwide enterprise router sales totaled $797 million in 1Q11, down 14% sequentially and down 3% from a year ago in 1Q10, marked by declining mid-range router sales and strong low-end sales
- All major world regions saw sequential declines in enterprise router sales in 1Q11, and only Asia Pacific and Central and Latin America posted increases year-over-year (from 1Q10), lifted by the financial sector, and, counter to the worldwide trend, the public sector
- **Cisco** is the biggest enterprise router vendor by far (77% of revenue)
- **HP** moved into second place for the first time (6% revenue share), lifted by their exposure to the Chinese market

### REPORT SYNOPSES

Infonetics' quarterly Ethernet switch report tracks Adtran, Alcatel-Lucent, Alaxala, Arista, Avaya, Blade, Brocade, Cisco, D-Link, Enterasys, Extreme, Force10, Hitachi Cable, HP, H3C, Huawei, Juniper, Linksys, NETGEAR, LG-Ericsson, and others. The report provides market size, market share, forecasts through 2015, and analysis for fixed configuration and chassis Ethernet switches by port type (100M, 1G copper/fiber, 10G copper/fiber; PoE, non-PoE). In addition, fixed Ethernet switches are tracked by layer (L2, L3) and management (unmanaged, web managed, fully managed).

Infonetics' quarterly wireless LAN and WiFi phones report provides market size, market share, analysis, and forecasts through 2015 for dependent, independent, and outdoor access points, WLAN controllers, and enterprise single-mode WiFi phones. Companies tracked include Alcatel-Lucent, Aruba, BelAir, Buffalo, Cisco, D-Link, Enterasys, Extreme, Meru, Motorola, NETGEAR, Polycom, HP, H3C, Proxim, Ruckus, LG-Ericsson, Trapeze, Xirrus, and others.

Infonetics' quarterly enterprise router report tracks Adtran, Alcatel-Lucent, Avaya, Cisco, HP, H3C, Huawei, Juniper, OneAccess, and others. The report provides worldwide and regional market share, market size, forecasts, and analysis for high-end, mid-range, branch, and low-end/SOHO routers, including port detail (T1/E1/J1, T3/E3/J3, OC3/STM1, OC12/STM4 and other ports).

### CLIENT CONFERENCE CALL

- Wireless LAN Equipment and WiFi Phones telebriefing: **Wednesday, June 15** at **12:00 PM** Eastern
- Ethernet Switches telebriefing: **Thursday, June 23** at **11:00 AM** Eastern

### SALES

- **Larry Howard**, Vice President: larry@infonetics.com, +1 (408) 583-3335
- Scott Coyne, Senior Account Director, scott@infonetics.com, +1 (408) 583-3395

- **George Stojsavljevic**, Senior Account Director (EMEA), george@infonetics.com, +44-755-488-1623

**RECENT AND UPCOMING ENTERPRISE NETWORKING RESEARCH**

To download report prospectuses, tables of contents, highlights, etc., log in to http://www.infonetics.com/login and go to RESEARCH, then ENTERPRISE NETWORKING.

- Network attached storage (NAS) appliance market to double by 2015
- High speed network port market to hit $52 billion in 2015 (1G, 10G, 40G, 100G)
- Total Enterprise and Service Provider Routers Pivot
- Total Enterprise and Carrier Ethernet Switches Pivot
- Total Enterprise Network Equipment Pivot
- 1G/10G/40G/100G Networking Ports
- Ethernet Switch Vendor Leadership: North American Enterprise Survey
- 10G/40G/100G & Desktop 1G Strategies & Traffic Drivers: N.A. Enterprise Survey

Infonetics Research (www.infonetics.com) is an international market research and consulting firm serving the communications industry since 1990. A leader in defining and tracking emerging and established technologies in all world regions, Infonetics helps clients plan, strategize, and compete more effectively.

Follow Infonetics on Twitter for the latest headlines: http://twitter.com/infonetics.



## Year-over-year wireless LAN equipment vendor market share standings (worldwide revenue)

| Vendor | 1Q10 Share | 1Q11 Share | % Point Change |
|--------|-----------|-----------|----------------|
| Cisco | 48.2% | 49.3% | ▲ 1.1 |
| Aruba | 7.8% | 11.4% | ▲ 3.7 |
| HP | 6.2% | 6.6% | ▲ 0.4 |
| Motorola | 6.7% | 4.8% | ▼ -2.0 |
| Meru | 2.2% | 2.3% | ▲ 0.1 |
| Other | 28.9% | 25.6% | ▼ -3.3 |

© Infonetics Research, *Wireless LAN Equipment and WiFi Phones Quarterly Market Size, Share, and Forecasts*, May 2011

Case: 1:11-cv-09309 Document #: 14-1  Filed: 07/25/11 Page 11 of 182 PageID #:760



# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| INNOVATIO IP VENTURES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ABP CORPORATION; ACCOR NORTH AMERICA; CARIBOU COFFEE CO., INC.; CBC RESTAURANT CORP.; COSI, INC.; DOMINICK'S SUPERMARKETS, INC.; KIMPTON HOTEL & RESTAURANT GROUP, LLC; LQ MANAGEMENT LLC; MEIJER, INC. and PANERA BREAD COMPANY,<br><br>Defendants. | Civil Action No. 11-cv-1638<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Innovatio IP Ventures, LLC ("Innovatio"), by and through its undersigned counsel, alleges as follows:

### THE PARTIES

1.      Plaintiff Innovatio is a corporation organized under the laws of the State of Delaware and has a place of business at 22 West Washington Street, Suite 1500, Chicago, Illinois 60602.

2.      On information and belief, Defendant ABP Corporation is a corporation organized under the laws of the State of Delaware, has a principal

place of business at 1 Au Bon Pain Way, Boston, Massachusetts 02210, and has about 18 locations in Illinois, including locations within this District.

3.      On information and belief, Defendant Accor North America is a corporation organized under the laws of the State of Delaware, has a principal place of business at 4001 International Parkway, Carrollton, Texas 75007, and has about 28 locations in Illinois, including locations within this District.

4.      On information and belief, Defendant Caribou Coffee Co., Inc. is a corporation organized under the laws of the State of Minnesota, has a principal place of business at 3900 Lake Breeze Avenue North, Brooklyn Center, Minnesota 55430, and has about 59 locations in Illinois, including locations within this District.

5.      On information and belief, Defendant CBC Restaurant Corp. is a corporation organized under the laws of the State of California, has a principal place of business at 12700 Park Central Drive, Suite 1300, Dallas, Texas 75251, and has about 34 locations in Illinois, including locations within this District.

6.      On information and belief, Defendant Cosi, Inc. is a corporation organized under the laws of the State of Delaware, has a principal place of business at 1751 Lake Cook Road, Suite 600, Deerfield, Illinois 60015, and has about 15 locations in Illinois, including locations within this District.

7.     On information and belief, Defendant Dominick's Supermarkets, Inc. is a corporation organized under the laws of the State of Delaware, has a principal place of business at 711 Jorie Blvd., Oak Brook, Illinois 60523, and has about 80 locations in Illinois, including locations within this District.

8.     On information and belief, Defendant Kimpton Hotel & Restaurant Group, LLC is a corporation organized under the laws of the State of Delaware, has a principal place of business at 222 Kearney Street, Suite 200, San Francisco, California 94108, and has about 4 locations in Illinois, including locations within this District.

9.     On information and belief, Defendant LQ Management LLC is a corporation organized under the laws of the State of Delaware, has a principal place of business at 909 Hidden Ridge, Suite 600, Irving, Texas 75038, and has at least 13 locations within this District.

10.     On information and belief, Defendant Meijer, Inc. is a corporation organized under the laws of the State of Michigan, has a principal place of business at 2929 Walker Avenue NW, Grand Rapids, Michigan 49544, and has about 17 locations in Illinois, including locations within this District.

11.     On information and belief, Defendant Panera Bread Company is a corporation organized under the laws of the State of Delaware, has a principal place of business at 6710 Clayton Road, Richmond Heights, Missouri 63117, and

has about 103 locations in Illinois, including locations within this District.   The

Defendants identified in paragraphs 2-11 above are hereinafter referred to

collectively as "Defendants."

## JURISDICTION AND VENUE

12.     This action arises under the Patent Laws of the United States, 35

U.S.C. § 1 *et seq*.  This Court has jurisdiction over the subject matter of this action

under 28 U.S.C. §§ 1331 and 1338(a).

13.     This Court has personal jurisdiction over the Defendants.

14.     Venue for this action is proper in this district pursuant to 28 U.S.C. §§

1391 and 1400(b).

## PATENTS-IN-SUIT

15.     On March 30, 2004, the USPTO duly and legally issued U.S. Patent

No. 6,714,559 ("the '559 Patent") titled "Redundant Radio Frequency Network

Having A Roaming Terminal Communication Protocol."  A copy of the '559

Patent is attached as Exhibit A.

16.     On June 10, 2008, the USPTO duly and legally issued U.S. Patent No.

7,386,002 ("the '002 Patent") titled "Redundant Radio Frequency Network Having

A Roaming Terminal Communication Protocol." A copy of the '002 Patent is attached as Exhibit B.

17. On May 19, 2009, the USPTO duly and legally issued U.S. Patent No. 7,535,921 ("the '921 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '921 Patent is attached as Exhibit C.

18. On June 16, 2009, the USPTO duly and legally issued U.S. Patent No. 7,548,553 ("the '553 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '553 Patent is attached as Exhibit D.

19. On April 14, 1998, the USPTO duly and legally issued U.S. Patent No. 5,740,366 ("the '366 Patent") titled "Communication Network Having Plurality Of Bridging Nodes Which Transmit A Beacon To Terminal Nodes In Power Saving State That It Has Messages Awaiting Delivery." A copy of the '366 Patent is attached as Exhibit E.

20. On August 17, 1999, the USPTO duly and legally issued U.S. Patent No. 5,940,771 ("the '771 Patent") titled "Network Supporting Roaming, Sleeping Terminals." A copy of the '771 Patent is attached as Exhibit F.

21. On April 16, 2002, the USPTO duly and legally issued U.S. Patent No. 6,374,311 ("the '311 Patent") titled "Communication Network Having A Plurality

Of Bridging Nodes Which Transmit A Beacon To Terminal Nodes In Power Saving State That It Has Messages Awaiting Delivery."  A copy of the '311 Patent is attached as Exhibit G.

22.     On November 25, 2008, the USPTO duly and legally issued U.S. Patent No. 7,457,646 ("the '646 Patent") titled "Radio Frequency Local Area Network."  A copy of the '646 Patent is attached as Exhibit H.

23.     On August 13, 1996, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 5,546,397 ("the '397 Patent") titled "High Reliability Access Point For Wireless Local Area Network."  A copy of the '397 Patent is attached as Exhibit I.

24.     On December 1, 1998, the USPTO duly and legally issued U.S. Patent No. 5,844,893 ("the '893 Patent") titled "System For Coupling Host Computer Means With Base Transceiver Units On A Local Area Network."  A copy of the '893 Patent is attached as Exhibit J.

25.     On December 16, 2003, the USPTO duly and legally issued U.S. Patent No. 6,665,536 ("the '536 Patent") titled "Local Area Network Having Multiple Channel Wireless Access."  A copy of the '536 Patent is attached as Exhibit K.

26.     On February 24, 2004, the USPTO duly and legally issued U.S. Patent No. 6,697,415 ("the '415 Patent") titled "Spread Spectrum Transceiver Module

Utilizing Multiple Mode Transmission." A copy of the '415 Patent is attached as Exhibit L.

27.     On March 14, 2006, the USPTO duly and legally issued U.S. Patent No. 7,013,138 ("the '138 Patent") titled "Local Area Network Having Multiple Channel Wireless Access." A copy of the '138 Patent is attached as Exhibit M.

28.     On May 4, 2010, the USPTO duly and legally issued U.S. Patent No. 7,710,907 ("the '907 Patent") titled "Local Area Network Having Multiple Channel Wireless Access." A copy of the '907 Patent is attached as Exhibit N. The fourteen patents identified in paragraphs 15-28 are hereinafter referred to collectively as the "WLAN Patents."

29.     Innovatio owns all rights, title, and interest in and to, and has standing to sue for infringement of, the WLAN Patents, including the right to sue for and collect past damages.

## COUNT ONE
## INFRINGEMENT OF THE '559 PATENT

30.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 29 as if fully set forth herein.

31.     Defendants have infringed and continue to infringe at least one claim of the '559 Patent, either literally or by the doctrine of equivalents, either directly, contributorily, by inducement or otherwise, in violation of 35 U.S.C. § 271, by

using one or more wireless local area network ("WLAN") products, systems and/or networks that infringe one or more of the method claims of the '559 Patent.

## COUNT TWO
## INFRINGEMENT OF THE '002 PATENT

32.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 29 as if fully set forth herein.

33.     Defendants have infringed and continue to infringe at least one claim of the '002 Patent, either literally or by the doctrine of equivalents, either directly, contributorily, by inducement or otherwise, in violation of 35 U.S.C. § 271, by using one or more WLAN products, systems and/or networks that infringe one or more of the method claims of the '002 Patent.

## COUNT THREE
## INFRINGEMENT OF THE '921 PATENT

34.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 29 as if fully set forth herein.

35.     Defendants have infringed and continue to infringe at least one claim of the '921 Patent, either literally or by the doctrine of equivalents, either directly, contributorily, by inducement or otherwise, in violation of 35 U.S.C. § 271, by

using one or more WLAN products, systems and/or networks that infringe one or more of the method claims of the '921 Patent.

## COUNT FOUR
## INFRINGEMENT OF THE '553 PATENT

36.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 29 as if fully set forth herein.

37.     Defendants have infringed and continue to infringe at least one claim of the '553 Patent, either literally or by the doctrine of equivalents, either directly, contributorily, by inducement or otherwise, in violation of 35 U.S.C. § 271, by using one or more WLAN products, systems and/or networks that infringe one or more of the method claims of the '553 Patent.

## COUNT FIVE
## INFRINGEMENT OF THE '366 PATENT

38.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 29 as if fully set forth herein.

39.     Plaintiffs believe that a reasonable opportunity for further investigation or discovery will likely show that Defendants have infringed and continue to infringe at least one claim of the '366 Patent, either literally or by the doctrine of equivalents, either directly, contributorily, by inducement or otherwise,

in violation of 35 U.S.C. § 271, by using one or more WLAN products, systems and/or networks that infringe one or more of the claims of the '366 Patent.

## COUNT SIX
## INFRINGEMENT OF THE '771 PATENT

40.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 29 as if fully set forth herein.

41.     Plaintiffs believe that a reasonable opportunity for further investigation or discovery will likely show that Defendants have infringed and continue to infringe at least one claim of the '771 Patent, either literally or by the doctrine of equivalents, either directly, contributorily, by inducement or otherwise, in violation of 35 U.S.C. § 271, by using one or more WLAN products, systems and/or networks that infringe one or more of the claims of the '771 Patent.

## COUNT SEVEN
## INFRINGEMENT OF THE '311 PATENT

42.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 29 as if fully set forth herein.

43.     Plaintiffs believe that a reasonable opportunity for further investigation or discovery will likely show that Defendants have infringed and continue to infringe at least one claim of the '311 Patent, either literally or by the

doctrine of equivalents, either directly, contributorily, by inducement or otherwise, in violation of 35 U.S.C. § 271, by using one or more WLAN products, systems and/or networks that infringe one or more of the claims of the '311 Patent.

## COUNT EIGHT
## INFRINGEMENT OF THE '646 PATENT

44. Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 29 as if fully set forth herein.

45. Plaintiffs believe that a reasonable opportunity for further investigation or discovery will likely show that Defendants have infringed and continue to infringe at least one claim of the '646 Patent, either literally or by the doctrine of equivalents, either directly, contributorily, by inducement or otherwise, in violation of 35 U.S.C. § 271, by using one or more WLAN products, systems and/or networks that infringe one or more of the method claims of the '646 Patent.

## COUNT NINE
## INFRINGEMENT OF THE '397 PATENT

46. Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 29 as if fully set forth herein.

47. Plaintiffs believe that a reasonable opportunity for further investigation or discovery will likely show that Defendants have infringed and

continue to infringe at least one claim of the '397 Patent, either literally or by the doctrine of equivalents, either directly, contributorily, by inducement or otherwise, in violation of 35 U.S.C. § 271, by using one or more WLAN products, systems and/or networks that infringe one or more of the claims of the '397 Patent.

## COUNT TEN
## INFRINGEMENT OF THE '893 PATENT

48.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 29 as if fully set forth herein.

49.     Plaintiffs believe that a reasonable opportunity for further investigation or discovery will likely show that Defendants have infringed and continue to infringe at least one claim of the '893 Patent, either literally or by the doctrine of equivalents, either directly, contributorily, by inducement or otherwise, in violation of 35 U.S.C. § 271, by using one or more WLAN products, systems and/or networks that infringe one or more of the claims of the '893 Patent.

## COUNT ELEVEN
## INFRINGEMENT OF THE '536 PATENT

50.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 29 as if fully set forth herein.

12

51.    Plaintiffs believe that a reasonable opportunity for further investigation or discovery will likely show that Defendants have infringed and continue to infringe at least one claim of the '536 Patent, either literally or by the doctrine of equivalents, either directly, contributorily, by inducement or otherwise, in violation of 35 U.S.C. § 271, by using one or more WLAN products, systems and/or networks that infringe one or more of the claims of the '536 Patent.

## COUNT TWELVE
## INFRINGEMENT OF THE '415 PATENT

52.    Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 29 as if fully set forth herein.

53.    Plaintiffs believe that a reasonable opportunity for further investigation or discovery will likely show that Defendants have infringed and continue to infringe at least one claim of the '415 Patent, either literally or by the doctrine of equivalents, either directly, contributorily, by inducement or otherwise, in violation of 35 U.S.C. § 271, by using one or more WLAN products, systems and/or networks that infringe one or more of the claims of the '415 Patent.

## COUNT THIRTEEN
## INFRINGEMENT OF THE '138 PATENT

54.    Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 29 as if fully set forth herein.

55.    Plaintiffs believe that a reasonable opportunity for further investigation or discovery will likely show that Defendants have infringed and continue to infringe at least one claim of the '138 Patent, either literally or by the doctrine of equivalents, either directly, contributorily, by inducement or otherwise, in violation of 35 U.S.C. § 271, by using one or more WLAN products, systems and/or networks that infringe one or more of the claims of the '138 Patent.

## COUNT FOURTEEN
## INFRINGEMENT OF THE '907 PATENT

56.    Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 29 as if fully set forth herein.

57.    Plaintiffs believe that a reasonable opportunity for further investigation or discovery will likely show that Defendants have infringed and continue to infringe at least one claim of the '907 Patent, either literally or by the doctrine of equivalents, either directly, contributorily, by inducement or otherwise, in violation of 35 U.S.C. § 271, by using one or more WLAN products, systems and/or networks that infringe one or more of the claims of the '907 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Innovatio respectfully requests entry of judgment in its favor and the following relief, including:

A.      That Defendants be adjudged to have infringed one or more claims of each of the WLAN Patents;

B.      That Defendants and all related entities and their officers, agents, employees, representatives, servants, successors, assigns and all persons in active concert or participation with any of them, directly or indirectly, be preliminarily and permanently enjoined from using, or contributing or inducing the use of, any WLAN product, system or network that infringes any WLAN Patent;

C.      That Defendants account for damages sustained by Innovatio as a result of Defendants' infringement of the WLAN Patents, including both pre- and post-judgment interest and costs as fixed by this Court under 35 U.S.C. § 284; and

D.      That the Court grant Innovatio such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Innovatio demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: March 8, 2011            /s/ Matthew G. McAndrews
                                Matthew G. McAndrews

                                Raymond P. Niro, Jr.
                                Brian E. Haan
                                Gabriel I. Opatken
                                NIRO, HALLER & NIRO
                                181 West Madison St., Suite 4600
                                Chicago, Illinois 60602
                                Telephone: (312) 236-0733
                                Facsimile: (312) 236-3137
                                E-mail: rnirojr@nshn.com
                                E-mail: mmcandrews@nshn.com
                                E-mail: bhaan@nshn.com
                                E-mail: gopatken@nshn.com

                                *Attorneys for Plaintiff,*
                                INNOVATIO IP VENTURES, LLC

# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| INNOVATIO IP VENTURES, LLC, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| ABP CORPORATION, et al., | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

Civil Action No. 1:11-cv-01638

District Judge Edmond E. Chang

Magistrate Judge Sidney I. Schenkier

**JURY TRIAL DEMANDED**

## DEFENDANTS' AMENDED MOTION TO STAY THIS MATTER PENDING RESOLUTION OF CISCO SYSTEMS, INC. AND MOTOROLA SOLUTIONS, INC. v. INNOVATIO IP VENTURES, LLC, CASE NO. 1:11-CV-00425 (D. DEL.)

## Table of Contents

**Page**

I.   INTRODUCTION..................................................................................................1

II.  FACTUAL BACKGROUND...............................................................................4
     A.   The Parties, The Patents-In-Suit And The Present Action .......................4
     B.   Innovatio Files Three More Lawsuits Against Other Customer Targets................6
     C.   In Parallel With Its Lawsuits, Innovatio Demands That Numerous Other
          Customer Targets License Its Patents....................................................7
     D.   Cisco And Motorola's Declaratory Judgment Suit Against Innovatio ...................7

III. ARGUMENT .......................................................................................................8
     A.   This Case Should Be Stayed Under The Customer Suit Doctrine...........................8
          1.   A Stay Is Proper Because The Defendants In This Action Are
               Purchasers As Opposed To Suppliers Of The Accused Products...............8
          2.   A Stay Under The Customer Suit Exception Should Apply To Both
               Defendants That Are Customers Of Cisco And Motorola As Well
               As Other Purchasers Of Accused Wi-Fi Equipment..................................10
     B.   This Court Also May Exercise Its Inherent Power To Stay This Case In
          The Interests Of Judicial Economy.......................................................13
          1.   Entry Of A Stay Will Not Prejudice Innovatio.........................................13
          2.   Entry Of A Stay Will Reduce The Burden Of Litigation On The
               Courts And The Parties.............................................................14
          3.   Entry Of A Stay Will Simplify The Issues In Question And
               Streamline Trial ....................................................................14

IV.  CONCLUSION ..................................................................................................15

## Table of Authorities

**Page(s)**

*Card Activation Techs. v. 7-Eleven, Inc.*,
   No. 10-cv-4984, 2011 WL 663960 (N.D. Ill. Feb. 10, 2011) ........................................... 13

*Card Activation Techs. v. Pier 1 Imps., Inc.*,
   No. 09-cv-2021, 2009 WL 2956926 (N.D. Ill. Sep. 14, 2009) ............................ 10, 11, 12

*Clark v. Lacy*,
   376 F.3d 682 (7th Cir. 2004) ........................................................................................ 11

*Commissariat A L'Energie Atomique v. Dell Comp. Corp.*,
   No. 04-cv-1999, 2004 WL 1554382 (D. Del. May 13, 2004) ...................................... 8, 15

*Delphi Corp. v. Auto. Techs. Int'l, Inc.*,
   No. 08-cv-11048, 2008 WL 2941116 (E.D. Mich. July 25, 2008)..................................... 9

*Honeywell Int'l Inc. v. Audiovox Commc'ns. Corp.*,
   No. 04-cv-1337, 2005 WL 2465898 (D. Del. May 18, 2005) ........................................ 12

*In re Cygnus Telecomms. Tech. LLC*,
   536 F.3d 1343 (Fed. Cir. 2008)...................................................................................... 11

*In re Papst Licensing GmbH & Co. KG Litig.*,
   – F.Supp.2d –, 2011 WL 350427 (D.D.C. Feb. 2, 2011) ................................................. 8

*Kahn v. Gen. Motors Corp.*,
   889 F.2d 1078 (Fed. Cir. 1989)....................................................................................... 8

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990)............................................................................. 8, 10, 12

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936)................................................................................................. 12, 13

*T. J. Smith & Nephew, Ltd. v. Ferris Corp.*,
   No. 86-cv-5461, 1987 U.S. Dist. LEXIS 1603 (N.D. Ill. Feb. 27, 1987) .......................... 9

*Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*,
   No. 03-cv-7822, 2004 WL 422697 (N.D. Ill. Mar. 3, 2004) .......................................... 14

Accor North America, Caribou Coffee Co., Inc., Cosi, Inc., Dominick's Supermarkets, Inc., LQ Management LLC, Meijer, Inc., and Panera Bread Company ("Defendants") respectfully move this Court to stay this case pending the resolution of a separate action brought by the suppliers of products at issue in this action, *Cisco Systems, Inc. and Motorola Solutions, Inc. v. Innovatio IP Ventures, LLC,* Case No. 1:11-cv-00425 (D. Del.).[1] As set forth below, this case should be stayed pursuant to the customer suit doctrine and to promote judicial efficiency.

## I.     INTRODUCTION

This is a case in which a patent holder, in hopes of obtaining a litigation advantage, has sued those least capable of defending against its infringement claims – a group of end-user defendants that do not design, make, or sell the products accused of infringement.   Plaintiff Innovatio IP Ventures, LLC ("Innovatio") is a patent holding company whose business is acquiring, licensing and litigating patents.   Shortly after acquiring the seventeen patents-in-suit, Innovatio began a widespread campaign of asserting the patents against products having standardized wireless functionality commonly referred to as "Wi-Fi."   Innovatio's strategy included (1) filing this action against ten defendants; (2) filing a second action in the District of Nevada (the "Nevada Action") against another defendant; (3) filing two additional actions in the Middle District of Florida (the "Florida Actions") against eight other defendants; and (4) initiating a substantial letter-writing campaign demanding that numerous other companies take licenses to the patents-in-suit.   Innovatio did not, however, file suit against any company that actually makes or sells the accused wireless products.   Rather, Innovatio sued completely

---

[1]   To address the issues raised by the Court's June 17, 2011 Order (ECF No. 131), the Defendants have modified the introduction and factual background sections and added an argument section to this amended brief.   *See* Section III.A.2 *infra*.

unrelated businesses such as bakeries, cafés, hotels, and grocery stores that merely buy the accused products from third-party suppliers such as Cisco Systems, Inc. and Motorola Solutions, Inc.  This is a common tactic of patent holding companies, to sue multiple end-users who have no real knowledge of the accused products and are the least capable of understanding and defending the accused technologies, in order to secure many small settlements that add up to far more than the actual value, if any, of the patented invention.

After being served with the complaint, several of the Defendants – as well as the defendants in the Nevada Action, Florida Actions, and the numerous other licensing targets – turned to their suppliers to defend the wireless products at issue in this action.  In response, Cisco and Motorola, two large suppliers that supply six out of the seven Defendants in this action with at least some of their wireless access point products, filed a declaratory judgment action in the District of Delaware for non-infringement and invalidity of the seventeen patents-in-suit, to resolve in one proceeding the issues raised by Innovatio with respect to their products (the "Supplier Action").  Cisco and Motorola stepped up to protect their customers and products against infringement claims and in response to indemnity demands from their customers relating to Innovatio's claims.[2]

To address precisely these circumstances, Courts fashioned the "customer suit doctrine" to protect end-users such as the bakeries, cafés, hotels and grocery stores in this action from being forced to defend products that are not their own.  Applying that doctrine, courts stay infringement actions against customers while the suppliers of the products at issue resolve patent disputes over their products.  In the context of this action, the benefits of this approach are

---

[2]  *See, e.g.*, Ex. 1, Compl. for Declaratory J. in *Cisco Sys., Inc. and Motorola Solutions, Inc. v. Innovatio IP Ventures, LLC*, Case No. 1:11-cv-00425 (D. Del.) ¶¶ 15-16.

significant. A stay would allow those with the actual technical knowledge of the accused wireless products to defend them, as opposed to end-users such as bakeries and cafés that have nothing to do with the design, development or sale of the products. The suppliers have substantial interests in defending their products and possess the technical information to do so. As such, for both customers and non-customers it is essential that the suppliers have an opportunity to defend their products, as they are by far best able and most motivated to evaluate the technical issues, produce technical discovery, and raise defenses as compared to the end-users in this case. A stay would also serve efficiency interests and reduce the risk of inconsistent claim constructions and other outcomes on the same patents and products, as it would allow the suppliers to resolve in one proceeding a patentee's allegations against the supplier's products instead of through piecemeal litigation against customers who have no involvement in the design or manufacture of the accused products or technologies. This is particularly significant in this case, where Innovatio alleges that every accused product with standardized Wi-Fi functionality infringes the patents-in-suit in the same manner, regardless of who supplies the particular product. In such circumstances, the supplier proceedings often resolve the infringement issues for all end-users, not just their own customers.

At bottom, as the courts have found in fashioning the customer suit doctrine, it makes much more sense for the Supplier Action to proceed first, to allow those with actual knowledge of the standardized technologies an opportunity to construe the claims and assert defenses. By contrast, it is inefficient to force the bakery, café, hotel and grocery store chains in this case to attempt to address the same issues that two large suppliers of the accused wireless products are handling. Because this action is a classic case of a patent holding company suing end customers instead of the manufacturers of the accused products, Defendants respectfully request that this

action be stayed pursuant to the customer suit doctrine pending the resolution of the Supplier Action.

## II. FACTUAL BACKGROUND

### A. The Parties, The Patents-In-Suit And The Present Action

Innovatio was incorporated in February 2011, shortly before it acquired the patents-in-suit and filed this action. Innovatio is a patent holding company, focused on acquiring, licensing and litigating patents for royalties. *See, e.g.*, Ex. 1 ¶ 4. According to Innovatio, the patents are applicable to wireless products having certain standardized wireless functionality. In particular, Innovatio's allegations are directed at the IEEE 802.11 standards, or "Wi-Fi."[3] Innovatio alleges any wireless product practicing 802.11 standards infringes the patents-in-suit. *See* Ex. 2, Apr. 27 2011 Letter from M. McAndrews to L. Perkins at 2 ("Claims of the Innovatio Patents cover, among other things, WLANs that use the IEEE 802.11 communication protocols. The operation and use of any such systems by [customer] would constitute infringement... ."). According to Innovatio, every accused product that follows the 802.11 standards allegedly infringes its patents in the same manner, regardless of who supplies the particular product. *See id.*

On March 8, 2011, Innovatio filed this suit against the Defendants alleging infringement of fourteen patents related to their use of "WLAN products, systems and/or networks." *See* Compl., Mar. 8, 2011, ECF No. 1. On April 6, 2011, the Court granted Innovatio's motion to amend the complaint, adding three additional patents. *See* Min. Entry, Apr. 6, 2011, ECF No. 29. The Defendants are bakeries and cafés (Cosi, Inc., Panera Bread Company, and Caribou Coffee Co., Inc.), hotels (Accor North America, LQ Management LLC), and grocery stores

---

[3]  IEEE stands for the Institute of Electrical and Electronic Engineers and is a professional association and standards-setting organization. IEEE 802.11 is a set of standards relating to wireless communications.

(Dominick's Supermarkets, Inc., Meijer, Inc.). *See, e.g.*, Ex. 3, Osbeck Decl. ¶ 3; Ex. 4, Enright Decl. ¶ 3; Ex. 5, Sandquist Decl. ¶ 3; Ex. 6, Breyer Decl. ¶ 3; Ex. 7, Pitchai Decl. ¶ 3; Ex. 8, Gilbertson Decl. ¶ 3; Ex. 9 Burgess Decl. ¶ 3. They do not make or sell or have any role in the design or manufacture of "WLAN products, systems and/or networks." *See* Ex. 3 ¶¶ 3, 6; Ex. 4 ¶¶ 3, 6; Ex. 5 ¶¶ 3, 5; Ex. 6 ¶¶ 3, 6; Ex. 7 ¶¶ 3-4; Ex. 8 ¶¶ 3, 5; Ex. 9 ¶¶ 3, 6. The Defendants also lack technical documents that describe, or witnesses with knowledge about, the design or development of the wireless products at issue. *See* Ex. 3 ¶ 7; Ex. 4 ¶ 7; Ex. 5 ¶ 6; Ex. 6 ¶ 7; Ex. 7 ¶¶ 6-8; Ex. 8 ¶ 6; Ex. 9 ¶ 7. Thus, substantially all of the documents and testimony that Defendants will need to address Innovatio's claims directed to the accused products is possessed by third parties. *See* Ex. 3 ¶ 7; Ex. 4 ¶ 7; Ex. 5 ¶ 6; Ex. 6 ¶ 7; Ex. 7 ¶¶ 6-8; Ex. 8 ¶ 6; Ex. 9 ¶ 7.

Cisco and Motorola participated in the development of the 802.11 standards, and design, market and sell wireless products at issue in this case.[4] *See, e.g.*, Ex. 1 ¶ 15; Ex. 10, Highlighted 802.11 Working Grp. Membership List. According to an independent third-party provider of market research, Cisco and Motorola comprise over 50% of worldwide wireless LAN equipment sales. *See, e.g.,* Ex. 11, Infonetics Research Report at 4 (Year-Over-Year Wireless LAN Equipment Vendor Market Share Standings). In the present action, Cisco and Motorola supply accused products to six of the seven Defendants—Meijer, Cosi, Dominick's, Panera, LQ, and Caribou Coffee. *See* Ex. 3 ¶ 4; Ex. 4 ¶ 4; Ex. 5 ¶ 4; Ex. 6 ¶ 4; Ex. 7 ¶ 5; Ex. 8 ¶ 4. Thus far, three of the Defendants have confirmed that they have a substantial number of Cisco or Motorola wireless access points in their networks (Meijer, Dominick's and Cosi).

---

[4] The accused products include components that Cisco and Motorola purchase from other third parties, such as wireless chips.

**B.      Innovatio Files Three More Lawsuits Against Other Customer Targets**

On May 13, 2011, Innovatio filed a second lawsuit in the United States District Court for the District of Nevada.  *See* Ex. 12, Compl. for Patent Infringement in *Innovatio IP Ventures, LLC v. MEI-GSR Holdings LLC*, Case No. 3:11-cv-00343 (D. Nev.).  On June 3, 2011, Innovatio filed a third lawsuit in the United States District Court for the Middle District of Florida.  *See* Ex. 13, Compl. for Patent Infringement in *Innovatio IP Ventures, LLC v. Rosen 7600, Inc. et al.*, Case No. 6:11-cv-00930 (M.D. Fla.).  On June 15, 2011, Innovatio filed a fourth lawsuit in the Middle District of Florida.  *See* Ex. 14, Compl. for Patent Infringement in *Innovatio IP Ventures, LLC v. B&B Corporate Holdings, Inc.*, Case No. 8:11-cv-01325 (M.D. Fla.).  In the Nevada and Florida Actions, Innovatio claims that other alleged users of WLAN products infringe the same 17 patents at issue in this case.   *See* Ex. 12 ¶¶ 7-23; Ex. 13 ¶¶ 19-35; Ex. 14 ¶¶ 6-22.  As with the present action, Innovatio's infringement allegations are directed at products with standardized 802.11 functionality.  *See* Ex. 12 ¶¶ 25-58; Ex. 13 ¶¶ 45-84; Ex. 14 ¶¶ 26-65.  Like the Defendants in the present action, the defendants in the Nevada lawsuit (MEI-GSR Holdings) and Florida lawsuits (Rosen 7600, Inc., Rosen 9939, Inc., Rosen Centre, Inc., Rosen Hotels & Resorts, Inc., Rosen International, Inc., Rosen Plaza, Inc., Rosen Vista, Inc. (the "Rosen defendants") and B&B Corporate Holdings, Inc. ("B&B")) do not make wireless products.  Instead, MEI-GSR runs a casino and hotel in Reno, Nevada, the Rosen defendants run hotels and resorts near Orlando, Florida, and B&B runs convenience stores near Orlando, Florida.  *See, e.g.*, Ex. 12 ¶ 6; Ex. 13 ¶¶ 2-8; Ex. 14 ¶ 2.  MEI-GSR Holdings, the Rosen defendants, and B&B are all Cisco customers.

### C. In Parallel With Its Lawsuits, Innovatio Demands That Numerous Other Customer Targets License Its Patents

Innovatio also is engaging in a widespread letter-writing campaign targeted at purchasers of wireless products with standardized 802.11 functionality. In its letters, Innovatio accuses the customers of "likely infringement" of 31 patents, including the 17 that are asserted in this case. Notably, Innovatio demands immediate payment by the customers, within 30 days:

> [A]s discussed in greater detail below, ***this notifies [customer] of its likely infringement of the Innovatio Patents. * * * Innovatio proposes granting [customer] an upfront, paid-up license*** for its use under all of 31 of the issued Innovatio Patents. The amount of Innovatio's paid-up license fee will be determined by the specific nature and extent of the use of WLAN (e.g., Wi·Fi) and meshing networking technologies by [customer] covered by the Innovatio Patents. ***Innovatio will also discount the license fee if the parties are able to finalize a suitable license within the next 30 days.***

*See, e.g.,* Ex. 2 at 2-4 (emphasis added). As of the filing of this motion, dozens of companies uninvolved in the supply of wireless products have received such letters.

### D. Cisco And Motorola's Declaratory Judgment Suit Against Innovatio

The defendants in this action and the Nevada and Florida Actions, along with numerous other customer targets, contacted their wireless product suppliers to defend and indemnify them and the suppliers' products. These requests for assistance and indemnity go beyond the defendants in the pending actions, and continue to grow on a daily basis as more and more customers receive licensing demands from Innovatio. Cisco and Motorola responded to Innovatio's growing threats against their products and customers by filing the Supplier Action seeking a declaratory judgment that the asserted patents are invalid and are not infringed. Cisco and Motorola brought their action in Delaware because Innovatio and Motorola are incorporated there. *See, e.g.,* Ex. 1 ¶¶ 3-4.

## III.    ARGUMENT

### A.    This Case Should Be Stayed Under The Customer Suit Doctrine

#### 1.    A Stay Is Proper Because The Defendants In This Action Are Purchasers As Opposed To Suppliers Of The Accused Products

This action should be stayed pursuant to the customer suit doctrine.  Under the "customer-suit doctrine," courts stay infringement suits against customers to permit litigation brought by the manufacturer who produced the allegedly infringing product to proceed.  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *In re Papst Licensing GmbH & Co. KG Litig.*, – F.Supp.2d – , 2011 WL 350427, *8 (D.D.C. Feb. 2, 2011).  "Underlying the customer suit doctrine is the preference that infringement determinations should be made in suits involving the true defendant, the party that controls the product's design, rather than suits involving secondary parties such as customers of the manufacturer."  *In re Papst Licensing*, 2011 WL 350427, at *8.  The customer suit doctrine is routinely applied to stay customer suits in one forum while manufacturers of the products at issue resolve the dispute in another forum.  *See, e.g.*, *Katz*, 909 F.2d at 1464; *see also Card Activation Techs. v. Pier 1 Imps., Inc.*, No. 09-cv-2021, 2009 WL 2956926, at *2 (N.D. Ill. Sep. 14, 2009) (granting motion to stay customer suit); *Honeywell Int'l Inc. v. Audiovox Commc'ns. Corp.*, No. 04-cv-1337, 2005 WL 2465898, at *4 (D. Del. May 18, 2005) (same); *Commissariat A L'Energie Atomique v. Dell Comp. Corp.*, No. 03-cv-484, 2004 WL 1554382, at *2 (D. Del. May 13, 2004) (same).  The doctrine "guard[s] against possibility of abuse" in circumstances such as those presented here, where customers removed from the actual alleged infringement issues have been targeted by a patent holder.  *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).  This Court previously has applied the doctrine in similar circumstances to those here to stay an infringement suit against customers where the manufacturer of the allegedly infringing products had filed an action in the

8

District of Delaware seeking a declaratory judgment that the asserted patents were invalid. *See Card Activation Techs., Inc.*, 2009 WL 2956926, at *2. This Court found a stay was warranted because "a finding of invalidity would moot a number of cases pending against [the manufacturer's customers]" and because the manufacturer "would undoubtedly be a necessary participant in [the customer] case, at the very least, for purposes of discovery." *Id*. at *4.

This case falls squarely within the customer suit doctrine. The bakeries, cafés, hotels and grocery stores in this case do not design or supply wireless products. *See* Section II.A *supra*. They purchase them from suppliers like Cisco and Motorola. Unlike Defendants, Cisco and Motorola possess technical documents and witnesses involved in the design, marketing and sale of the accused wireless access point products. Defendants do not have access to these materials, nor do they possess the technical, licensing, and chip information necessary to defend against Innovatio's claims. As this Court has recognized, in such circumstances manufacturers of accused equipment, like Cisco and Motorola, are in the best position to effectively defend against assertions that their products infringe:

> ***[T]he manufacturer is clearly in the best position to either defend against a claim of infringement or to affirmatively assert invalidity of the holder's patent.*** Presumably it is the manufacturer who has the more detailed knowledge regarding the claim of infringement, the expertise in the area, and the primary interest in the outcome of the litigation.

*T. J. Smith & Nephew, Ltd. v. Ferris Corp.*, No. 86-cv-5461, 1987 U.S. Dist. LEXIS 1603, at *3-4 (N.D. Ill. Feb. 27, 1987) (emphasis added); *see also Delphi Corp. v. Auto. Techs. Int'l, Inc.*, No. 08-cv-11048, 2008 WL 2941116, at *4-5 (E.D. Mich. July 25, 2008) ("At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit" and as "a matter of judicial economy, global settlement is preferred over piecemeal litigation.") (internal citation omitted).

Cisco and Motorola have substantial interests in defending their products against Innovatio's claims. Cisco and Motorola have numerous customers outside of the Defendants who purchase the accused wireless access point products from them, and employ many personnel involved in the design, marketing, and sale of those accused products. *See* Ex. 1 ¶¶ 8, 15. Additionally, Cisco and Motorola are members of the IEEE, and their employees participated in the development of the 802.11 standards. *See* Section II.A *supra*. As such, Cisco and Motorola have a great interest in defending against Innovatio's claims, to protect their customers and products against adverse rulings, and globally resolve the issues raised by Innovatio. *Card Activation Techs.*, 2009 WL 2956926, at *2 (citing *Katz*, 909 F.2d at 1464) ("[I]t is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.").

The Defendants do not share Cisco's and Motorola's interests in resolving these issues globally for all of Innovatio's current and future targets. To the contrary, each Defendant has a greater interest in settling the particular claims asserted against it, leaving the merits of this action to be determined, and thousands of other claims (and potential claims) unresolved. *See, e.g., Delphi Corp.*, 2008 WL 2941116, at *4 ("[A] customer that did not have final responsibility for designing, developing or manufacturing a component of its production would have less incentive [than its manufacturer] to vigorously defend it against patent suits... ."). Under such circumstances, Cisco's and Motorola's suit should take precedence.

> **2.      A Stay Under The Customer Suit Exception Should Apply To Both Defendants That Are Customers Of Cisco And Motorola As Well As Other Purchasers Of Accused Wi-Fi Equipment**

A stay of this case against all Defendants will serve the interest of judicial economy. With respect to the six Defendants that are customers of Cisco and Motorola—Meijer, Cosi, Dominick's, Panera, LQ, and Caribou Coffee (*see* Section II.A *supra*)—the Supplier Action

necessarily will exhaust Innovatio's claims against Cisco's and Motorola's products, and as such there will be unnecessary duplication of work concerning claim construction, infringement, invalidity and other patent issues with respect to those six Defendants. *See Clark v. Lacy*, 376 F.3d 682, 687 (7th Cir. 2004) ("Our Court has held that this sort of redundancy counsels in favor of a stay."); *Card Activation Techs.*, 2009 WL 2956926, at *4.

With respect to the remaining Defendant that is not a Cisco or Motorola customer, because Innovatio's claims are directed against products operating in accordance with the 802.11 standards, Innovatio's technical application of its patent claims to the accused wireless products will likely be the same for Cisco, Motorola and every other supplier. *See* Ex. 2 at 2 ("Claims of the Innovatio Patents cover, among other things, WLANs that use the IEEE 802.11 communication protocols."); Ex. 3 ¶ 5; Ex. 4 ¶ 5; Ex. 5 ¶ 4; Ex. 6 ¶ 5; Ex. 7 ¶¶ 4, 5; Ex. 8 ¶ 4; Ex. 9 ¶ 5. As such, a judgment of noninfringement in the Supplier Action could globally resolve the issues in this action. Likewise, judgment of invalidity in the Delaware action will resolve this action as well. *See e.g.*, *In re Cygnus Telecomms. Tech. LLC*, 536 F.3d 1343, 1349 (Fed. Cir. 2008) ("It is a firmly established principle that a judgment of a patent invalidity in one case can collaterally estop the patent owner from contesting invalidity in a subsequent case, as long as the patent owner had a full and fair opportunity to litigate the validity of the patent in the first case.") (internal citation omitted). Additionally, Cisco and Motorola assert license and exhaustion defenses in their lawsuit based in part on their purchases of parts from their suppliers that, on information and belief, are licensed to the Innovatio portfolio. Because the accused products provided by other suppliers could also include these potentially licensed parts, the license and exhaustion defenses asserted by Cisco and Motorola also could resolve or substantially narrow the issues in this action.

11

Moreover, as Innovatio continues to file individual lawsuits and serially issue licensing demands against Cisco's and Motorola's customers, the efficiencies associated with resolving all of those disputes in the Supplier Action become more and more pronounced. The burdens on defendants to defend products they do not make or sell is great. Because Innovatio's claims are directed to a technical standard, and in view of the overlap in the non-infringement, invalidity, licensing and other issues, the Supplier Action will at a minimum likely narrow the issues in this action, alleviating the burdens on the Court and Defendants as they attempt to defend products that are not their own.

Courts regularly stay customer proceedings in favor of supplier actions even where there is not a complete identity of parties or products at issue. As this Court previously recognized, such concerns are "always present" in considering the customer suit doctrine, but yet do "not provide a principled reason for denying a stay":

> In this case, [manufacturer] seeks a declaratory judgment of invalidity. To the extent that [manufacturer] is successful in the Delaware Case, the lawsuit will conclusively decide the validity of the [patent-in-suit] and thus moot the instant patent infringement action. ***Indeed, a finding of invalidity would moot a number of cases pending against [manufacturer's] customers… Although [patent holder] correctly notes that the Delaware Case is not certain to resolve all issues between [patent holder] and [customer], this argument assumes that [patent holder] is successful in Delaware. Such a concern is always present in considering the customer suit exception it – does not provide a principled reason for denying a stay… .***

*Card Activation Tech*s., 2009 WL 2956926 at *4 (rejecting argument that stay of customer suit should be denied because customers were the only alleged direct infringers of asserted method or process claims); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (rejecting suggestion that "the parties to the two causes must be shown to be the same and the issues identical."); *Katz*, 909 F.2d at 1464 ("Although there may be additional issues involving the defendants in the [customer] action, their prosecution will be advanced if [patent holder] is successful on the major

12

premises being litigated in Massachusetts [forum for manufacturer lawsuit], and may well be mooted if he is unsuccessful.").

### B. This Court Also May Exercise Its Inherent Power To Stay This Case In The Interests Of Judicial Economy

The Court also may exercise its inherent power to stay this case in the interests of judicial economy. District courts have inherent power to stay proceedings in the interest of "economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. In determining whether to exercise this inherent power, courts evaluate three factors: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *See, e.g.*, *Tap Pharm. Prods, Inc. v. Atrix Labs, Inc.*, No. 03-cv-7822, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004).

### 1. Entry Of A Stay Will Not Prejudice Innovatio

A stay will not prejudice Innovatio. Innovatio does not compete with any of the bakeries, cafés, hotels, or grocery stores it sued, but is merely a patent holding company whose only interest is in licensing its patents for money. A stay will not shorten or suspend the statutory damages period, which is triggered by the filing of the complaint. *See* 35 U.S.C. § 286. Innovatio in fact will be able to seek much broader relief in the Supplier Action than is available in this case, as the Supplier Action involves all of Cisco's and Motorola's products. Innovatio also has little invested in the progress of this case so far: this case was filed only a few months ago and is still in its very early stages. No discovery responses have been exchanged; only initial disclosures have been served. "As neither side has yet to begin the process of developing this case, there is no apparent prejudice or tactical disadvantage that the Plaintiff would be forced to endure if a stay were granted." *Card Activation Techs., Inc. v. 7-Eleven, Inc.*, No. 10-cv-4984,

2011 WL 663960, at *2 (N.D. Ill. Feb. 10, 2011); *Tap Pharm. Prods, Inc.,* 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004) ("Since the litigation is at such an early stage… I find they will not be unduly prejudiced by a stay.").

Innovatio's only "harm" is that a stay will disrupt its plan to collect settlements from companies who are unfamiliar with the accused technology and do not have the resources to defend against Innovatio's claims. That, however, is not a harm recognized by the courts and does not outweigh the significant prejudice that these unknowledgeable customers and their suppliers will suffer in the absence of a stay.

### 2. Entry Of A Stay Will Reduce The Burden Of Litigation On The Courts And The Parties

As discussed above, a stay of this action will avoid unnecessarily duplicative litigation and its associated burdens on the courts and the parties. The fact and expert discovery phases of the case would be particularly burdensome in this case if it were to go forward because the Defendants do not possess the technical information necessary to defend against Innovatio's infringement claims and would need to turn to Cisco, Motorola and other third parties for that information. *See* Ex. 3 ¶ 7; Ex. 4 ¶ 7; Ex. 5 ¶ 6; Ex. 6 ¶ 7; Ex. 7 ¶¶ 6-8; Ex. 8 ¶ 6; Ex. 9 ¶ 7. A stay also avoids the risk of inconsistent claim constructions and other substantive outcomes. This factor strongly favors a stay. *See Pfizer, Inc. v. Apotex, Inc.*, 640 F.Supp.2d 1006, 1008 (N.D. Ill. 2009).

### 3. Entry Of A Stay Will Simplify The Issues In Question And Streamline Trial

Entry of a stay will simplify and streamline the issues and may render all disputes in this case moot. As discussed above, Cisco and Motorola products comprise a substantial portion of the wireless access point products at issue in this case, and thus resolution of Innovatio's claims relating to those products will streamline the number of accused products at issue in this case.

14

Moreover, because Innovatio's claims are directed at a technical standard and are allegedly the same for all accused wireless products (*see* Section II.A *supra*), a noninfringement finding in the Supplier Action should resolve all of Innovatio's claims, regardless of supplier. *See, e.g., Commissariat A L'Energie Atomique*, 2004 WL 1554382, at *3 ("If, for example, [patent holder's] patents were found invalid or the manufacturers would [sic] found to be not infringing, then there would be no need to proceed against the OEM/distributors or retailers, thus conserving judicial resources and expense to the parties."). Likewise, if Cisco and Motorola are successful on their invalidity claims, the issues in this suit will be completely resolved as well. Finally, if Cisco and Motorola are successful in their licensing and exhaustion defenses, the issues in this suit will be fully or mostly resolved. Accordingly, this third factor also favors a stay.

## IV. CONCLUSION

For the reasons stated above, the Defendants respectfully request that this Court stay this suit pending the outcome of Cisco and Motorola's declaratory judgment action in Delaware.

Dated:  July 6, 2011                     Respectfully submitted,

*/s/ Amanda J. Hollis*
Adam R. Alper (*Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
555 California Street
San Francisco, California 94104
415.439.1400 (Telephone)
adam.alper@kirkland.com

Amanda J. Hollis (#6279821)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois  60654
312.862.2000 (Telephone)
amanda.hollis@kirkland.com

*Attorneys for Defendants Cosi, Inc., Dominick's Supermarkets, Inc., and Meijer, Inc.*

*/s/ Kevin John O'Shea (with consent)*
Kevin John O'Shea (#6270380)
**GREENBERG TRAURIG LLP**
77 West Wacker Drive
Chicago, Illinois  60601
312.456.8400 (Telephone)
osheak@gtlaw.com

*Attorney for Defendants Cosi, Inc. and Panera Bread Company*

16

_/s/ Robert David Donoghue (with consent)_

Robert David Donoghue (#6273840)
Daniel Long Farris (#6292794)
**HOLLAND AND KNIGHT LLP**
131 South Dearborn, 30th floor
Chicago, Illinois  60603
312.578.6553 (Telephone)
david.donoghue@hklaw.com
daniel.farris@hklaw.com

**Attorneys for Defendants Accor North America and Meijer, Inc.**

_/s/ Vaibhav P. Kadaba (with consent)_

Jennifer L Colvin (#6274731)
Matthew James Straub (#6273117)
Daniel Oscar Canales (#6296027)
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois  60606
312.673.7800 (Telephone)
jennifer.colvin@ogletreedeakins.com
matthew.straub@odnss.com
daniel.canales@ogletreedeakins.com

Matias Ferrario _(Pro Hac Vice)_
Taylor Higgins Ludlam _(Pro Hac Vice)_
Vaibhav P. Kadaba _(Pro Hac Vice)_
**KILPATRICK TOWNSEND & STOCKTON LLP**
1001 West Fourth Street
Winston Salem, North Carolina  27101
336.607.7300 (Telephone)
mferrario@kilpatricktownsend.com
taludlam@kilpatricktownsend.com
wkadaba@kilpatrickstockton.com

**Attorneys for Defendants Caribou Coffee Co., Inc. and Panera Bread Company**

17

/s/ Steven L. Baron (with consent)

Steven L. Baron (#6200868)
Steven P. Mandell (#6183729)
Sharon Renae Albrecht (#6288927)
**MANDELL MENKES LLC**
333 West Wacker Drive, Suite 300
Chicago, Illinois 60606
312.251.1000 (Telephone)
sbaron@mandellmenkes.com
smandell@mandellmenkes.com
salbrecht@mandellmenkes.com

*Attorneys for Defendant Dominick's Supermarkets, Inc.*

/s/ Neil J. McNabnay (with consent)

Neil J. McNabnay *(Pro Hac Vice)*
Enrique D Duarte *(Pro Hac Vice)*
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
214.747.5070 (Telephone)
mcnabnay@fr.com
duarte@fr.com

Joel David Bertocchi (#6227292)
**HINSHAW & CULBERTSON LLP**
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
(312) 704 3130 (Telephone)
jbertocchi@hinshawlaw.com

*Attorneys for Defendant LQ Management LLC*

18

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2011 a true and correct copy of the foregoing document, **DEFENDANTS' AMENDED MOTION TO STAY THIS MATTER PENDING RESOLUTION OF CISCO SYSTEMS, INC. AND MOTOROLA SOLUTIONS, INC. v. INNOVATIO IP VENTURES, LLC, CASE NO. 1:11-CV-00425 (D. DEL.)**, was electronically filed with the Court via the CM/ECF system which sent notification of such filing to all Counsel of Record.  Copies of documents required to be served by Fed.R.Civ.P. 5(a) have been served.


Dated:    July 6, 2011                              */s/ Amanda J. Hollis*
_____
                                         Amanda J. Hollis (#6279821)
                                         **KIRKLAND & ELLIS LLP**
                                         300 North LaSalle
                                         Chicago, Illinois  60654
                                         312.862.2000 (Telephone)
                                         amanda.hollis@kirkland.com

                                         *Attorney for Defendants Cosi, Inc.,*
                                         *Dominick's Supermarkets, Inc., and Meijer,*
                                         *Inc.*

# EXHIBIT 5

Michael D. Rounds (4734)
Adam K. Yowell (11748)
WATSON ROUNDS
5371 Kietzke Lane
Reno, NV  89511
Telephone: (775) 324-4100
Facsimile: (775) 333-8171
E-Mail: mrounds@watsonrounds.com
E-Mail: ayowell@watsonrounds.com

Matthew G. McAndrews (*of counsel*)
Raymond P. Niro, Jr. (*of counsel*)
NIRO, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
Telephone: (312) 236-0733
Fax: (312) 236-3137
E-mail:  mmcandrews@nshn.com
E-mail:  rnirojr@nshn.com

*Attorneys for Plaintiff,*
INNOVATIO IP VENTURES, LLC

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| INNOVATIO IP VENTURES, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>MEI-GSR HOLDINGS LLC dba GRAND SIERRA RESORT AND CASINO,<br><br>  Defendant. | Case No.: 3:11-cv-343<br><br>**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**(JURY DEMAND)** |

For its Original Complaint for Patent Infringement, Plaintiff Innovatio IP Ventures, LLC ("Innovatio"), by and through its undersigned counsel, alleges as follows:

## JURISDICTION AND VENUE

1.     This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

2.     This Court has personal jurisdiction over the Grand Sierra.

3.     Venue for this action is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## THE PARTIES

4.     Plaintiff Innovatio is a corporation organized under the laws of the State of Delaware and has a place of business at 22 West Washington Street, Suite 1500, Chicago, Illinois 60602.

5.     On information and belief, MEI-GSR Holdings LLC dba Grand Sierra Resort and Casino ("Grand Sierra") is a limited liability company organized under the laws of the State of Nevada, and maintains a principal place of business at 2500 East Second Street, Reno, NV 89595.

6.     On information and belief, MEI-GSR Holdings LLC operates the Grand Sierra Resort and Casino at 2500 East Second Street, Reno, NV 89595.

## PATENTS-IN-SUIT

7.     On March 30, 2004, the United States Patent and Trademark Office ("the USPTO") duly and legally issued U.S. Patent No. 6,714,559 ("the '559 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '559 Patent is attached as Exhibit A.

8.      On June 10, 2008, the USPTO duly and legally issued U.S. Patent No. 7,386,002 ("the '002 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol."  A copy of the '002 Patent is attached as Exhibit B.

9.      On May 19, 2009, the USPTO duly and legally issued U.S. Patent No. 7,535,921 ("the '921 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol."  A copy of the '921 Patent is attached as Exhibit C.

10.     On June 16, 2009, the USPTO duly and legally issued U.S. Patent No. 7,548,553 ("the '553 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol."  A copy of the '553 Patent is attached as Exhibit D.

11.     On April 14, 1998, the USPTO duly and legally issued U.S. Patent No. 5,740,366 ("the '366 Patent") titled "Communication Network Having Plurality Of Bridging Nodes Which Transmit A Beacon To Terminal Nodes In Power Saving State That It Has Messages Awaiting Delivery."  A copy of the '366 Patent is attached as Exhibit E.

12.     On August 17, 1999, the USPTO duly and legally issued U.S. Patent No. 5,940,771 ("the '771 Patent") titled "Network Supporting Roaming, Sleeping Terminals."  A copy of the '771 Patent is attached as Exhibit F.

13.     On April 16, 2002, the USPTO duly and legally issued U.S. Patent No. 6,374,311 ("the '311 Patent") titled "Communication Network Having A Plurality Of Bridging Nodes Which Transmit A Beacon To Terminal Nodes In Power Saving State That It Has Messages Awaiting Delivery."  A copy of the '311 Patent is attached as Exhibit G.

14.     On November 25, 2008, the USPTO duly and legally issued U.S. Patent No. 7,457,646 ("the '646 Patent") titled "Radio Frequency Local Area Network."  A copy of the '646 Patent is attached as Exhibit H.

15.     On August 13, 1996, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 5,546,397 ("the '397 Patent") titled "High Reliability Access Point For Wireless Local Area Network."   A copy of the '397 Patent is attached as Exhibit I.

16.     On December 1, 1998, the USPTO duly and legally issued U.S. Patent No. 5,844,893 ("the '893 Patent") titled "System For Coupling Host Computer Means With Base Transceiver Units On A Local Area Network." A copy of the '893 Patent is attached as Exhibit J.

17.     On December 16, 2003, the USPTO duly and legally issued U.S. Patent No. 6,665,536 ("the '536 Patent") titled "Local Area Network Having Multiple Channel Wireless Access." A copy of the '536 Patent is attached as Exhibit K.

18.     On February 24, 2004, the USPTO duly and legally issued U.S. Patent No. 6,697,415 ("the '415 Patent") titled "Spread Spectrum Transceiver Module Utilizing Multiple Mode Transmission."  A copy of the '415 Patent is attached as Exhibit L.

19.     On March 14, 2006, the USPTO duly and legally issued U.S. Patent No. 7,013,138 ("the '138 Patent") titled "Local Area Network Having Multiple Channel Wireless Access."  A copy of the '138 Patent is attached as Exhibit M.

20.     On May 4, 2010, the USPTO duly and legally issued U.S. Patent No. 7,710,907 ("the '907 Patent") titled "Local Area Network Having Multiple Channel Wireless Access."  A copy of the '907 Patent is attached as Exhibit N.

21.     On March 29, 2011, the USPTO duly and legally issued U.S. Patent No. 7,916,747 ("the '747 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol."  A copy of the '747 Patent is attached as Exhibit O.

Complaint
Page 4

22.     On January 18, 2011, the USPTO duly and legally issued U.S. Patent No. 7,873,343 ("the '343 Patent") titled "Communication Network Terminal With Sleep Capability." A copy of the '343 Patent is attached as Exhibit P.

23.     On May 19, 2009, the USPTO duly and legally issued U.S. Patent No. 7,536,167 ("the '167 Patent") titled "Network Supporting Roaming, Sleeping Terminals." A copy of the '167 Patent is attached as Exhibit Q. The seventeen patents identified in Paragraphs 10-26 are hereinafter referred to collectively as the "WLAN Patents."

24.     Innovatio owns all rights, title, and interest in and to, and has standing to sue for infringement of, the WLAN Patents, including the right to sue for and collect past damages.

## COUNT ONE

## INFRINGEMENT OF THE '559 PATENT

25.     Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 24 as if fully set forth herein.

26.     Grand Sierra has infringed and continues to infringe one or more claims of the '559 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, wireless local area network ("WLAN") products to provide wireless network access to its customers, guests, employees, and/or the public, and/or in its business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 6, 7, and 8 of the '559 Patent.

## COUNT TWO

## INFRINGEMENT OF THE '002 PATENT

27.     Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 26 as if fully set forth herein.

28.     Grand Sierra has infringed and continues to infringe one or more claims of the '002 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN products to provide wireless network access to its customers, guests, employees, and/or the public, and/or in its business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 14-16, 18, and 19 of the '002 Patent.

## COUNT THREE

## INFRINGEMENT OF THE '921 PATENT

29.     Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 28 as if fully set forth herein.

30.     Grand Sierra has infringed and continues to infringe one or more claims of the '921 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN products to provide wireless network access to its customers, guests, employees, and/or the public, and/or in its business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 1, 2, 5, 7, and 8 of the '921 Patent.

## COUNT FOUR

## <u>INFRINGEMENT OF THE '553 PATENT</u>

31.     Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 30 as if fully set forth herein.

32.     Grand Sierra has infringed and continues to infringe one or more claims of the '553 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN products to provide wireless network access to its customers, guests, employees, and/or the public, and/or in its business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 10-12, 17, 19, and 20 of the '553 Patent.

## COUNT FIVE

## <u>INFRINGEMENT OF THE '366 PATENT</u>

33.     Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 32 as if fully set forth herein.

34.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Grand Sierra has infringed and continues to infringe one or more claims of the '366 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLANs to provide wireless network access to its customers, guests, employees, and/or the public, and/or in its business operations, where such WLANs infringe, by way of example and not limitation, at least claims 5-7, 9-17, 19-24, 26-29, and 32 of the '366 Patent.

**COUNT SIX**

**INFRINGEMENT OF THE '771 PATENT**

35.     Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 34 as if fully set forth herein.

36.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Grand Sierra has infringed and continues to infringe one or more claims of the '771 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLANs to provide wireless network access to its customers, guests, employees, and/or the public, and/or in its business operations, where such WLANs infringe, by way of example and not limitation, at least claims 1-7 of the '771 Patent.

**COUNT SEVEN**

**INFRINGEMENT OF THE '311 PATENT**

37.     Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 36 as if fully set forth herein.

38.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Grand Sierra has infringed and continues to infringe one or more claims of the '311 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLANs to provide wireless network access to its customers, guests, employees, and/or the public, and/or in its business operations, where such WLANs infringe, by way of example and not limitation, at least claims 20-24, 26-30, 32-37, 39-41, 43-51, 53-56, 60, and 64 of the '311 Patent.

## COUNT EIGHT

### INFRINGEMENT OF THE '646 PATENT

39. Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 38 as if fully set forth herein.

40. Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Grand Sierra has infringed and continues to infringe one or more claims of the '646 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN products to provide wireless network access to its customers, guests, employees, and/or the public, and/or in its business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 14-17, 19-22, 26-35, 39-40, 43-45, 47, 49-51, 53-56, 59-64, 66-69, 71-73, 79, 82-89, 91-94, 98-104, 107, 108, 111, 112, 114-123, 125-128, 130, 135-137, 143, and 144 of the '646 Patent.

## COUNT NINE

### INFRINGEMENT OF THE '397 PATENT

41. Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 40 as if fully set forth herein.

42. Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Grand Sierra has infringed and continues to infringe one or more claims of the '397 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN products to provide wireless network access to its customers, guests, employees, and/or

the public, and/or in its business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1-5 of the '397 Patent.

## COUNT TEN

## INFRINGEMENT OF THE '893 PATENT

43.     Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 42 as if fully set forth herein.

44.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Grand Sierra has infringed and continues to infringe one or more claims of the '893 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLANs to provide wireless network access to its customers, guests, employees, and/or the public, and/or in its business operations, where such WLANs infringe, by way of example and not limitation, at least claims 7-11 of the '893 Patent.

## COUNT ELEVEN

## INFRINGEMENT OF THE '536 PATENT

45.     Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 44 as if fully set forth herein.

46.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Grand Sierra has infringed and continues to infringe one or more claims of the '536 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN products to provide wireless network access to its customers, guests, employees, and/or the public, and/or in its business operations, where such WLAN products infringe, by way of

example and not limitation, at least claims 1, 5, 8, 10, 11, 13-17, 19, 20, and 49 of the '536 Patent.

## COUNT TWELVE

### INFRINGEMENT OF THE '415 PATENT

47.     Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 46 as if fully set forth herein.

48.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Grand Sierra has infringed and continues to infringe one or more claims of the '415 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN products to provide wireless network access to its customers, guests, employees, and/or the public, and/or in its business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 11, 12, and 15 of the '415 Patent.

## COUNT THIRTEEN

### INFRINGEMENT OF THE '138 PATENT

49.     Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 48 as if fully set forth herein.

50.     Innovati believes that a reasonable opportunity for further investigation or discovery will likely show that Grand Sierra has infringed and continues to infringe one or more claims of the '138 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN products to provide wireless network access to its customers, guests, employees, and/or the public, and/or in its business operations, where such WLAN products infringe, by way of

example and not limitation, at least claims 1, 5, 8, 10, 11, 13-15, 17, 18, 21, 24, 26, 28, and 36 of the '138 Patent.

## COUNT FOURTEEN

### INFRINGEMENT OF THE '907 PATENT

51.    Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 50 as if fully set forth herein.

52.    Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Grand Sierra has infringed and continues to infringe one or more claims of the '907 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN products to provide wireless network access to its customers, guests, employees, and/or the public, and/or in its business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1, 7, 10, 12, 13, 15-17, 20, 21, 23, 24, 30, 33, 35, 36, 38, 39, 40, 43, 44, and 46-50 of the '907 Patent.

## COUNT FIFTEEN

### INFRINGEMENT OF THE '747 PATENT

53.    Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 52 as if fully set forth herein.

54.    Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Grand Sierra has infringed and continues to infringe one or more claims of the '747 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN products to provide wireless network access to its customers, guests, employees, and/or

the public, and/or in its business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1-3, 5-8, 11, 13, 16, 17, and 20-25 of the '747 Patent.

## COUNT SIXTEEN
### INFRINGEMENT OF THE '343 PATENT

55.     Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 54 as if fully set forth herein.

56.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Grand Sierra has infringed and continues to infringe one or more claims of the '343 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN products to provide wireless network access to its customers, guests, employees, and/or the public, and/or in its business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1-6, 8-12, 15-20, 22, 23, 25, 28-30, 31-36, 38-42, 45-50, 52, 53, 55, and 58-60 of the '343 Patent.

## COUNT SEVENTEEN
### INFRINGEMENT OF THE '167 PATENT

57.     Innovatio repeats and realleges the allegations of the preceding Paragraphs 1 - 56 as if fully set forth herein.

58.     Innovatio believe that a reasonable opportunity for further investigation or discovery will likely show that Grand Sierra has infringed and continues to infringe one or more claims of the '167 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN products to provide wireless network access to its customers, guests, employees, and/or

the public, and/or in its business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 73-77, 79-83, 85, 89-97, 100, 102-107, 109-113, 115, 119-127, 130, 132-134, and 203 of the '167 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Innovatio respectfully requests entry of judgment in its favor and the following relief, including:

A.    That Grand Sierra be adjudged to have infringed one or more claims of each of the WLAN Patents;

B.    That Grand Sierra and all related entities and their officers, agents, employees, representatives, servants, successors, assigns and all persons in active concert or participation with any of them, directly or indirectly, be preliminarily and permanently enjoined from using, or contributing or inducing the use of, any WLAN product, system or network that infringes any WLAN Patent;

C.    That Grand Sierra account for damages sustained by Innovatio as a result of Grand Sierra's infringement of the WLAN Patents, including both pre- and post-judgment interest and costs as fixed by this Court under 35 U.S.C. § 284; and

D.    That the Court grant Innovatio such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

YOU, And EACH OF YOU, WILL PLEASE TAKE NOTICE that Plaintiff Innovatio demands a trial by jury on all issues so triable.

DATED this 13th day of May, 2011.        Respectfully submitted,

                              /s/ Michael D. Rounds
                            Michael D. Rounds (4734)
                            Adam K. Yowell (11748)
                            WATSON ROUNDS
                            5371 Kietzke Lane
                            Reno, NV  89511-2083
                            Telephone: (775) 324-4100
                            Facsimile: (775) 333-8171
                            E-Mail: mrounds@watsonrounds.com
                            E-Mail: ayowell@watsonrounds.com

                            Matthew G. McAndrews (*of counsel*)
                            Raymond P. Niro, Jr. (*of counsel*)
                            NIRO, HALLER & NIRO
                            181 West Madison Street, Suite 4600
                            Chicago, Illinois 60602
                            Telephone: (312) 236-0733
                            Fax: (312) 236-3137
                            E-mail: mmcandrews@nshn.com
                            E-mail: rnirojr@nshn.com

                            *Attorneys for Plaintiff,*
                            INNOVATIO IP VENTURES, LLC

# EXHIBIT 6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

INNOVATIO IP VENTURES, LLC,

        Plaintiff,

    v.

ROSEN 7600, INC.; ROSEN 9939, INC.;
ROSEN CENTRE, INC.; ROSEN HOTELS
& RESORTS, INC.; ROSEN INTERNATIONAL,
INC.; ROSEN PLAZA, INC.; and ROSEN
VISTA, INC.,

        Defendants.

                          /

Civil Action No.: 6:11-cv-930-ORL-35
GJK

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
## JURY TRIAL AND INJUNCTIVE RELIEF REQUEST

For its original complaint for patent infringement, Plaintiff Innovatio IP Ventures, LLC

("Innovatio"), by and through its undersigned counsel, alleges as follows:

### THE PARTIES

1.    Plaintiff Innovatio is a limited liability company organized under the laws of the

State of Delaware and has a place of business at 22 West Washington Street, Suite 1500,

Chicago, Illinois 60602.

2.    On information and belief, Defendant Rosen 7600, Inc. ("Rosen 7600") is a

corporation organized under the laws of the State of Florida and has a principal place of business

at 9840 International Drive, Orlando, Florida 32819.

3.      On information and belief, Defendant Rosen 9939, Inc. ("Rosen 9939") is a corporation organized under the laws of the State of Florida and has a principal place of business at 9840 International Drive, Orlando, Florida 32819.

4.      On information and belief, Defendant Rosen Centre, Inc. ("Rosen Centre") is a corporation organized under the laws of the State of Florida and has a principal place of business at 9840 International Drive, Orlando, Florida 32819.

5.      On information and belief, Defendant Rosen Hotels & Resorts, Inc. ("Rosen Hotels") is a corporation organized under the laws of the State of Florida and has a principal place of business at 9840 International Drive, Orlando, Florida 32819.

6.      On information and belief, Defendant Rosen International, Inc. ("Rosen International") is a corporation organized under the laws of the State of Florida and has a principal place of business at 9840 International Drive, Orlando, Florida 32819.

7.      On information and belief, Defendant Rosen Plaza, Inc. ("Rosen Plaza") is a corporation organized under the laws of the State of Florida and has a principal place of business at 9840 International Drive, Orlando, Florida 32819.

8.      On information and belief, Defendant Rosen Vista, Inc. ("Rosen Vista") is a corporation organized under the laws of the State of Florida and has a principal place of business at 9840 International Drive, Orlando, Florida 32819.

9.      The Defendants identified in paragraphs 2-8 above are hereinafter referred to collectively as the "Rosen Defendants."

## JURISDICTION AND VENUE

10.     This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

11.     On information and belief Defendant Rosen 7600 conducts business within this State and/or judicial district; has committed a tortuous act within this State and/or judicial district, including acts of infringement; and, engages in substantial and not isolated activity within this State and/or judicial district.

12.     On information and belief Defendant Rosen 9939 conducts business within this State and/or judicial district; has committed a tortuous act within this State and/or judicial district, including acts of infringement; and, engages in substantial and not isolated activity within this State and/or judicial district.

13.     On information and belief Defendant Rosen Centre conducts business within this State and/or judicial district; has committed a tortuous act within this State and/or judicial district, including acts of infringement; and, engages in substantial and not isolated activity within this State and/or judicial district.

14.     On information and belief Defendant Rosen Hotels conduct business within this State and/or judicial district; has committed a tortuous act within this State and/or judicial district, including acts of infringement; and, engages in substantial and not isolated activity within this State and/or judicial district.

15.     On information and belief Defendant Rosen International conducts business within this State and/or judicial district; has committed a tortuous act within this State and/or

3

judicial district, including acts of infringement; and, engages in substantial and not isolated activity within this State and/or judicial district.

16.     On information and belief Defendant Rosen Plaza conducts business within this State and/or judicial district; has committed a tortuous act within this State and/or judicial district, including acts of infringement; and, engages in substantial and not isolated activity within this State and/or judicial district.

17.     On information and belief Defendant Rosen Vista conducts business within this State and/or judicial district; has committed a tortuous act within this State and/or judicial district, including acts of infringement; and, engages in substantial and not isolated activity within this State and/or judicial district.

18.     Venue for this action is proper in the Middle District of Florida under 28 U.S.C. §§ 1391(b) and (c), and 28 U.S.C. § 1400(b), and in this Division pursuant to Local Rule 1.02 of the United States District Court for the Middle District of Florida.

## PATENTS-IN-SUIT

19.     On March 30, 2004, the United States Patent and Trademark Office ("the USPTO") duly and legally issued U.S. Patent No. 6,714,559 ("the '559 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '559 Patent is attached as Exhibit A.

20.     On June 10, 2008, the USPTO duly and legally issued U.S. Patent No. 7,386,002 ("the '002 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '002 Patent is attached as Exhibit B.

21.    On May 19, 2009, the USPTO duly and legally issued U.S. Patent No. 7,535,921 ("the '921 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '921 Patent is attached as Exhibit C.

22.    On June 16, 2009, the USPTO duly and legally issued U.S. Patent No. 7,548,553 ("the '553 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '553 Patent is attached as Exhibit D.

23.    On April 14, 1998, the USPTO duly and legally issued U.S. Patent No. 5,740,366 ("the '366 Patent") titled "Communication Network Having Plurality Of Bridging Nodes Which Transmit A Beacon To Terminal Nodes In Power Saving State That It Has Messages Awaiting Delivery." A copy of the '366 Patent is attached as Exhibit E.

24.    On August 17, 1999, the USPTO duly and legally issued U.S. Patent No. 5,940,771 ("the '771 Patent") titled "Network Supporting Roaming, Sleeping Terminals." A copy of the '771 Patent is attached as Exhibit F.

25.    On April 16, 2002, the USPTO duly and legally issued U.S. Patent No. 6,374,311 ("the '311 Patent") titled "Communication Network Having A Plurality Of Bridging Nodes Which Transmit A Beacon To Terminal Nodes In Power Saving State That It Has Messages Awaiting Delivery." A copy of the '311 Patent is attached as Exhibit G.

26.    On November 25, 2008, the USPTO duly and legally issued U.S. Patent No. 7,457,646 ("the '646 Patent") titled "Radio Frequency Local Area Network." A copy of the '646 Patent is attached as Exhibit H.

27.    On August 13, 1996, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 5,546,397 ("the '397 Patent") titled "High Reliability

Access Point For Wireless Local Area Network." A copy of the '397 Patent is attached as Exhibit I.

28.     On December 1, 1998, the USPTO duly and legally issued U.S. Patent No. 5,844,893 ("the '893 Patent") titled "System For Coupling Host Computer Means With Base Transceiver Units On A Local Area Network." A copy of the '893 Patent is attached as Exhibit J.

29.     On December 16, 2003, the USPTO duly and legally issued U.S. Patent No. 6,665,536 ("the '536 Patent") titled "Local Area Network Having Multiple Channel Wireless Access." A copy of the '536 Patent is attached as Exhibit K.

30.     On February 24, 2004, the USPTO duly and legally issued U.S. Patent No. 6,697,415 ("the '415 Patent") titled "Spread Spectrum Transceiver Module Utilizing Multiple Mode Transmission." A copy of the '415 Patent is attached as Exhibit L.

31.     On March 14, 2006, the USPTO duly and legally issued U.S. Patent No. 7,013,138 ("the '138 Patent") titled "Local Area Network Having Multiple Channel Wireless Access." A copy of the '138 Patent is attached as Exhibit M.

32.     On May 4, 2010, the USPTO duly and legally issued U.S. Patent No. 7,710,907 ("the '907 Patent") titled "Local Area Network Having Multiple Channel Wireless Access." A copy of the '907 Patent is attached as Exhibit N.

33.     On March 29, 2011, the USPTO duly and legally issued U.S. Patent No. 7,916,747 ("the '747 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '747 Patent is attached as Exhibit O.

34.    On January 18, 2011, the USPTO duly and legally issued U.S. Patent No. 7,873,343 ("the '343 Patent") titled "Communication Network Terminal With Sleep Capability." A copy of the '343 Patent is attached as Exhibit P.

35.    On May 19, 2009, the USPTO duly and legally issued U.S. Patent No. 7,536,167 ("the '167 Patent") titled "Network Supporting Roaming, Sleeping Terminals." A copy of the '167 Patent is attached as Exhibit Q.

36.    The seventeen patents identified in paragraphs 19-35 are hereinafter referred to collectively as the "WLAN Patents."

37.    Innovatio owns all rights, title, and interest in and to, and has standing to sue for infringement of, the WLAN Patents, including the right to sue for and collect past damages.

## ROSEN DEFENDANTS' KNOWLEDGE OF THE WLAN PATENTS

38.    Defendant Rosen 7600 has been aware of and on actual notice of the WLAN Patents since about May 3, 2011, at which time Defendant Rosen 7600 was notified by letter of the existence of and perceived infringement of the WLAN Patents.

39.    Defendant Rosen 9939 has been aware of and on actual notice of the WLAN Patents since about May 3, 2011, at which time Defendant Rosen 9939 was notified by letter of the existence of and perceived infringement of the WLAN Patents.

40.    Defendant Rosen Centre has been aware of and on actual notice of the WLAN Patents since about May 3, 2011, at which time Defendant Rosen Centre was notified by letter of the existence of and perceived infringement of the WLAN Patents.

41.    Defendant Rosen Hotels has been aware of and on actual notice of the WLAN Patents since about May 4, 2011, at which time Defendant Rosen Hotels was notified by letter of the existence of and perceived infringement of the WLAN Patents.

42.    Defendant Rosen International has been aware of and on actual notice of the WLAN Patents about May 4, 2011, at which time Defendant Rosen International was notified by letter of the existence of and perceived infringement of the WLAN Patents.

43.    Defendant Rosen Plaza has been aware of and on actual notice of the WLAN Patents since about May 3, 2011, at which time Defendant Rosen Plaza was notified by letter of the existence of and perceived infringement of the WLAN Patents.

44.    Defendant Rosen Vista has been aware of and on actual notice of the WLAN Patents since about May 3, 2011, at which time Defendant Rosen Vista was notified by letter of the existence of and perceived infringement of the WLAN Patents.

## COUNT ONE
## INFRINGEMENT OF THE '559 PATENT

45.    Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

46.    The Rosen Defendants have infringed and continue to infringe one or more claims of the '559 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 6, 7, and 8 of the '559 Patent.

8

## COUNT TWO
## INFRINGEMENT OF THE '002 PATENT

47.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

48.     The Rosen Defendants have infringed and continue to infringe one or more claims of the '002 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 14-16, 18, and 19 of the '002 Patent.

## COUNT THREE
## INFRINGEMENT OF THE '921 PATENT

49.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

50.     The Rosen Defendants have infringed and continue to infringe one or more claims of the '921 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 1, 2, 5, 7, and 8 of the '921 Patent.

## COUNT FOUR
## INFRINGEMENT OF THE '553 PATENT

51.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

52.     The Rosen Defendants have infringed and continue to infringe one or more claims of the '553 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district, WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 10-12, 17, 19, and 20 of the '553 Patent.

## COUNT FIVE
## INFRINGEMENT OF THE '366 PATENT

53.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

54.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have infringed and continue to infringe one or more claims of the '366 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district, WLANs to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLANs infringe, by way of example and not limitation, at least claims 5-7, 9-17, 19-24, 26-29, and 32 of the '366 Patent.

55.     Innovatio further believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have, with specific knowledge of the '366 Patent, induced and contributed to the direct infringement by others of one or more claims of the '366 Patent in violation of 35 U.S.C. §§ 271(b) and (c) by making available to the Rosen Defendants' customers, employees, and or the public in this judicial district WLANs, where such customers, employees, and/or the public cause the systems of, by way of example and not limitation, at least claims 5-7, 9-17, 19-24, 26-29, and 32 of the '366 Patent as a whole to

perform the claimed processing of such systems, and where such customers, employees, and/or the public obtain the benefit of, and directly infringe by, using the claimed systems.

## COUNT SIX
## INFRINGEMENT OF THE '771 PATENT

56. Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

57. Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have infringed and continue to infringe one or more claims of the '771 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLANs to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLANs infringe, by way of example and not limitation, at least claims 1-7 of the '771 Patent.

58. Innovatio further believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have, with specific knowledge of the '771 Patent, induced and contributed to the direct infringement by others of one or more claims of the '771 Patent in violation of 35 U.S.C. §§ 271(b) and (c) by making available to the Rosen Defendants' customers, employees, and or the public in this judicial district WLANs, where such customers, employees, and/or the public cause the systems of, by way of example and not limitation, at least claims 1-7 of the '771 Patent as a whole to perform the claimed processing of such systems, and where such customers, employees, and/or the public obtain the benefit of, and directly infringe by, using the claimed systems.

11

## COUNT SEVEN
## INFRINGEMENT OF THE '311 PATENT

59.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

60.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have infringed and continue to infringe one or more claims of the '311 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLANs to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLANs infringe, by way of example and not limitation, at least claims 20-24, 26-30, 32-37, 39-41, 43-51, 53-56, 60, and 64 of the '311 Patent.

61.     Innovatio further believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have, with specific knowledge of the '311 Patent, induced and contributed to the direct infringement by others of one or more claims of the '311 Patent in violation of 35 U.S.C. §§ 271(b) and (c) by making available to the Rosen Defendants' customers, employees, and or the public in this judicial district WLANs, where such customers, employees, and/or the public cause the systems of, by way of example and not limitation, at least claims 20-24, 26-30, 32-37, 39-41, 43-51, 53-56, 60, and 64 of the '311 Patent as a whole to perform the claimed processing of such systems, and where such customers, employees, and/or the public obtain the benefit of, and directly infringe by, using the claimed systems.

12

## COUNT EIGHT
## INFRINGEMENT OF THE '646 PATENT

62.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

63.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have infringed and continue to infringe one or more claims of the '646 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 14-17, 19-22, 26-35, 39-40, 43-45, 47, 49-51, 53-56, 59-64, 66-69, 71-73, 79, 82-89, 91-94, 98-104, 107, 108, 111, 112, 114-123, 125-128, 130, 135-137, 143, and 144 of the '646 Patent.

## COUNT NINE
## INFRINGEMENT OF THE '397 PATENT

64.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

65.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have infringed and continue to infringe one or more claims of the '397 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1-5 of the '397 Patent.

## COUNT TEN
## INFRINGEMENT OF THE '893 PATENT

66. Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

67. Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have infringed and continue to infringe one or more claims of the '893 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLANs to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLANs infringe, by way of example and not limitation, at least claims 7-11 of the '893 Patent.

68. Innovatio further believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have, with specific knowledge of the '893 Patent, induced and contributed to the direct infringement by others of one or more claims of the '893 Patent in violation of 35 U.S.C. §§ 271(b) and (c) by making available to the Rosen Defendants' customers, employees, and or the public in this judicial district WLANs, where such customers, employees, and/or the public cause the systems of, by way of example and not limitation, at least claims 7-11 of the '893 Patent as a whole to perform the claimed processing of such systems, and where such customers, employees, and/or the public obtain the benefit of, and directly infringe by, using the claimed systems.

14

## COUNT ELEVEN
## INFRINGEMENT OF THE '536 PATENT

69.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 – 44 as if fully set forth herein.

70.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have infringed and continue to infringe one or more claims of the '536 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1, 5, 8, 10, 11, 13-17, 19, 20, and 49 of the '536 Patent.

71.     Innovatio further believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have, with specific knowledge of the '536 Patent, induced and contributed to the direct infringement by others of one or more claims of the '536 Patent in violation of 35 U.S.C. §§ 271(b) and (c) by making available to the Rosen Defendants' customers, employees, and or the public in this judicial district WLANs, where such customers, employees, and/or the public cause the systems of, by way of example and not limitation, at least claims 20 and 49 of the '536 Patent as a whole to perform the claimed processing of such systems, and where such customers, employees, and/or the public obtain the benefit of, and directly infringe by, using the claimed systems.

## COUNT TWELVE
## INFRINGEMENT OF THE '415 PATENT

72.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

73.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have infringed and continue to infringe one or more claims of the '415 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 11, 12, and 15 of the '415 Patent.

## COUNT THIRTEEN
## INFRINGEMENT OF THE '138 PATENT

74.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

75.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have infringed and continue to infringe one or more claims of the '138 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1, 5, 8, 10, 11, 13-15, 17, 18, 21, 24, 26, 28, and 36 of the '138 Patent.

76. Innovatio further believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have, with specific knowledge of the '138 Patent, induced and contributed to the direct infringement by others of one or more claims of the '138 Patent in violation of 35 U.S.C. §§ 271(b) and (c) by making available to the Rosen Defendants' customers, employees, and or the public in this judicial district WLANs, where such customers, employees, and/or the public cause the systems of, by way of example and not limitation, at least claims 15, 17, 18, 21, 24, 26, 28, and 36 of the '138 Patent as a whole to perform the claimed processing of such systems, and where such customers, employees, and/or the public obtain the benefit of, and directly infringe by, using the claimed systems.

## COUNT FOURTEEN
## INFRINGEMENT OF THE '907 PATENT

77. Innovatio repeats and realleges the allegations of the preceding paragraphs 1 – 44 as if fully set forth herein.

78. Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have infringed and continue to infringe one or more claims of the '907 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1, 7, 10, 12, 13, 15-17, 20, 21, 23, 24, 30, 33, 35, 36, 38, 39, 40, 43, 44, and 46-50 of the '907 Patent.

## COUNT FIFTEEN
## INFRINGEMENT OF THE '747 PATENT

79.    Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

80.    Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have infringed and continue to infringe one or more claims of the '747 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1-3, 5-8, 11, 13, 16, 17, and 20-25 of the '747 Patent.

## COUNT SIXTEEN
## INFRINGEMENT OF THE '343 PATENT

81.    Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

82.    Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have infringed and continue to infringe one or more claims of the '343 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1-6, 8-12, 15-20, 22, 23, 25, 28-30, 31-36, 38-42, 45-50, 52, 53, 55, and 58-60 of the '343 Patent.

## COUNT SEVENTEEN
## INFRINGEMENT OF THE '167 PATENT

83.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 44 as if fully set forth herein.

84.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Rosen Defendants have infringed and continue to infringe one or more claims of the '167 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 73-77, 79-83, 85, 89-97, 100, 102-107, 109-113, 115, 119-127, 130, 132-134, and 203 of the '167 Patent.

### PRAYER FOR RELIEF

WHEREFORE, Innovatio respectfully requests entry of judgment in its favor and the following relief, including:

A.     That the Rosen Defendants be adjudged to have infringed one or more claims of each of the WLAN Patents;

B.     That the Rosen Defendants and all related entities and their officers, agents, employees, representatives, servants, successors, assigns and all persons in active concert or participation with any of them, directly or indirectly, be preliminarily and permanently enjoined from using, or contributing or inducing the use of, any WLAN product, system or network that infringes any WLAN Patent;

19

C.   That the Rosen Defendants account for damages sustained by Innovatio as a result of the Rosen Defendants' infringement of the WLAN Patents, including both pre- and post-judgment interest and costs as fixed by this Court under 35 U.S.C. § 284;

D.   That this case be deemed exceptional under 35 U.S.C. § 285, thereby entitling Innovatio to an additional award of reasonable attorney fees; and

D.   That the Court grant Innovatio such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Innovatio demands a trial by jury on all issues so triable.

Dated this 3rd day of June, 2011.

Respectfully submitted,

Beusse Wolter Sanks
   Mora & Maire, P.A.
390 North Orange Avenue
Suite 2500
Orlando, Florida 32801
Telephone: (407) 926-7706
Facsimile: (407) 926-7720
E-mail: rwolter@iplawfl.com
Attorneys for Plaintiff
INNOVATIO IP VENTURES, LLC

ROBERT L. WOLTER
Florida Bar No: 0906344

*Of Counsel:*

Matthew G. McAndrews
Raymond P. Niro, Jr.
Brian E. Haan
Gabriel I. Opatken
NIRO, HALLER & NIRO
181 West Madison St., Suite 4600
Chicago, Illinois 60602
Telephone: (312) 236-0733
Facsimile: (312) 236-3137
E-mail: mmcandrews@nshn.com
E-mail: rnirojr@nshn.com
E-mail: bhaan@nshn.com
E-mail: gopatken@nshn.com

# EXHIBIT 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**INNOVATIO IP VENTURES, LLC,**

        **Plaintiff,**

    v.

**B & B CORPORATE HOLDINGS, INC.,**

        **Defendant.**

Civil Action No.:_____

_____/

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT
## JURY TRIAL AND INJUNCTIVE RELIEF REQUEST

For its original complaint for patent infringement, Plaintiff Innovatio IP Ventures, LLC ("Innovatio"), by and through its undersigned counsel, alleges as follows:

### THE PARTIES

1.     Plaintiff Innovatio is a limited liability company organized under the laws of the State of Delaware and has a place of business at 22 West Washington Street, Suite 1500, Chicago, Illinois 60602.

2.     On information and belief, Defendant B & B Corporate Holdings, Inc. ("B & B") is a corporation organized under the laws of the State of Florida and has a principal place of business at 927 U.S. Highway 301 South, Tampa, Florida 33619.

## JURISDICTION AND VENUE

3.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

4.      On information and belief Defendant B & B conducts business within this State and/or judicial district; has committed a tortuous act within this State and/or judicial district, including acts of infringement; and, engages in substantial and not isolated activity within this State and/or judicial district.

5.      Venue for this action is proper in the Middle District of Florida under 28 U.S.C. §§ 1391(b) and (c), and 28 U.S.C. § 1400(b), and in this Division pursuant to Local Rule 1.02 of the United States District Court for the Middle District of Florida.

## PATENTS-IN-SUIT

6.      On March 30, 2004, the United States Patent and Trademark Office ("the USPTO") duly and legally issued U.S. Patent No. 6,714,559 ("the '559 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '559 Patent is attached as Exhibit A.

7.      On June 10, 2008, the USPTO duly and legally issued U.S. Patent No. 7,386,002 ("the '002 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '002 Patent is attached as Exhibit B.

8.      On May 19, 2009, the USPTO duly and legally issued U.S. Patent No. 7,535,921 ("the '921 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '921 Patent is attached as Exhibit C.

9.     On June 16, 2009, the USPTO duly and legally issued U.S. Patent No. 7,548,553 ("the '553 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '553 Patent is attached as Exhibit D.

10.     On April 14, 1998, the USPTO duly and legally issued U.S. Patent No. 5,740,366 ("the '366 Patent") titled "Communication Network Having Plurality Of Bridging Nodes Which Transmit A Beacon To Terminal Nodes In Power Saving State That It Has Messages Awaiting Delivery." A copy of the '366 Patent is attached as Exhibit E.

11.     On August 17, 1999, the USPTO duly and legally issued U.S. Patent No. 5,940,771 ("the '771 Patent") titled "Network Supporting Roaming, Sleeping Terminals." A copy of the '771 Patent is attached as Exhibit F.

12.     On April 16, 2002, the USPTO duly and legally issued U.S. Patent No. 6,374,311 ("the '311 Patent") titled "Communication Network Having A Plurality Of Bridging Nodes Which Transmit A Beacon To Terminal Nodes In Power Saving State That It Has Messages Awaiting Delivery." A copy of the '311 Patent is attached as Exhibit G.

13.     On November 25, 2008, the USPTO duly and legally issued U.S. Patent No. 7,457,646 ("the '646 Patent") titled "Radio Frequency Local Area Network." A copy of the '646 Patent is attached as Exhibit H.

14.     On August 13, 1996, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 5,546,397 ("the '397 Patent") titled "High Reliability Access Point For Wireless Local Area Network." A copy of the '397 Patent is attached as Exhibit I.

15.     On December 1, 1998, the USPTO duly and legally issued U.S. Patent No. 5,844,893 ("the '893 Patent") titled "System For Coupling Host Computer Means With Base Transceiver Units On A Local Area Network." A copy of the '893 Patent is attached as Exhibit J.

16.     On December 16, 2003, the USPTO duly and legally issued U.S. Patent No. 6,665,536 ("the '536 Patent") titled "Local Area Network Having Multiple Channel Wireless Access." A copy of the '536 Patent is attached as Exhibit K.

17.     On February 24, 2004, the USPTO duly and legally issued U.S. Patent No. 6,697,415 ("the '415 Patent") titled "Spread Spectrum Transceiver Module Utilizing Multiple Mode Transmission." A copy of the '415 Patent is attached as Exhibit L.

18.     On March 14, 2006, the USPTO duly and legally issued U.S. Patent No. 7,013,138 ("the '138 Patent") titled "Local Area Network Having Multiple Channel Wireless Access." A copy of the '138 Patent is attached as Exhibit M.

19.     On May 4, 2010, the USPTO duly and legally issued U.S. Patent No. 7,710,907 ("the '907 Patent") titled "Local Area Network Having Multiple Channel Wireless Access." A copy of the '907 Patent is attached as Exhibit N.

20.     On March 29, 2011, the USPTO duly and legally issued U.S. Patent No. 7,916,747 ("the '747 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '747 Patent is attached as Exhibit O.

21.     On January 18, 2011, the USPTO duly and legally issued U.S. Patent No. 7,873,343 ("the '343 Patent") titled "Communication Network Terminal With Sleep Capability." A copy of the '343 Patent is attached as Exhibit P.

22.     On May 19, 2009, the USPTO duly and legally issued U.S. Patent No. 7,536,167 ("the '167 Patent") titled "Network Supporting Roaming, Sleeping Terminals." A copy of the '167 Patent is attached as Exhibit Q.

23.     The seventeen patents identified in paragraphs 19-35 are hereinafter referred to collectively as the "WLAN Patents."

24.     Innovatio owns all rights, title, and interest in and to, and has standing to sue for infringement of, the WLAN Patents, including the right to sue for and collect past damages.

**DEFENDANT B &B'S KNOWLEDGE OF THE WLAN PATENTS**

25.     Defendant B & B has been aware of and on actual notice of the WLAN Patents since about April 27, 2011, at which time Defendant B & B was notified by letter of the existence of and perceived infringement of the WLAN Patents.

**COUNT ONE**
**INFRINGEMENT OF THE '559 PATENT**

26.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

27.     Defendant B & B has infringed and continue to infringe one or more claims of the '559 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 6, 7, and 8 of the '559 Patent.

**COUNT TWO**
**INFRINGEMENT OF THE '002 PATENT**

28.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

29.     Defendant B & B has infringed and continue to infringe one or more claims of the '002 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 14-16, 18, and 19 of the '002 Patent.

**COUNT THREE**
**INFRINGEMENT OF THE '921 PATENT**

30.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

31.     Defendant B & B has infringed and continue to infringe one or more claims of the '921 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 1, 2, 5, 7, and 8 of the '921 Patent.

**COUNT FOUR**
**INFRINGEMENT OF THE '553 PATENT**

32.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

33.     Defendant B & B has infringed and continue to infringe one or more claims of the '553 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district, WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 10-12, 17, 19, and 20 of the '553 Patent.

## COUNT FIVE
## INFRINGEMENT OF THE '366 PATENT

34.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

35.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has infringed and continues to infringe one or more claims of the '366 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district, WLANs to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLANs infringe, by way of example and not limitation, at least claims 5-7, 9-17, 19-24, 26-29, and 32 of the '366 Patent.

36.     Innovatio further believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has, with specific knowledge of the '366 Patent, induced and contributed to the direct infringement by others of one or more claims of the '366 Patent in violation of 35 U.S.C. §§ 271(b) and (c) by making available to Defendant B & B's customers, employees, and or the public in this judicial district WLANs, where such customers, employees, and/or the public cause the systems of, by way of example and not limitation, at least claims 5-7, 9-17, 19-24, 26-29, and 32 of the '366 Patent as a whole to

perform the claimed processing of such systems, and where such customers, employees, and/or the public obtain the benefit of, and directly infringe by, using the claimed systems.

## COUNT SIX
## INFRINGEMENT OF THE '771 PATENT

37.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

38.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has infringed and continues to infringe one or more claims of the '771 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLANs to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLANs infringe, by way of example and not limitation, at least claims 1-7 of the '771 Patent.

39.     Innovatio further believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has, with specific knowledge of the '771 Patent, induced and contributed to the direct infringement by others of one or more claims of the '771 Patent in violation of 35 U.S.C. §§ 271(b) and (c) by making available to Defendant B & B's customers, employees, and or the public in this judicial district WLANs, where such customers, employees, and/or the public cause the systems of, by way of example and not limitation, at least claims 1-7 of the '771 Patent as a whole to perform the claimed processing of such systems, and where such customers, employees, and/or the public obtain the benefit of, and directly infringe by, using the claimed systems.

8

## COUNT SEVEN
## INFRINGEMENT OF THE '311 PATENT

40. Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

41. Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has infringed and continues to infringe one or more claims of the '311 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLANs to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLANs infringe, by way of example and not limitation, at least claims 20-24, 26-30, 32-37, 39-41, 43-51, 53-56, 60, and 64 of the '311 Patent.

42. Innovatio further believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has, with specific knowledge of the '311 Patent, induced and contributed to the direct infringement by others of one or more claims of the '311 Patent in violation of 35 U.S.C. §§ 271(b) and (c) by making available to Defendant B & B's customers, employees, and or the public in this judicial district WLANs, where such customers, employees, and/or the public cause the systems of, by way of example and not limitation, at least claims 20-24, 26-30, 32-37, 39-41, 43-51, 53-56, 60, and 64 of the '311 Patent as a whole to perform the claimed processing of such systems, and where such customers, employees, and/or the public obtain the benefit of, and directly infringe by, using the claimed systems.

## COUNT EIGHT
### INFRINGEMENT OF THE '646 PATENT

43.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

44.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has infringed and continues to infringe one or more claims of the '646 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 14-17, 19-22, 26-35, 39-40, 43-45, 47, 49-51, 53-56, 59-64, 66-69, 71-73, 79, 82-89, 91-94, 98-104, 107, 108, 111, 112, 114-123, 125-128, 130, 135-137, 143, and 144 of the '646 Patent.

## COUNT NINE
### INFRINGEMENT OF THE '397 PATENT

45.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

46.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has infringed and continues to infringe one or more claims of the '397 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1-5 of the '397 Patent.

10

## COUNT TEN
## INFRINGEMENT OF THE '893 PATENT

47.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

48.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has infringed and continues to infringe one or more claims of the '893 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLANs to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLANs infringe, by way of example and not limitation, at least claims 7-11 of the '893 Patent.

49.     Innovatio further believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has, with specific knowledge of the '893 Patent, induced and contributed to the direct infringement by others of one or more claims of the '893 Patent in violation of 35 U.S.C. §§ 271(b) and (c) by making available to Defendant B & B's customers, employees, and or the public in this judicial district WLANs, where such customers, employees, and/or the public cause the systems of, by way of example and not limitation, at least claims 7-11 of the '893 Patent as a whole to perform the claimed processing of such systems, and where such customers, employees, and/or the public obtain the benefit of, and directly infringe by, using the claimed systems.

## COUNT ELEVEN
## INFRINGEMENT OF THE '536 PATENT

50.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 – 44 as if fully set forth herein.

51.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has infringed and continues to infringe one or more claims of the '536 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1, 5, 8, 10, 11, 13-17, 19, 20, and 49 of the '536 Patent.

52.     Innovatio further believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has, with specific knowledge of the '536 Patent, induced and contributed to the direct infringement by others of one or more claims of the '536 Patent in violation of 35 U.S.C. §§ 271(b) and (c) by making available to Defendant B & B's customers, employees, and or the public in this judicial district WLANs, where such customers, employees, and/or the public cause the systems of, by way of example and not limitation, at least claims 20 and 49 of the '536 Patent as a whole to perform the claimed processing of such systems, and where such customers, employees, and/or the public obtain the benefit of, and directly infringe by, using the claimed systems.

### COUNT TWELVE
### INFRINGEMENT OF THE '415 PATENT

53.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

54.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has infringed and continues to infringe one or

more claims of the '415 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 11, 12, and 15 of the '415 Patent.

## COUNT THIRTEEN
## INFRINGEMENT OF THE '138 PATENT

55.    Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

56.    Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has infringed and continues to infringe one or more claims of the '138 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1, 5, 8, 10, 11, 13-15, 17, 18, 21, 24, 26, 28, and 36 of the '138 Patent.

57.    Innovatio further believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has, with specific knowledge of the '138 Patent, induced and contributed to the direct infringement by others of one or more claims of the '138 Patent in violation of 35 U.S.C. §§ 271(b) and (c) by making available to Defendant B & B's customers, employees, and or the public in this judicial district WLANs, where such customers, employees, and/or the public cause the systems of, by way of example and not limitation, at least claims 15, 17, 18, 21, 24, 26, 28, and 36 of the '138 Patent as a whole to

13

perform the claimed processing of such systems, and where such customers, employees, and/or the public obtain the benefit of, and directly infringe by, using the claimed systems.

## COUNT FOURTEEN
### INFRINGEMENT OF THE '907 PATENT

58.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 – 44 as if fully set forth herein.

59.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has infringed and continues to infringe one or more claims of the '907 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1, 7, 10, 12, 13, 15-17, 20, 21, 23, 24, 30, 33, 35, 36, 38, 39, 40, 43, 44, and 46-50 of the '907 Patent.

## COUNT FIFTEEN
### INFRINGEMENT OF THE '747 PATENT

60.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

61.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has infringed and continues to infringe one or more claims of the '747 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1-3, 5-8, 11, 13, 16, 17, and 20-25 of the '747 Patent.

14

**COUNT SIXTEEN**
**INFRINGEMENT OF THE '343 PATENT**

62.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

63.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has infringed and continues to infringe one or more claims of the '343 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products infringe, by way of example and not limitation, at least claims 1-6, 8-12, 15-20, 22, 23, 25, 28-30, 31-36, 38-42, 45-50, 52, 53, 55, and 58-60 of the '343 Patent.

**COUNT SEVENTEEN**
**INFRINGEMENT OF THE '167 PATENT**

64.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 25 as if fully set forth herein.

65.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that Defendant B & B has infringed and continues to infringe one or more claims of the '167 Patent in violation of 35 U.S.C. § 271(a) by using in this judicial district WLAN products to provide wireless network access to their customers, employees, and/or the public, and/or in their business operations, where such WLAN products practice the methods of, by way of example and not limitation, at least claims 73-77, 79-83, 85, 89-97, 100, 102-107, 109-113, 115, 119-127, 130, 132-134, and 203 of the '167 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Innovatio respectfully requests entry of judgment in its favor and the following relief, including:

A.     That Defendant B & B Corporate Holdings, Inc. be adjudged to have infringed one or more claims of each of the WLAN Patents;

B.     That Defendant B & B Corporate Holdings, Inc. and all related entities and their officers, agents, employees, representatives, servants, successors, assigns and all persons in active concert or participation with any of them, directly or indirectly, be preliminarily and permanently enjoined from using, or contributing or inducing the use of, any WLAN product, system or network that infringes any WLAN Patent;

C.     That Defendant B & B Corporate Holdings, Inc. account for damages sustained by Innovatio as a result of Defendant B & B's infringement of the WLAN Patents, including both pre- and post-judgment interest and costs as fixed by this Court under 35 U.S.C. § 284;

D.     That this case be deemed exceptional under 35 U.S.C. § 285, thereby entitling Innovatio to an additional award of reasonable attorney fees; and

D.     That the Court grant Innovatio such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Innovatio demands a trial by jury on all issues so triable.

Dated this 14th day of June, 2011.

Respectfully submitted,

Beusse Wolter Sanks
      Mora & Maire, P.A.
390 North Orange Avenue
Suite 2500
Orlando, Florida 32801
Telephone: (407) 926-7706
Facsimile: (407) 926-7720
E-mail: rwolter@iplawfl.com
Attorneys for Plaintiff
INNOVATIO IP VENTURES, LLC

_FBN: 015*430_

_for_ ROBERT L. WOLTER
Florida Bar No: 0906344

_Of Counsel:_

Matthew G. McAndrews
Raymond P. Niro, Jr.
Brian E. Haan
Gabriel I. Opatken
NIRO, HALLER & NIRO
181 West Madison St., Suite 4600
Chicago, Illinois 60602
Telephone: (312) 236-0733
Facsimile: (312) 236-3137
E-mail: mmcandrews@nshn.com
E-mail: rnirojr@nshn.com
E-mail: bhaan@nshn.com
E-mail: gopatken@nshn.com

# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| INNOVATIO IP VENTURES, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 1:11-cv-4668 |
| BEST WESTERN RIVER NORTH HOTEL, L.L.C. d/b/a BEST WESTERN PLUS RIVER NORTH HOTEL; PACIFIC TAI, INC. d/b/a BEST WESTERN GRANT PARK HOTEL; OAKHILL MANAGEMENT, INC. d/b/a BEST WESTERN CHICAGOLAND – COUNTRYSIDE; HILLSIDE HOSPITALITY INC. d/b/a BEST WESTERN CHICAGO HILLSIDE; EVANSTON NORTHSHORE HOTEL PARTNERS, L.L.C. d/b/a BEST WESTERN UNIVERSITY PLAZA; SHREE NAM CORPORATION d/b/a BEST WESTERN PLUS OAKBROOK INN; HOSTMARK HOSPITALITY GROUP, INC. d/b/a BEST WESTERN AT O'HARE; MORTON GROVE HOSPITALITY, INC. d/b/a BEST WESTERN MORTON GROVE INN; MAHARISHI HOSPITALITY INC. d/b/a BEST WESTERN DES PLAINES INN; BELTWAY HOSPITALITY LLC d/b/a BEST WESTERN CLOCK TOWER RESORT; SAM PATEL, an individual, d/b/a BEST WESTERN PLUS CHICAGO SOUTHLAND; JOY PATEL, an individual, d/b/a BEST WESTERN NAPERVILLE INN; ANTHONY KLOK, an individual, d/b/a BEST WESTERN PLUS HAWTHORNE TERRACE; JOHN DOE NO. 1 d/b/a BEST WESTERN INN & SUITES – MIDWAY AIRPORT; JOHN DOE NO. 2 d/b/a BEST WESTERN ROMEOVILLE INN; JOHN DOE NO. 3 d/b/a BEST WESTERN MONEE INN; JOHN DOE NO. 4 d/b/a BEST WESTERN INN | **JURY TRIAL DEMANDED** |

OF ST. CHARLES HOTEL;
JOHN DOE NO. 5 d/b/a BEST WESTERN
   JOLIET INN & SUITES;
JOHN DOE NO. 6 d/b/a BEST WESTERN
   GURNEE HOTEL & SUITES;
JOHN DOE NO. 7 d/b/a BEST WESTERN INN &
   SUITES AT MARKET SQUARE;
JOHN DOE NO. 8 d/b/a BEST WESTERN
   DEKALB INN & SUITES;
JOHN DOE NO. 9 d/b/a BEST WESTERN
   LEGACY INN & SUITES BELOIT;
JOHN DOE NO. 10 d/b/a BEST WESTERN
   OGLESBY INN; and
JOHN DOE NO. 11 d/b/a BEST WESTERN
   PLUS TIMBER CREEK INN & SUITES;

             Defendants.

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

For its Original Complaint for Patent Infringement, Plaintiff Innovatio IP Ventures, LLC

("Innovatio"), by and through its undersigned counsel, alleges as follows:

### THE PARTIES

1.     Plaintiff Innovatio is a limited liability company organized under the laws of the

State of Delaware and has a place of business at 22 West Washington Street, Suite 1500,

Chicago, Illinois 60602.

2.     On information and belief, Defendant Best Western River North Hotel, L.L.C. is a

limited liability company organized under the laws of the State of Illinois, having a principal

place of business at 125 W. Ohio Street, Chicago, IL 60654, and operating a hotel under the

name of "Best Western Plus River North Hotel" at 125 W. Ohio Street, Chicago, IL 60654

("Best Western River North").

3.     On information and belief, Defendant Pacific Tai, Inc. is a corporation organized

under the laws of the State of Illinois, having a principal place of business at 1100 S. Michigan

Avenue, Chicago, IL 60605, and operating a hotel under the name of "Best Western Grant Park Hotel" at 1100 S. Michigan Avenue, Chicago, IL 60605 ("Best Western Grant Park").

4.      On information and belief, Defendant Oakhill Management, Inc. is a corporation organized under the laws of the State of Illinois, having a principal place of business at 6406 Joliet Road, Suite 212, Countryside, IL 60525, and operating a hotel under the name of "Best Western Chicagoland – Countryside" at 6251 Joliet Road, Countryside, IL 60525 ("Best Western Chicagoland").

5.      On information and belief, Defendant Hillside Hospitality Inc. is a corporation organized under the laws of the State of Illinois, having a principal place of business at 8110 Koehler Drive, Orland Park, IL 60462, and operating a hotel under the name of "Best Western Chicago Hillside" at 4400 Frontage Road, Hillside, IL 60162 ("Best Western Hillside").

6.      On information and belief, Defendant Evanston Northshore Hotel Partners, L.L.C. is a limited liability company organized under the laws of the State of Illinois, having a principal place of business at 1501 Sherman Avenue, Evanston, IL 60201, and operating a hotel under the name of "Best Western University Plaza" at 1501 Sherman Avenue, Evanston, IL 60201 ("Best Western University Plaza").

7.      On information and belief, Defendant Shree Nam Corporation is a corporation organized under the laws of the State of Illinois, having a principal place of business at 669 Pasquinelli Drive, Westmont, IL 60559, and operating a hotel under the name of "Best Western Plus Oakbrook Inn" at 669 Pasquinelli Drive, Westmont, IL 60559 ("Best Western Oakbrook").

8.      On information and belief, Defendant Hostmark Hospitality Group, Inc. is a corporation organized under the laws of the State of Illinois, having a principal place of business at 1300 E. Woodfield Road, Suite 400, Schaumburg, IL 60173, and operating a hotel under the

name of "Best Western at O'Hare" at 10300 W. Higgins Road, Rosemont, IL 60018 ("Best Western O'Hare").

9.     On information and belief, Defendant Morton Grove Hospitality, Inc. is a corporation organized under the laws of the State of Illinois, having a principal place of business at 1300 Beckett Circle, Schaumburg, IL 60173, and operating a hotel under the name of "Best Western Morton Grove Inn" at 9424 Waukegan Road, Morton Grove, IL 60053 ("Best Western Morton Grove").

10.     On information and belief, Defendant Maharishi Hospitality Inc. is a corporation organized under the laws of the State of Delaware, having a principal place of business at 3219 Tallgrass Drive, Naperville, IL 60564, and operating a hotel under the name of "Best Western Des Plaines Inn" at 1231 Lee Street, Des Plaines, IL, 60018 ("Best Western Des Plaines").

11.     On information and belief, Defendant Beltway Hospitality LLC is a limited liability company organized under the laws of the State of Texas, having a principal place of business at 6833 W. Sam Houston Parkway, Suite 202, Houston, TX 77072, and operating a hotel under the name of "Best Western Clock Tower Resort" at 7801 E. State Street, Rockford, IL 61108 ("Best Western Clock Tower").

12.     On information and belief, Defendant Sam Patel owns and operates a hotel under the name of "Best Western Plus Chicago Southland" at 4375 Frontage Road, Oak Forest, IL 60452 ("Best Western Southland").

13.     On information and belief, Defendant Joy Patel owns and operates a hotel under the name of "Best Western Naperville Inn" at 1617 Naperville Wheaton Road, Naperville, IL 60563 ("Best Western Naperville").

14.     On information and belief, Defendant Anthony Klok owns and operates a hotel under the name of "Best Western Plus Hawthorne Terrace" at 3434 North Broadway Street, Chicago, IL 60657 ("Best Western Hawthorne").

15.     On information and belief, Defendant John Doe No. 1 owns and operates a hotel under the name of "Best Western Inn & Suites – Midway Airport" at 8220 S. Cicero Avenue, Burbank, IL 60459 ("Best Western Midway").

16.     On information and belief, Defendant John Doe No. 2 owns and operates a hotel under the name of "Best Western Romeoville Inn" at 1280 West Normantown Road, Romeoville, IL 60446 ("Best Western Romeoville").

17.     On information and belief, Defendant John Doe No. 3 owns and operates a hotel under the name of "Best Western Monee Inn" at 5815 W. Monee-Manhattan Road, Monee, IL 60449 ("Best Western Monee").

18.     On information and belief, Defendant John Doe No. 4 owns and operates a hotel under the name of "Best Western Inn of St. Charles Hotel" at 1635 E. Main Street, Saint Charles, IL 60174 ("Best Western St. Charles").

19.     On information and belief, Defendant John Doe No. 5 owns and operates a hotel under the name of "Best Western Joliet Inn & Suites" at 4380 Enterprise Drive, Joliet, IL 60431 ("Best Western Joliet").

20.     On information and belief, Defendant John Doe No. 6 owns and operates a hotel under the name of "Best Western Gurnee Hotel & Suites" at 5430 Grand Avenue, Gurnee, IL 60031 ("Best Western Gurnee").

21.     On information and belief, Defendant John Doe No. 7 owns and operates a hotel under the name of "Best Western Plus – The Inn and Suites at Market Square" at 2723 Sheridan Road, Zion, IL 60099 ("Best Western Market Square").

22.     On information and belief, Defendant John Doe No. 8 owns and operates a hotel under the name of "Best Western DeKalb Inn & Suites" at 1212 W. Lincoln Highway, DeKalb, IL 60115 ("Best Western DeKalb").

23.     On information and belief, Defendant John Doe No. 9 owns and operates a hotel under the name of "Best Western Legacy Inn & Suites Beloit" at 5910 Technology Drive, South Beloit, IL 61080 ("Best Western Beloit").

24.     On information and belief, Defendant John Doe No. 10 owns and operates a hotel under the name of "Best Western Oglesby Inn" at 900 Holiday Inn Street, Oglesby, IL 61348 ("Best Western Oglesby").

25.     On information and belief, Defendant John Doe No. 11 owns and operates a hotel under the name of "Best Western Plus Timber Creek Inn & Suites" at 3300 Drew Avenue, Sandwich, IL 60548 ("Best Western Timber Creek").

26.     The Defendants identified in paragraphs 2-25 above are hereinafter referred to collectively as "the Best Western Defendants."

## JURISDICTION AND VENUE

27.     This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

28.     This Court has personal jurisdiction over the Best Western Defendants.

29.     Venue for this action is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## THE PATENTS-IN-SUIT

30.     On March 30, 2004, the United States Patent and Trademark Office ("the USPTO") duly and legally issued U.S. Patent No. 6,714,559 ("the '559 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '559 Patent is attached as Exhibit A.

31.     On June 10, 2008, the USPTO duly and legally issued U.S. Patent No. 7,386,002 ("the '002 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '002 Patent is attached as Exhibit B.

32.     On May 19, 2009, the USPTO duly and legally issued U.S. Patent No. 7,535,921 ("the '921 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '921 Patent is attached as Exhibit C.

33.     On June 16, 2009, the USPTO duly and legally issued U.S. Patent No. 7,548,553 ("the '553 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '553 Patent is attached as Exhibit D.

34.     On April 14, 1998, the USPTO duly and legally issued U.S. Patent No. 5,740,366 ("the '366 Patent") titled "Communication Network Having Plurality Of Bridging Nodes Which Transmit A Beacon To Terminal Nodes In Power Saving State That It Has Messages Awaiting Delivery." A copy of the '366 Patent is attached as Exhibit E.

35.     On August 17, 1999, the USPTO duly and legally issued U.S. Patent No. 5,940,771 ("the '771 Patent") titled "Network Supporting Roaming, Sleeping Terminals." A copy of the '771 Patent is attached as Exhibit F.

36.     On April 16, 2002, the USPTO duly and legally issued U.S. Patent No. 6,374,311 ("the '311 Patent") titled "Communication Network Having A Plurality Of Bridging Nodes Which Transmit A Beacon To Terminal Nodes In Power Saving State That It Has Messages Awaiting Delivery." A copy of the '311 Patent is attached as Exhibit G.

37.     On November 25, 2008, the USPTO duly and legally issued U.S. Patent No. 7,457,646 ("the '646 Patent") titled "Radio Frequency Local Area Network." A copy of the '646 Patent is attached as Exhibit H.

38.     On August 13, 1996, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 5,546,397 ("the '397 Patent") titled "High Reliability Access Point For Wireless Local Area Network." A copy of the '397 Patent is attached as Exhibit I.

39.     On December 1, 1998, the USPTO duly and legally issued U.S. Patent No. 5,844,893 ("the '893 Patent") titled "System For Coupling Host Computer Means With Base Transceiver Units On A Local Area Network." A copy of the '893 Patent is attached as Exhibit J.

40.     On December 16, 2003, the USPTO duly and legally issued U.S. Patent No. 6,665,536 ("the '536 Patent") titled "Local Area Network Having Multiple Channel Wireless Access." A copy of the '536 Patent is attached as Exhibit K.

41.     On February 24, 2004, the USPTO duly and legally issued U.S. Patent No. 6,697,415 ("the '415 Patent") titled "Spread Spectrum Transceiver Module Utilizing Multiple Mode Transmission." A copy of the '415 Patent is attached as Exhibit L.

42.     On March 14, 2006, the USPTO duly and legally issued U.S. Patent No. 7,013,138 ("the '138 Patent") titled "Local Area Network Having Multiple Channel Wireless Access." A copy of the '138 Patent is attached as Exhibit M.

43.    On May 4, 2010, the USPTO duly and legally issued U.S. Patent No. 7,710,907 ("the '907 Patent") titled "Local Area Network Having Multiple Channel Wireless Access." A copy of the '907 Patent is attached as Exhibit N.

44.    On March 29, 2011, the USPTO duly and legally issued U.S. Patent No. 7,916,747 ("the '747 Patent") titled "Redundant Radio Frequency Network Having A Roaming Terminal Communication Protocol." A copy of the '747 Patent is attached as Exhibit O.

45.    On January 18, 2011, the USPTO duly and legally issued U.S. Patent No. 7,873,343 ("the '343 Patent") titled "Communication Network Terminal With Sleep Capability." A copy of the '343 Patent is attached as Exhibit P.

46.    On May 19, 2009, the USPTO duly and legally issued U.S. Patent No. 7,536,167 ("the '167 Patent") titled "Network Supporting Roaming, Sleeping Terminals." A copy of the '167 Patent is attached as Exhibit Q.

47.    The seventeen patents identified in paragraphs 30-46 are hereinafter referred to collectively as the "WLAN Patents."

48.    Innovatio owns all rights, title, and interest in and to, and has standing to sue for infringement of, the WLAN Patents, including the right to sue for and collect past damages.

## COUNT ONE
## INFRINGEMENT OF THE '559 PATENT

49.    Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

50.    The Best Western Defendants have infringed and continue to infringe one or more claims of the '559 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, wireless local area network products ("WLAN Products") to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where

9

such WLAN Products practice the methods of, by way of example and not limitation, at least claims 6, 7, and 8 of the '559 Patent.

## COUNT TWO
## INFRINGEMENT OF THE '002 PATENT

51.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

52.     The Best Western Defendants have infringed and continue to infringe one or more claims of the '002 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products practice the methods of, by way of example and not limitation, at least claims 14-16, 18, and 19 of the '002 Patent.

## COUNT THREE
## INFRINGEMENT OF THE '921 PATENT

53.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

54.     The Best Western Defendants have infringed and continue to infringe one or more claims of the '921 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products practice the methods of, by way of example and not limitation, at least claims 1, 2, 5, 7, and 8 of the '921 Patent.

## COUNT FOUR
## INFRINGEMENT OF THE '553 PATENT

55.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

56.     The Best Western Defendants have infringed and continue to infringe one or more claims of the '553 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products practice the methods of, by way of example and not limitation, at least claims 10-12, 17, 19, and 20 of the '553 Patent.

## COUNT FIVE
## INFRINGEMENT OF THE '366 PATENT

57.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

58.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Best Western Defendants have infringed and continue to infringe one or more claims of the '366 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products infringe, by way of example and not limitation, at least claims 5-7, 9-17, 19-24, 26-29, and 32 of the '366 Patent.

## COUNT SIX
## INFRINGEMENT OF THE '771 PATENT

59.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

60.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Best Western Defendants have infringed and continue to infringe one or more claims of the '771 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products infringe, by way of example and not limitation, at least claims 1-7 of the '771 Patent.

## COUNT SEVEN
## INFRINGEMENT OF THE '311 PATENT

61.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

62.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Best Western Defendants have infringed and continue to infringe one or more claims of the '311 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products infringe, by way of example and not limitation, at least claims 20-24, 26-30, 32-37, 39-41, 43-51, 53-56, 60, and 64 of the '311 Patent.

## COUNT EIGHT
## INFRINGEMENT OF THE '646 PATENT

63.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

64.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Best Western Defendants have infringed and continue to infringe one or more claims of the '646 Patent in violation of 35 U.S.C. § 271(a) by using, in this

judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products practice the methods of, by way of example and not limitation, at least claims 14-17, 19-22, 26-35, 39-40, 43-45, 47, 49-51, 53-56, 59-64, 66-69, 71-73, 79, 82-89, 91-94, 98-104, 107, 108, 111, 112, 114-123, 125-128, 130, 135-137, 143, and 144 of the '646 Patent.

## COUNT NINE
## INFRINGEMENT OF THE '397 PATENT

65.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

66.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Best Western Defendants have infringed and continue to infringe one or more claims of the '397 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products infringe, by way of example and not limitation, at least claims 1-5 of the '397 Patent.

## COUNT TEN
## INFRINGEMENT OF THE '893 PATENT

67.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

68.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Best Western Defendants have infringed and continue to infringe one or more claims of the '893 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests,

employees, and/or the public, and/or in their business operations, where such WLAN Products infringe, by way of example and not limitation, at least claims 7-11 of the '893 Patent.

## COUNT ELEVEN
## INFRINGEMENT OF THE '536 PATENT

69.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

70.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Best Western Defendants have infringed and continue to infringe one or more claims of the '536 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products infringe, by way of example and not limitation, at least claims 1, 5, 8, 10, 11, 13-17, 19, 20, and 49 of the '536 Patent.

## COUNT TWELVE
## INFRINGEMENT OF THE '415 PATENT

71.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

72.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Best Western Defendants have infringed and continue to infringe one or more claims of the '415 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products infringe, by way of example and not limitation, at least claims 11, 12, and 15 of the '415 Patent.

14

**COUNT THIRTEEN**
**INFRINGEMENT OF THE '138 PATENT**

73.    Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

74.    Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Best Western Defendants have infringed and continue to infringe one or more claims of the '138 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products infringe, by way of example and not limitation, at least claims 1, 5, 8, 10, 11, 13-15, 17, 18, 21, 24, 26, 28, and 36 of the '138 Patent.

**COUNT FOURTEEN**
**INFRINGEMENT OF THE '907 PATENT**

75.    Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

76.    Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Best Western Defendants have infringed and continue to infringe one or more claims of the '907 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products infringe, by way of example and not limitation, at least claims 1, 7, 10, 12, 13, 15-17, 20, 21, 23, 24, 30, 33, 35, 36, 38, 39, 40, 43, 44, and 46-50 of the '907 Patent.

## COUNT FIFTEEN
## INFRINGEMENT OF THE '747 PATENT

77.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

78.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Best Western Defendants have infringed and continue to infringe one or more claims of the '747 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products infringe, by way of example and not limitation, at least claims 1-3, 5-8, 11, 13, 16, 17, and 20-25 of the '747 Patent.

## COUNT SIXTEEN
## INFRINGEMENT OF THE '343 PATENT

79.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

80.     Innovatio believes that a reasonable opportunity for further investigation or discovery will likely show that the Best Western Defendants have infringed and continue to infringe one or more claims of the '343 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products infringe, by way of example and not limitation, at least claims 1-6, 8-12, 15-20, 22, 23, 25, 28-30, 31-36, 38-42, 45-50, 52, 53, 55, and 58-60 of the '343 Patent.

## COUNT SEVENTEEN
## INFRINGEMENT OF THE '167 PATENT

81.     Innovatio repeats and realleges the allegations of the preceding paragraphs 1 - 48 as if fully set forth herein.

82.     Innovatio believe that a reasonable opportunity for further investigation or discovery will likely show that the Best Western Defendants have infringed and continue to infringe one or more claims of the '167 Patent in violation of 35 U.S.C. § 271(a) by using, in this judicial district, WLAN Products to provide wireless network access to their customers, guests, employees, and/or the public, and/or in their business operations, where such WLAN Products practice the methods of, by way of example and not limitation, at least claims 73-77, 79-83, 85, 89-97, 100, 102-107, 109-113, 115, 119-127, 130, 132-134, and 203 of the '167 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Innovatio respectfully requests entry of judgment in its favor and the following relief, including:

A.      That the Best Western Defendants be adjudged to have infringed one or more claims of each of the WLAN Patents;

B.      That the Best Western Defendants and all related entities and their officers, agents, employees, representatives, servants, successors, assigns and all persons in active concert or participation with any of them, directly or indirectly, be preliminarily and permanently enjoined from using, or contributing or inducing the use of, any WLAN Product, system or network that infringes any WLAN Patent;

C.      That the Best Western Defendants account for damages sustained by Innovatio as a result of the Best Western Defendants' infringement of the WLAN Patents, including both pre- and post-judgment interest and costs as fixed by this Court under 35 U.S.C. § 284; and

17

D.     That the Court grant Innovatio such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Innovatio demands a trial by jury on all issues so triable.

Dated: July 11, 2011                              Respectfully submitted,


                                                  /s/ Matthew G. McAndrews
                                                  Matthew G. McAndrews
                                                  Raymond P. Niro, Jr.
                                                  Brian E. Haan
                                                  Gabriel I. Opatken
                                                  NIRO, HALLER & NIRO
                                                  181 West Madison St., Suite 4600
                                                  Chicago, Illinois 60602
                                                  Telephone: (312) 236-0733
                                                  Facsimile: (312) 236-3137
                                                  E-mail: mmcandrews@nshn.com
                                                  E-mail: rnirojr@nshn.com
                                                  E-mail: bhaan@nshn.com
                                                  E-mail: gopatken@nshn.com

                                                  *Attorneys for Plaintiff,*
                                                  INNOVATIO IP VENTURES, LLC

# EXHIBIT 9

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| INNOVATIO IP VENTURES, LLC, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| ABP CORPORATION, et al., | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**REDACTED VERSION**

Civil Action No. 1:11-cv-01638

District Judge Edmond E. Chang

Magistrate Judge Sidney I. Schenkier

**JURY TRIAL DEMANDED**

## DEFENDANTS' MOTION TO STAY THIS MATTER PENDING RESOLUTION OF CISCO SYSTEMS, INC. AND MOTOROLA SOLUTIONS, INC. v. INNOVATIO IP VENTURES, LLC, CASE NO. 1:11-CV-00425 (D. DEL.)

# Table of Contents

**Page**

I.      **INTRODUCTION** ...............................................................................................1

II.     **FACTUAL BACKGROUND** ..........................................................................3

      A.    The Parties, The Patents-In-Suit And The Present Action ......................................3

      B.    Innovatio Files Two More Lawsuits Against Other Customer Targets ...................5

      C.    In Parallel With Its Lawsuits, Innovatio Demands That Numerous Other Customer Targets License Its Patents ......................................................................6

      D.    Cisco And Motorola's Declaratory Judgment Suit Against Innovatio ...................6

III.    **ARGUMENT** .....................................................................................................7

      A.    This Case Should Be Stayed Under The Customer Suit Doctrine ..........................7

      B.    This Court Also May Exercise Its Inherent Power To Stay This Case In The Interests Of Judicial Economy .....................................................................11

           1.    Entry Of A Stay Will Not Prejudice Innovatio .........................................12

           2.    Entry Of A Stay Will Reduce The Burden Of Litigation On The Courts And The Parties .............................................................................13

           3.    Entry Of A Stay Will Simplify The Issues In Question And Streamline Trial ..........................................................................................13

IV.    **CONCLUSION** ...............................................................................................14

## Table of Authorities

**Page(s)**

*Card Activation Tech. v. 7-Eleven, Inc.*,
    No. 10-cv-4984, 2011 WL 663960 (N.D. Ill. Feb. 10, 2011) .......................................... 12

*Card Activation Tech. v. Pier 1 Imps., Inc.*,
    No. 09-cv-2021, 2009 WL 2956926 (N.D. Ill. Sep. 14, 2009) ........................ 9, 10, 11, 12

*Clark v. Lacy*,
    376 F.3d 682 (7th Cir. 2004) ......................................................................................... 10

*Commissariat A L'Energie Atomique v. Dell Comp. Corp.*,
    No. 04-cv-1999, 2004 WL 1554382 (D. Del. May 13, 2004) ..................................... 7, 13

*Delphi Corp. v. Auto. Techs. Int'l, Inc.*,
    No. 08-cv-11048, 2008 WL 2941116 (E.D. Mich. July 25, 2008) .................................... 8

*Glenayre Elecs., Inc. v. Jackson*,
    443 F.3d 851 (Fed. Cir. 2006) ....................................................................................... 13

*Honeywell Int'l Inc. v. Audiovox Commc'ns. Corp.*,
    No. 04-cv-1337, 2005 WL 2465898 (D. Del. May 18, 2005) ......................................... 11

*In re Cygnus Telecomms. Tech. LLC*,
    536 F.3d 1343 (Fed. Cir. 2008) ..................................................................................... 10

*In re Papst Licensing GmbH & Co. KG Litig.*,
    – F.Supp.2d –, 2011 WL 350427 (D.D.C. Feb. 2, 2011) .................................................. 7

*Kahn v. Gen. Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) ....................................................................................... 7

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ............................................................................... 7, 9, 11

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ................................................................................................. 11, 12

*Pfizer, Inc. v. Apotex, Inc.*,
    640 F.Supp.2d 1006 (N.D. Ill. 2009) ......................................................................... 12, 13

*T. J. Smith & Nephew, Ltd. v. Ferris Corp.*,
    No. 86-cv-5461, 1987 U.S. Dist. LEXIS 1603 (N.D. Ill. Feb. 27, 1987) ........................... 8

*Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*,
    No. 03-cv-7822, 2004 WL 422697 (N.D. Ill. Mar. 3, 2004) .......................................... 12

Accor North America, Caribou Coffee Co., Inc., Cosi, Inc., Dominick's Supermarkets, Inc., LQ Management LLC, Meijer, Inc., and Panera Bread Company ("Defendants") respectfully move this Court to stay this case pending the resolution of a separate action brought by the suppliers of products at issue in this action, *Cisco Systems, Inc. and Motorola Solutions, Inc. v. Innovatio IP Ventures, LLC,* Case No. 1:11-cv-00425 (D. Del.). As set forth below, this case should be stayed pursuant to the customer suit doctrine and to promote judicial efficiency.

## I.    INTRODUCTION

Plaintiff Innovatio IP Ventures, LLC ("Innovatio") is a patent holding company whose business is acquiring, licensing and litigating patents. Shortly after acquiring the seventeen patents-in-suit, Innovatio began a widespread campaign asserting the patents against certain wireless products referred to as "wireless local area network" or "WLAN" products. Innovatio's strategy included (1) filing this action against ten defendants; (2) filing a second action in the District of Nevada (the "Nevada Action") against another defendant; (3) filing a third action in the Middle District of Florida (the "Florida Action") against seven other defendants; and (4) initiating a substantial letter-writing campaign demanding that numerous other companies take licenses to the patents-in-suit, all targeting the same accused wireless products. Innovatio did not, however, file suit against any company that actually makes or sells the accused wireless products. Rather, Innovatio sued completely unrelated businesses such as bakeries, cafés, hotels, and grocery stores who are mere users of the accused technology. This is a common practice of patent licensing companies to assert patents against end users as opposed to the manufacturers of the accused products in order to attempt to inflate their ultimate recovery.

The wireless products at issue are purchased by the Defendants from third-party suppliers such as Cisco Systems, Inc. and Motorola Solutions, Inc. ("Suppliers"). Although the

Defendants offer wireless internet access to their employees and/or customers,[1] the products at issue are not Defendants', and Defendants do not possess technical information relating to the development and functionality of the accused products. The Suppliers make and sell the accused products in the case, and possess technical, marketing and sales documents, materials and witnesses pertinent to those products.

After being served with the complaint, the Defendants – as well as the defendants in the Nevada Action, Florida Action, and the numerous other licensing targets – turned to their suppliers to defend the wireless products at issue in this action. In response Cisco and Motorola, the largest suppliers, filed a declaratory judgment action for non-infringement and invalidity of the seventeen patents-in-suit, to resolve in one proceeding the issues raised by Innovatio with respect to their products. Cisco and Motorola stepped up, to protect their customers and products against infringement claims and in response to indemnity demands from their customers relating to Innovatio's claims.[2] This declaratory judgment action currently is pending in the District of Delaware, where Innovatio is incorporated (the "Supplier Action"). The Supplier Action is broader than this action because it not only includes the accused products purchased by the Defendants in this case, but covers all of Cisco and Motorola's wireless products that have been placed in issue by Innovatio's other lawsuits in Nevada and Florida and the numerous licensing demands issued by Innovatio to Cisco and Motorola's many other customers. In addition, Cisco and Motorola assert license and exhaustion defenses in their lawsuit based in part on their purchases of parts from their suppliers that, on information and belief, are licensed to the

---

[1]    For example, Cosi, Inc. offers free Wi-Fi to its customers at its bakery-cafés.

[2]    *See, e.g.*, Ex. 1, Compl. for Declaratory J. in *Cisco Sys., Inc. and Motorola Solutions, Inc. v. Innovatio IP Ventures, LLC*, Case No. 1:11-cv-00425 (D. Del.) ¶¶ 15-16.

Innovatio portfolio.[3]  Because Cisco and Motorola are suppliers of the accused products, they are in the best position to determine which of the accused products includes licensed parts.

Courts have fashioned the "customer suit doctrine" to deal with situations such as this one, where a patentee sues end users instead of the manufacturers of the accused devices. Applying that doctrine, courts stay infringement actions against customers while the suppliers of the products at issue resolve the disputes over their products.  A stay allows those with the actual technical knowledge of the accused products to defend them.  A stay also serves efficiency interests and reduces the risk of inconsistent outcomes on the same patents and products, as it allows the suppliers to resolve in one proceeding a patentee's allegations against the supplier's products instead of through piecemeal litigation against customers.  Because this action is a classic case of a patent holding company suing end users instead of the manufacturers of the accused products, Defendants respectfully request that this action be stayed pursuant to the customer suit doctrine pending the resolution of the Supplier Action in Delaware.

## II.   FACTUAL BACKGROUND

### A.   The Parties, The Patents-In-Suit And The Present Action

Innovatio was incorporated in February 2011, shortly before it acquired the patents-in-suit and filed this action.  Innovatio is a patent holding company, focused on acquiring, licensing and litigating patents for royalties.  *See, e.g.*, Ex. 1 at ¶ 4.  According to Innovatio, the patents are applicable to wireless products having certain standardized wireless functionality.  In particular, Innovatio's allegations are directed at the IEEE 802.11 standards, or "Wi-Fi."[4]  According to

---

[3]   For example, on information and belief, Broadcom Corporation (which sold the patents to Innovatio) is licensed to the portfolio.  Cisco and Motorola each use Broadcom parts in their accused products.

[4]   IEEE stands for the Institute of Electrical and Electronic Engineers and is a professional association and standards-setting organization.  IEEE 802.11 is a set of standards relating to wireless communications.

Innovatio, any wireless product practicing 802.11 standards allegedly infringes the patents-in-suit. *See* Ex. 2, ████████████████████████████████████ ("Claims of the Innovatio Patents cover, among other things, WLANs that use the IEEE 802.11 communication protocols. The operation and use of any such systems by [customer] would constitute infringement..."). According to Innovatio, every accused product that follows the 802.11 standards allegedly infringes its patents in the same manner, regardless of who supplies the particular product. *See id.*

On March 8, 2011, Innovatio filed this suit against the Defendants alleging infringement of fourteen patents related to their use of "WLAN products, systems and/or networks." *See* Compl., Mar. 8, 2011, ECF No. 1. On April 6, 2011, the Court granted Innovatio's motion to amend the complaint, adding three additional patents. *See* Min. Entry, Apr. 6, 2011, ECF No. 29. None of the Defendants has any role in the design or manufacture of "WLAN products, systems and/or networks." These companies are bakeries and cafés (Cosi, Inc., Panera Bread Company, and Caribou Coffee Co., Inc.), hotels (Accor North America, LQ Management LLC), and grocery stores (Dominick's Supermarkets, Inc., Meijer, Inc.). *See, e.g.*, Ex. 3, Compilation of Defs.' "About Us" Web Pages. This is a common tactic of patent holding companies to sue multiple end users who have no real knowledge of the accused products in order to secure many small settlements that add up to far more than the actual value, if any, of the patented invention while the companies that actually make the accused products are faced with mounting indemnity demands.

Cisco and Motorola participated in the development of the 802.11 standards, and design, market and sell the accused wireless products at issue in this case.[5] *See, e.g.*, 1st Am. Compl., Apr. 6, 2011, ECF No. 31 at ¶¶ 43-82; Ex. 4, Highlighted 802.11 Working Grp. Membership List. Cisco and Motorola are two of the largest suppliers of these products. According to an independent third-party provider of market research, Cisco and Motorola together currently have over ▇▇▇ market share in enterprise wireless LAN sales in North America. *See, e.g.,* Ex. 5, Feb. 2011 Dell'Oro Grp. Report on WLAN Market Shares.

### B. Innovatio Files Two More Lawsuits Against Other Customer Targets

On May 13, 2011, Innovatio filed a second lawsuit in the United States District Court for the District of Nevada. *See* Ex. 6, Compl. for Patent Infringement in *Innovatio IP Ventures, LLC v. MEI-GSR Holdings LLC*, Case No. 3:11-cv-00343 (D. Nev.). On June 3, 2011, Innovatio filed a third lawsuit in the United States District Court for the Middle District of Florida. *See* Ex. 7, Compl. for Patent Infringement in *Innovatio IP Ventures, LLC v. Rosen 7600, Inc. et al.*, Case No. 6:2011-cv-00930 (M.D. Fla.). In the Nevada and Florida Actions, Innovatio claims that other alleged users of WLAN products infringe the same 17 patents at issue in this case. *See* Ex. 6 at ¶¶ 7-23; Ex. 7 at ¶¶ 19-35. As with the present action, Innovatio's infringement allegations are directed at products with standardized 802.11 functionality. *See* Ex. 6 at ¶¶ 25-58; Ex. 7 at ¶¶ 45-84. Like the defendants in the present action, the defendants in the Nevada lawsuit (MEI-GSR Holdings) and Florida lawsuit (Rosen 7600, Inc., Rosen 9939, Inc., Rosen Centre, Inc., Rosen Hotels & Resorts, Inc., Rosen International, Inc., Rosen Plaza, Inc., Rosen Vista, Inc. (the "Rosen defendants")) do not make wireless products. Instead, MEI-GSR runs a casino and hotel

---

[5] The accused products include components that Cisco and Motorola purchase from other third parties, such as wireless chips.

in Reno, Nevada and the Rosen defendants run hotels and resorts near Orlando, Florida.  *See id*.

MEI-GSR Holdings and the Rosen defendants are Cisco customers.

### C.     In Parallel With Its Lawsuits, Innovatio Demands That Numerous Other Customer Targets License Its Patents

Innovatio also is engaging in a widespread letter-writing campaign targeted at purchasers

of wireless products with standardized 802.11 functionality.  In its letters, Innovatio accuses the

customers of "likely infringement" of 31 patents, including the 17 that are asserted in this case.

Notably, Innovatio demands immediate payment by the customers, within 30 days:

> [A]s discussed in greater detail below, ***this notifies [customer] of its likely infringement of the Innovatio Patents. * * * Innovatio proposes granting [customer] an upfront, paid-up license*** for its use under all of 31 of the issued Innovatio Patents.  The amount of Innovatio's paid-up license fee will be determined by the specific nature and extent of the use of WLAN (e.g., Wi·Fi) and meshing networking technologies by [customer] covered by the Innovatio Patents.  ***Innovatio will also discount the license fee if the parties are able to finalize a suitable license within the next 30 days.***

*See, e.g.,* Ex. 2 ▮▮▮ (emphasis added).  As of the filing of this motion, dozens of companies

uninvolved in the supply of wireless products have received such letters.

### D.     Cisco And Motorola's Declaratory Judgment Suit Against Innovatio

The defendants in this action and the Nevada and Florida Actions, along with numerous

other customer targets, contacted their wireless product suppliers to defend and indemnify them

and the suppliers' products.   These requests for assistance and indemnity go beyond the

defendants in the pending actions, and continue to grow on a daily basis as more and more

customer targets receive licensing demands from Innovatio.

Cisco and Motorola responded to Innovatio's growing threats against their products and

customers by filing the Supplier Action seeking a declaratory judgment that the asserted patents

are invalid and are not infringed.  Cisco and Motorola brought their action in Delaware because

Innovatio and Motorola are incorporated there.  Ex. 1 at ¶ 3-4.

III.     **ARGUMENT**

A.     **This Case Should Be Stayed Under The Customer Suit Doctrine**

This action should be stayed pursuant to the customer suit doctrine. Under the "customer-suit doctrine," courts stay infringement suits against customers to permit litigation brought by the manufacturer who produced the allegedly infringing product to proceed. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *In re Papst Licensing GmbH & Co. KG Litig.*, – F.Supp.2d – , 2011 WL 350427, *8 (D.D.C. Feb. 2, 2011). "Underlying the customer suit doctrine is the preference that infringement determinations should be made in suits involving the true defendant, the party that controls the product's design, rather than suits involving secondary parties such as customers of the manufacturer." *In re Papst Licensing*, 2011 WL 350427, at *8. The customer suit doctrine is routinely applied to stay customer suits in one forum while manufacturers of the products at issue resolve the dispute in another forum. *See, e.g.*, *Katz*, 909 F.2d at 1464; *see also Card Activation Techs. v. Pier 1 Imps., Inc.*, No. 09-cv-2021, 2009 WL 2956926, at *2 (N.D. Ill. Sep. 14, 2009) (granting motion to stay customer suit); *Honeywell Int'l Inc. v. Audiovox Commc'ns. Corp.*, No. 04-cv-1337, 2005 WL 2465898, at *4 (D. Del. May 18, 2005) (same); *Commissariat A L'Energie Atomique v. Dell Comp. Corp.*, No. 03-cv-484, 2004 WL 1554382, at *2 (D. Del. May 13, 2004) (same). The doctrine "guard[s] against possibility of abuse" in circumstances such as those presented here, where end users unrelated to the actual alleged infringement issues have been targeted by a patent holder. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). This Court previously has applied the doctrine in similar circumstances to those here to stay an infringement suit against customers where the manufacturer of the allegedly infringing products had filed an action in the District of Delaware seeking a declaratory judgment that the asserted patents were invalid. *See Card Activation Techs., Inc.*, 2009 WL 2956926, at *2. This Court found a stay was warranted

7

because "a finding of invalidity would moot a number of cases pending against [the manufacturer's customers]" and because the manufacturer "would undoubtedly be a necessary participant in [the customer] case, at the very least, for purposes of discovery." *Id*. at 4.

This case falls squarely within the customer suit doctrine. The bakeries, cafés, hotels and grocery stores in this case do not design or supply wireless products. *See* Section II.A *supra*. Defendants do not design, make, or sell the accused products; they purchase them from suppliers like Cisco and Motorola. Unlike Defendants, Cisco and Motorola possess technical documents and witnesses involved in the design, marketing and sale of the accused products. Defendants do not have access to these materials, nor do they possess the technical, licensing, and chip information necessary to defend against Innovatio's claims. As this Court has recognized, in such circumstances manufacturers of accused equipment, like Cisco and Motorola, are in the best position to effectively defend against assertions that their products infringe:

> ***[T]he manufacturer is clearly in the best position to either defend against a claim of infringement or to affirmatively assert invalidity of the holder's patent.*** Presumably it is the manufacturer who has the more detailed knowledge regarding the claim of infringement, the expertise in the area, and the primary interest in the outcome of the litigation.

*T. J. Smith & Nephew, Ltd. v. Ferris Corp.*, No. 86-cv-5461, 1987 U.S. Dist. LEXIS 1603, at *3-4 (N.D. Ill. Feb. 27, 1987) (emphasis added); *see also Delphi Corp. v. Auto. Techs. Int'l, Inc.*, No. 08-cv-11048, 2008 WL 2941116, at *4-5 (E.D. Mich. July 25, 2008) ("At the root of the preference for a manufacture's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit" and as "a matter of judicial economy, global settlement is preferred over piecemeal litigation.") (internal citation omitted).

Unlike the Defendants, Cisco and Motorola have substantial interests in defending their products against Innovatio's claims. Cisco and Motorola have numerous customers outside of the Defendants who purchase the accused wireless products from them, and employ many

personnel involved in the design, marketing, and sale of the accused products.  *See* Ex. 1 at ¶¶ 8, 15.  Additionally, Cisco and Motorola are members of the IEEE, and participated in the development of the 802.11 standards.  *See* Section II.A *supra*.  As such, Cisco and Motorola have a substantially greater interest in defending against Innovatio's claims, to protect their customers and products against adverse rulings, and globally resolve the issues raised by Innovatio.  *Card Activation Techs.*, 2009 WL 2956926, at *2  (citing *Katz*, 909 F.2d at 1464) ("[I]t is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.").  By contrast, the defendants in this action focus on completely different products and services, and had nothing to do with the development of the 802.11 standards.  *See* Section II.A *supra*.  As such, Cisco and Motorola's interest takes precedence.  *See Katz*, 909 F.2d at 1464.

Moreover, the Defendants do not share Cisco and Motorola's interest in resolving these issues globally for all of Innovatio's current and future targets.  To the contrary, each Defendant has a greater interest in settling the particular claims asserted against it, leaving the merits of this action to be determined, and thousands of other claims (and potential claims) unresolved.  Cisco and Motorola, on the other hand, have a substantial interest in resolving the merits, thus resolving Innovatio's claims against all of their customers.  *See, e.g., Delphi Corp.,* 2008 WL 2941116, at *4 ("[A] customer that did not have final responsibility for designing, developing or manufacturing a component of its production would have less incentive [than its manufacturer] to vigorously defend it against patent suits...").

A stay of this case also will serve the interest of judicial economy.  The identical set of patents is at issue in this case and the Delaware case, and Cisco and Motorola are the suppliers of

wireless equipment to a number of the defendants in this case. Because the Supplier Action will necessarily exhaust Innovatio's claims against Cisco and Motorola's customers in this action, there will be unnecessary duplication of work concerning claim construction, infringement, invalidity and other patent issues if the pending actions are permitted to proceed. *See Clark v. Lacy*, 376 F.3d 682, 687 (7th Cir. 2004) ("Our Court has held that this sort of redundancy counsels in favor of a stay."); *Card Activation Techs*, 2009 WL 2956926, at * 4. This is significant given that Cisco and Motorola products comprise a substantial portion of the market for wireless access points. *See* Section II.A *supra*.

Moreover, because Innovatio's claims are directed against products operating in accordance with the 802.11 standards, Innovatio's technical application of its patent claims to the accused wireless products will likely be the same for Cisco, Motorola and every other supplier. *See* Ex. 2 ▮ ("Claims of the Innovatio Patents cover, among other things, WLANs that use the IEEE 802.11 communication protocols."). As such, a judgment of noninfringement in the Supplier Action could globally resolve the issues in this action. Likewise, resolution of validity issues in the Delaware action could resolve this action as well. *See e.g.*, *In re Cygnus Telecomms. Tech. LLC*, 536 F.3d 1343, 1349 (Fed. Cir. 2008) (internal citation omitted) ("It is a firmly established principle that a judgment of a patent invalidity in one case can collaterally estop the patent owner from contesting invalidity in a subsequent case, as long as the patent owner had a full and fair opportunity to litigate the validity of the patent in the first case."). Further, the license and exhaustion defenses asserted by Cisco and Motorola also could fully resolve the issues in this action. Moreover, as Innovatio continues to file individual lawsuits and serially issue licensing demands against Cisco and Motorola's customers, the efficiencies

associated with resolving all of those disputes in the Supplier Action become more and more pronounced.

Courts regularly stay customer proceedings in favor of supplier actions even where there is not a complete identity of parties or products at issue. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[W]e find ourselves unable to assent to the suggestion that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical."); *Card Activation Tech*s, 2009 WL 2956926, at *3 (rejecting argument that stay of customer suit should be denied because customers were the only alleged direct infringers of asserted method or process claims). As this Court has previously recognized, such concerns are "always present" in considering the customer suit doctrine, but yet do "not provide a principled reason for denying a stay":

> In this case, [manufacturer] seeks a declaratory judgment of invalidity. To the extent that [manufacturer] is successful in the Delaware Case, the lawsuit will conclusively decide the validity of the [patent-in-suit] and thus moot the instant patent infringement action. ***Indeed, a finding of invalidity would moot a number of cases pending against [manufacturer's] customers... Although [patent holder] correctly notes that the Delaware Case is not certain to resolve all issues between [patent holder] and [customer], this argument assumes that [patent holder] is successful in Delaware. Such a concern is always present in considering the customer suit exception--it does not provide a principled reason for denying a stay... .***

*Id.* at *4; *see also Katz*, 909 F.2d at 1464 ("Although there may be additional issues involving the defendants in the [customer] action, their prosecution will be advanced if [patent holder] is successful on the major premises being litigated in Massachusetts [forum for manufacturer lawsuit], and may well be mooted if he is unsuccessful.").

### B. This Court Also May Exercise Its Inherent Power To Stay This Case In The Interests Of Judicial Economy

The Court also may exercise its inherent power to stay this case in the interests of judicial economy. District courts have inherent power to stay proceedings in the interest of "economy of

time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether to exercise this inherent power, courts evaluate three factors: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Tap Pharm. Prods, Inc. v. Atrix Labs, Inc.*, No. 03-cv-7822, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004); *see also Card Activation Techs. v. 7-Eleven, Inc.*, No. 10-cv-4984, 2011 WL 663960, at *1 (N.D. Ill. Feb. 10, 2011); *Pfizer, Inc. v. Apotex, Inc.*, 640 F.Supp.2d 1006, 1007 (N.D. Ill. 2009).

### 1.    Entry Of A Stay Will Not Prejudice Innovatio

A stay will not prejudice Innovatio. This case was filed a little over two months ago and is still in its very early stages. No discovery responses have been exchanged; only initial disclosures have been served. "As neither side has yet to begin the process of developing this case, there is no apparent prejudice or tactical disadvantage that the Plaintiff would be forced to endure if a stay were granted." *Card Activation Techs., Inc.*, 2011 WL 663960, at *2; *see also Tap Pharm. Prods, Inc.*, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004) ("Since the litigation is at such an early stage … I find they will not be unduly prejudiced by a stay."). Moreover, Innovatio will be permitted to pursue its claims of infringement against the accused products in the Supplier Action in Delaware, where Innovatio chose to incorporate. *See, e.g., Card Activation Techs.*, 2009 WL 2956926, at *4 ("[A]s [plaintiff] is a Delaware corporation, litigating in Delaware will not prejudice it.").

### 2. Entry Of A Stay Will Reduce The Burden Of Litigation On The Courts And The Parties

As discussed above, a stay of this action will avoid unnecessarily duplicative litigation and its associated burdens on the courts and the parties. The fact and expert discovery phases of the cases will be particularly unnecessary here, where the Defendants do not possess the technical information necessary to defend against Innovatio's infringement claims and will need to turn to Cisco, Motorola and other third parties for that information. This factor strongly favors a stay. *Pfizer*, 640 F. Supp. 2d at 1008.

### 3. Entry Of A Stay Will Simplify The Issues In Question And Streamline Trial

Entry of a stay will simplify and streamline the issues and may render all disputes in this case moot. As discussed above, Cisco and Motorola products comprise a substantial portion of the market for wireless access points, and thus resolution of Innovatio's claims relating to those products will greatly streamline the number of accused products at issue in this case. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 866 (Fed. Cir. 2006), *cert denied*, 549 U.S. 1030, 127 S.Ct. 582, 166 L.Ed.2d 429 (2006) (Where a patentee "has already received actual damages for the manufacture and sale of infringing devices which explicitly were a measure of the royalty for full rights in the patent," the patentee may not collect again from an additional defendant.). Moreover, because Innovatio's claims are directed at a technical standard and are likely the same for all accused wireless products (*see* Section II.A *supra*), a noninfringement finding in the Supplier Action could resolve all of Innovatio's claims, regardless of supplier. *See, e.g., Commissariat A L'Energie Atomique*, 2004 WL 1554382, at *3 ("If, for example, [patent holder's] patents were found invalid or the manufacturers would [sic] found to be not infringing, then there would be no need to proceed against the OEM/distributors or retailers, thus conserving judicial resources and expense to the parties."). Likewise, if Cisco and Motorola are successful

13

on their invalidity claims, the issues in this suit will be completely resolved as well. Finally, if Cisco and Motorola are successful in their licensing and exhaustion defenses, the issues in this suit will be fully or mostly resolved. Accordingly, this third factor also favors a stay.

## IV.    CONCLUSION

For the reasons stated above, the Defendants respectfully request that this Court stay Innovatio's customer suit against the Defendants pending the outcome of Cisco and Motorola's declaratory judgment action against Innovatio: *Cisco Systems, Inc. and Motorola Solutions, Inc. v. Innovatio IP Ventures, LLC*, Case No. 1:11-cv-00425 (D. Del.).

Dated:  June 15, 2011                    Respectfully submitted,

_/s/ Amanda J. Hollis_____
       Adam R. Alper (*Pro Hac Vice*)
       **KIRKLAND & ELLIS LLP**
       555 California Street
       San Francisco, California 94104
       415.439.1400
       adam.alper@kirkland.com

       Amanda J. Hollis (#6279821)
       **KIRKLAND & ELLIS LLP**
       300 North LaSalle
       Chicago, Illinois  60654
       312.862.2000 (Telephone)
       amanda.hollis@kirkland.com

       ***Attorneys for Defendants Cosi, Inc., Dominick's Supermarkets, Inc., and Meijer, Inc.***

_/s/  Kevin John O'Shea (with consent)_____
       Kevin John O'Shea (#6270380)
       **GREENBERG TRAURIG LLP**
       77 West Wacker Drive
       Chicago, Illinois  60601
       312.456.8400 (Telephone)
       osheak@gtlaw.com

       ***Attorney for Defendants Cosi, Inc. and Panera Bread Company***

15

/s/ Robert David Donoghue (with consent)

Robert David Donoghue (#6273840)
Daniel Long Farris (#6292794)
**HOLLAND AND KNIGHT LLP**
131 South Dearborn, 30th floor
Chicago, Illinois 60603
312.578.6553 (Telephone)
david.donoghue@hklaw.com
daniel.farris@hklaw.com

**Attorneys for Defendants Accor North America and Meijer, Inc.**


/s/ Vaibhav P. Kadaba (with consent)

Jennifer L Colvin (#6274731)
Matthew James Straub (#6273117)
Daniel Oscar Canales (#6296027)
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, Illinois 60606
312.673.7800 (Telephone)
jennifer.colvin@ogletreedeakins.com
matthew.straub@odnss.com
daniel.canales@ogletreedeakins.com

Matias Ferrario (Pro Hac Vice)
Taylor Higgins Ludlam (Pro Hac Vice)
Vaibhav P. Kadaba (Pro Hac Vice)
**KILPATRICK TOWNSEND & STOCKTON LLP**
1001 West Fourth Street
Winston Salem, North Carolina 27101
336.607.7300 (Telephone)
mferrario@kilpatricktownsend.com
taludlam@kilpatricktownsend.com
wkadaba@kilpatrickstockton.com

**Attorneys for Defendants Caribou Coffee Co., Inc. and Panera Bread Company**

/s/ *Steven L. Baron (with consent)*

Steven L. Baron (#6200868)
Steven P. Mandell (#6183729)
Sharon Renae Albrecht (#6288927)
**MANDELL MENKES LLC**
333 West Wacker Drive, Suite 300
Chicago, Illinois  60606
312.251.1000 (Telephone)
sbaron@mandellmenkes.com
smandell@mandellmenkes.com
salbrecht@mandellmenkes.com

*Attorneys for Defendant Dominick's Supermarkets,
Inc.*

/s/ *Neil J. McNabnay (with consent)*

Neil J. McNabnay *(Pro Hac Vice)*
Enrique D Duarte *(Pro Hac Vice)*
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201
214.747.5070 (Telephone)
mcnabnay@fr.com
duarte@fr.com

Joel David Bertocchi (#6227292)
**HINSHAW & CULBERTSON LLP**
222 North LaSalle Street, Suite 300
Chicago, Illinois  60601
(312) 704 3130 (Telephone)
jbertocchi@hinshawlaw.com

*Attorneys for Defendant LQ Management LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2011 a true and correct copy of the foregoing document,

**DEFENDANTS' MOTION TO STAY THIS MATTER PENDING RESOLUTION OF CISCO SYSTEMS, INC. AND MOTOROLA SOLUTIONS, INC. v. INNOVATIO IP VENTURES, LLC, CASE NO. 1:11-CV-00425 (D. Del.)**, was electronically filed with the Court via the CM/ECF system which sent notification of such filing to all Counsel of Record. In addition, I hereby certify that an unredacted version of the foregoing document and all exhibits filed under seal were sent via electronic mail on June 15, 2011 to all Counsel of Record.

Dated: June 15, 2011

*/s/ Amanda J. Hollis*

Amanda J. Hollis (#6279821)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
312.862.2000 (Telephone)
amanda.hollis@kirkland.com

*Attorney for Defendants Cosi, Inc.,*
*Dominick's Supermarkets, Inc., and Meijer,*
*Inc.*

# EXHIBIT 10

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – <span style="color:red">CM/ECF LIVE, Ver 4.2</span>
### Eastern Division

Innovatio IP Ventures, LLC

                                   Plaintiff,

v.                                                      Case No.: 1:11−cv−01638
                                                        Honorable Edmond E. Chang

Accor North America, et al.

                                   Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, July 8, 2011:

     MINUTE entry before Honorable Edmond E. Chang: With regard to Defendants' motion to stay [137], Plaintiff shall respond on or before 07/20/11. Defendants may reply on or before 07/26/11. Motion hearing is continued to coincide with the previously set status hearing of 08/03/11, but the time is reset to 9 a.m. Mailed notice(slb, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# EXHIBIT 11

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Edmond E. Chang | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 1638 | **DATE** | 6/17/2011 |
| **CASE TITLE** | Innovatio IP Ventures, LLC vs. ABP Corporation, et al. | | |

**DOCKET ENTRY TEXT**

Defendants' motion to file [127] under seal and motion to stay [125] are denied without prejudice.

■[ For further details see text below.]   Notices mailed by Judicial staff.

---

## STATEMENT

Defendants ask to file under seal a letter written by Plaintiff to a non-party (Exhibit 2 to R. 125). The asserted basis for sealing the letter is that the non-party customer has not consented to disclosure of its identity. That basis does not satisfy the limited grounds available to justify secrecy in court filings. *Baxter Int'l v. Abbott Laboratories*, 297 F.3d 544, 546-47 (7th Cir. 2002); *Union Oil v. Leavell*, 220 F.3d 562, 567-68 (7th Cir. 2000). Similarly, Defendants ask to file under seal a report (Exhibit 5 to R. 125) that describes the market share of Cisco and Motorola in the allegedly infringing products. In support of sealing, Defendants argue, "According to the License Agreement associated with the purchase of the report, however, the Defendants are not permitted to distribute the report publicly." R. 127 at ¶ 4. The motion does not cite a specific provision of the License Agreement. *Id.* Various provisions do seem to bar distribution outside the licensed location (paragraph 2 of the license) and even bar access to licensee's outside counsel (paragraph 3). But the Court cannot determine (a) why the underlying information is a trade secret or otherwise entitled to secrecy under controlling Seventh Circuit decisions or (b) how the disclosure of the information to even the Court (and opposing counsel, and perhaps even Defendants' counsel) would be consistent with the License Agreement. The latter concern is not necessarily one that the Court would enforce on its own (as opposed to being a matter between the Dell'Oro Group and its licensees), but it does call into question whether the information is entitled to secrecy when made part of a court filing. The motion to file under seal is thus denied without prejudice.

In light of the denial of the motion to file under seal, the Court will not consider the motion to stay in its present form, and thus the stay motion is denied without prejudice to refiling (a) a motion to file under seal that actually justifies sealing Exhibits 2 and 5 under Seventh Circuit law; (b) the stay motion with no redactions; or © a revised version of the stay motion that does not rely on Exhibits 2 and 5 (it might well be that Defendants can take this latter course). Finally, the Court notes that it would be helpful in a refiled stay motion for Defendants to establish, perhaps by affidavits, whether Cisco or Motorola supplied all, some portion, or none of the allegedly infringing products used by Defendants on a defendant-by-defendant basis.

**STATEMENT**

The point of that information is to permit the Court to determine whether only some portion (if any) of the case should be stayed, apportioned by either defendant or product or otherwise.  The Court understands that a successful invalidity argument by Cisco/Motorola could apply across-the-board regardless of whether those two companies supplied the products used by Defendants, but the information would be useful in any event.

# EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CISCO SYSTEMS INC., SCIENTIFIC-ATLANTA INC., ARRIS GROUP INC., and THOMSON INC., | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 07-671-SLR |
| | ) | |
| GPNE CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 17th day of April, 2008, having reviewed defendant's motion
to transfer and the papers filed in connection therewith;

IT IS ORDERED that said motion (D.I. 13) is denied, for the reasons that follow:

1. **Background.** In October 2007, plaintiffs Cisco Systems, Inc. ("Cisco") (a
California corporation having its headquarters in San Jose, California) and Scientific-
Atlanta, Inc. ("SA") (a wholly-owned subsidiary of Cisco with its headquarters in
Lawrenceville, Georgia) filed the above captioned action against defendant GPNE
Corporation ("GPNE") (a Delaware corporation having its principal place of business in
Honolulu, Hawaii) seeking declaratory relief with respect to U.S. Patent Nos. 6,282,406
(the "'2,406 patent"), 7,200,406 (the "'0,406 patent"), and 7,209,748 (the "'748 patent").
(D.I. 1)  By amended complaint filed in December 2007, plaintiffs ARRIS Group, Inc.
("ARRIS") (a Delaware corporation with its principal place of business in Suwanee,

Georgia) and Thomson, Inc. ("Thomson") (a Delaware corporation with its principal place of business in Indianapolis, Indiana) were added. (D.I. 7) In January 2008, defendant GPNE filed its answer and counterclaims of patent infringement as to all three of the patents in suit. (D.I. 12) GPNE also filed a motion to transfer the case to the Eastern District of Texas, based on the "first-filed" theory. (D.I. 13)

2. More specifically, on January 31, 2007, GPNE filed two patent infringement cases in the Eastern District of Texas. The first, filed against Time Warner Inc., Comcast Cable Communications LLC and Charter Communications, Inc., was settled and dismissed in November 2007 without the benefit of any substantive rulings by the court. (D.I. 17, ex. M) The second, filed against Samsung Telecommunications America ("Samsung"), L.P., LG Electronics Mobilecomm U.S.A., Inc., and HTC America Inc., remains pending only against Samsung, relates only to the '2,406 patent, and involves different technology than that at issue. Nevertheless, GPNE argues that transfer is warranted because "[t]he Eastern District of Texas was the first court to obtain possession of the subject matter in dispute in this action - specifically, the infringement of the '2,406 patent." (D.I. 21 at 2)

3. **Standard of review.** Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 208 (D. Del. 1998).

2

4. The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail." ADE Corp. v. KLA-Tencor Corp., 138 F. Supp. 2d 565, 567-68 (D. Del. 2001); Shutte, 431 F.2d at 25. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del. 1998); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., No. Civ. A. 01-199, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001); Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999). Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).

5. The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Although emphasizing that "there is no definitive formula or list of factors to consider," id., the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose

3

elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted). The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

6. With respect to the "first-filed rule," this rule was adopted more than fifty years ago by the Third Circuit Court of Appeals and described as follows: "In all cases of [federal] concurrent jurisdiction, the court which first ha[d] possession of the subject must decide it." Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941) (quoting Smith v. McIver, 22 U.S. (9 Wheat.) 532 (1824)). Consequently, the second filed action should be stayed or transferred to the court where the first-filed action is pending. Peregrine Corp. v. Peregrine Indus., Inc., 769 F. Supp. 169, 171 (E.D. Pa. 1991); Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc., No. Civ. A. 01-532, 2001 WL 1414868 (D. Del. Nov. 13, 2001). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988). The decision to transfer or stay the second action is within the discretion of the trial court. Id. at 972, 977. However, "invocation of the rule will usually be the norm, not the exception. Courts

4

must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule." Id. at 979.

7. **Analysis.** I have never before been confronted with a case in which the first-filed rule has been invoked for cases in which neither the parties nor the patents at issue are identical. Indeed, I find remarkable the assertion that a court obtains "possession of the subject matter" of a patent as soon as a single case involving that patent is filed in that jurisdiction. Needless to say, I find these arguments less than compelling. Also remarkable is the fact that parties are still basing motions to transfer on the "convenience" of the parties, when it is undeniable that national corporations can and do operate their businesses via electronic communications; litigation is not substantially different and should not be treated as such. Consistent with the rationale I have employed for at least the last 10 years, that absent a truly regional defendant or critical witnesses that cannot be compelled to attend trial, Delaware (especially for Delaware corporations such as GPNE) is at least as convenient as any other forum.

8. **Conclusion.** For the reasons stated above, defendant's motion to transfer is denied.

United States District Judge

5

# EXHIBIT 13

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| INNOVATIO IP VENTURES, LLC,<br><br>      Plaintiff,<br><br>     v.<br><br>ACCOR NORTH AMERICA; CARIBOU COFFEE CO., INC.; COSI, INC.; DOMINICK'S SUPERMARKETS, INC.; LQ MANAGEMENT LLC; MEIJER, INC. and PANERA BREAD COMPANY,<br><br>      Defendants. | Civil Action No. 1:11-cv-1638<br><br>District Judge Edmond E. Chang<br><br>Magistrate Judge Sidney I. Schenkier |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' AMENDED MOTION TO STAY THIS MATTER PENDING RESOLUTION OF CISCO SYSTEMS, INC. AND MOTOROLA SOLUTIONS, INC. V. INNOVATIO IP VENTURES, LLC, CASE NO. 1:11-CV-00425 (D. DEL.)

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ..................................................................................3

    A.      Status of the Present Suit ............................................................................3

    B.      Cisco's and Motorola's Later-Filed Declaratory Judgment Suit ..................3

    C.      Cisco's and Motorola's Involvement in the Current Suit .............................4

III.    DEFENDANTS CANNOT ESTABLISH THAT A STAY IS WARRANTED ......................4

    A.      Innovatio Enjoys a Presumptive Right to Have Its Dispute Heard in Illinois ...............4

    B.      The Customer Suit Exception Does Not Apply to the Current Proceeding..................6

        1.      Innovatio Has Ample Justification for Proceeding Against Defendants ..........6

        2.      The Delaware Action Will Not Resolve Most Issues Before This Court .........8

            a.      The Delaware Action Will Not Resolve Issues of Infringement Regarding Non-Cisco or Non-Motorola Products ................................9

            b.      The Delaware Action Will Not Resolve Issues of Infringement of Combination Claims .......................................................................12

            c.      The Delaware Action, In Its Current Form, Will Likely Not Resolve The Issue of Damages ...........................................................12

            d.      It Is Unlikely That The Delaware Action Will Resolve Issues Of Invalidity ..................................................................................13

            e.      Defendants Have Not Agreed to be Bound by the Delaware Court's Decision ..............................................................................14

    C.      The Interest of Judicial Economy Weighs Against a Stay...........................14

IV.     CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*A.P.T., Inc. v. Quad Environmental Techs.*,
    698 F. Supp. 718 (N.D. Ill. 1988) ................................................................... 6

*Air Prods. and Chems., Inc. v. MG Nitrogen Services., Inc.*,
    133 F. Supp.2d 354 (D. Del 2001) ................................................................. 7

*Broadcom Corp. v. International Trade Comm'n*,
    542 F.3d 894 (Fed. Cir. 2008) ..................................................................... 12

*Chase Manhattan Bank, USA v. Freedom Card, Inc.*,
    265 F. Supp.2d 445 (D. Del. 2003) ................................................................ 6

*Cherdak v. The Stride Rite Corp.*,
    396 F. Supp.2d 602 (D. Md. 2005) ................................................................ 9

*Cherokee Nation v. United States*,
    124 F.3d 1413 (Fed. Cir. 1997) ................................................................... 15

*Codex Corp. v. Milgo Elect. Corp.*,
    553 F.2d 735 (1st Cir. 1977) ......................................................................... 6

*Emerson Elect. Co. v. Black & Decker Mfg.*,
    606 F.2d 234 (8th Cir. 1979) ......................................................................... 6

*Genentech, Inc. v. Eli Lilly and Co.*,
    998 F.2d 931 (Fed. Cir. 1993) ....................................................................... 4

*IP Innovation L.L.C. v. Dell Computer Corp.*,
    2004 U.S. Dist. LEXIS 6129 (N.D. Ill Apr. 8, 2004) ................................... 14

*Itex, Inc. v. Mount Vernon Mills, Inc.*,
    2010 U.S. Dist. LEXIS 93987 (N.D. Ill. Sept. 9, 2010) ............................... 15

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) ............................................................. 4, 6, 9

*Katz v. Siegler*,
    909 F.2d 1459 (Fed. Cir. 1990) ..................................................................... 8

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
    342 U.S. 180 (1952) ...................................................................................... 6

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936) .................................................................................... 14

*Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.*,
    2007 WL 4376104 (E.D. Tex. 2007) ............................................................. 7

*Teleconference Sys. v. Proctor & Gamble Pharm.*,
    676 F. Supp.2d 312 (D. Del. 2009) ................................................................ 9

**Statutes**

35 U.S.C. § 271 ................................................................................................................ 2

35 U.S.C. § 282 (2010) ................................................................................................... 13

**Rules**

Patent Local Rule 2.1(b)(1) .............................................................................................. 9

## I.    INTRODUCTION

Plaintiff Innovatio IP Ventures, LLC ("Innovatio") owns a substantial number of patents related to wireless local area networks ("WLANs"), commonly referred to as "Wi-Fi." Defendants admit that they use Wi-Fi networks in connection with their business.  Innovatio seeks compensation for Defendants' infringement of seventeen Innovatio patents.

Cisco Systems, Inc. ("Cisco") and Motorola Solutions, Inc. ("Motorola") are two of many companies that manufacture wireless network equipment.  Cisco and Motorola have filed an action in Delaware seeking a judgment that: (1) their products do not infringe the Innovatio patents; and (2) the Innovatio patents are invalid.  Defendants have moved to stay this case pending resolution of the later-filed Delaware action.  Defendants' motion rests on three major assumptions.  Because those assumptions are not well-founded, their motion should be denied.

First, contrary to Defendants' argument, the Delaware action will not resolve many of the issues in this action.  The Delaware action will not resolve **any** issues of infringement as to the significant number of accused devices manufactured by companies other than Cisco or Motorola, nor will it resolve **any** issues of infringement as to the dozens of asserted combination claims, regardless of whose equipment is used.  For the few infringement issues that may be addressed, the Delaware action, in its current form, may not resolve the issue of damages because the Defendants, who significantly benefit from their infringement, are not parties to the Delaware action.  And, because many of the asserted patents have already survived (directly or indirectly) the scrutiny of prior assertion, a Federal Circuit appeal and/or a PTO reexamination proceeding, it is highly unlikely that the Delaware court will invalidate all of more than 340 asserted claims. Simply put, the Delaware action will resolve few, if any, of the issues currently before this Court.

Second, contrary to Defendants' argument, Innovatio's patents are not limited to essential features of the 802.11 WLAN standard.  While Innovatio has indeed asserted standard-essential

claims, a majority of its asserted claims cover optional features and/or WLAN implementations. Each equipment manufacturer must decide which of these optional features to include in its products. Even if the equipment is capable of operating in accordance with an optional feature, the user nevertheless determines whether to actually utilize that feature, and how to implement the wireless network. Because each product and each network is different, a determination in Delaware as to whether certain products or networks infringe will have little, if any, impact on the determination as to other products or networks, including those of Defendants.

Finally, contrary to Defendants' argument, the Defendants, not the equipment manufacturers, are the "real parties in interest." 35 U.S.C. § 271 creates a cause of action for infringement against "whoever" makes, uses or sells a patented invention – there is no statutory basis for ordering the priority of suit based on the nature of the infringer. Defendants derive substantial benefit from offering WLAN services to their customers and/or using WLAN for their business purposes. Moreover, the issue of infringement will hinge on: (1) the WLAN equipment used by the Defendants; (2) how such equipment is used and configured in the infringing networks; and (3) the benefits obtained by Defendants as a result of their infringement. This information will likely be exclusively in Defendants' possession or control.

Staying this suit serves no legitimate purpose. A stay will almost certainly result in duplicative litigation, as Innovatio and Defendants will still have to proceed with this action regardless of the outcome in the Delaware action. Staying this case will also prejudice Innovatio by delaying its ability to timely enforce its patent rights. On the other hand, denying a stay makes it more likely that the Delaware court will grant Innovatio's pending motion to dismiss the Delaware action. This will allow the parties to resolve all issues in a single case in the most convenient forum for resolving the dispute. Defendants' motion to stay should be denied.

## II.    FACTUAL BACKGROUND

### A.    Status of the Present Suit

In March 2011, Innovatio filed this patent infringement suit, alleging that ten defendants[1] infringe Innovatio's WLAN patents.    The parties have exchanged initial disclosures and Innovatio has served its first set of discovery requests.    To date, Defendants have admitted that they provide Wi-Fi network access to their customers or otherwise use wireless networks in connection with their business.    Defendants have also identified and/or produced documents identifying the various manufacturers of Defendants' WLAN equipment, including SonicWALL, Hewlett-Packard, Colubris Networks, Aruba Networks, Motorola and Cisco.    In addition, Innovatio is about to serve its initial infringement contentions, which include more than 2,400 pages of detailed description identifying how each Defendant infringes more than 340 asserted claims.    Defendants are scheduled to serve their invalidity contentions in about six weeks.

### B.    Cisco's and Motorola's Later-Filed Declaratory Judgment Suit

After Innovatio filed this suit, Cisco and Motorola allege that they received requests for indemnification from a few of the Defendants in this action and/or other parties to whom Innovatio has sent notice letters.    Neither Cisco nor Motorola has ever admitted, acknowledged, or provided any evidence that either of them is actually obligated to indemnify its customers for all, or even part, of the customer's liability to Innovatio.    Nevertheless, on May 13, 2011, nearly two months after Innovatio filed its suit in Illinois, Cisco and Motorola filed the Delaware action. Neither Cisco nor Motorola allege (nor could they allege) that Innovatio has directly accused either party of infringement.    Rather, the only basis alleged for bringing this suit was Cisco's and Motorola's alleged obligations to indemnify their customers.

---

[1] Innovatio has settled with three of the Defendants, leaving seven Defendants in the case.

3

On July 7, Innovatio filed a motion requesting, among other things, that the Delaware action be dismissed under the first-to-file rule or under Rule 12(b)(7) for failing to join necessary parties. The Delaware action has not progressed beyond the initial pleading stage.

### C. Cisco's and Motorola's Involvement in the Current Suit

Since filing the Delaware action, Cisco and Motorola have been actively involved in the present action. One of the firms representing Cisco and Motorola in the Delaware case (Kirkland & Ellis) is also representing at least Cosi, Dominick's and Meijer in this action. (*See* Ex. A to the Declaration of Matthew G. McAndrews ("McAndrews Decl."); June 15 Hrg. Tr. at pp. 8-9.) At least one Defendant (Cosi) has refused to participate in settlement discussions without Cisco and Motorola being involved. (*See id.* at Ex. B; June 10 e-mail from Hollis to McAndrews.)

## III. DEFENDANTS CANNOT ESTABLISH THAT A STAY IS WARRANTED

### A. Innovatio Enjoys a Presumptive Right to Have Its Dispute Heard in Illinois

When two cases involving substantially the same parties and issues are pending before two different federal courts, it is in the interest of justice to permit the parties to proceed before only one court. In determining which of the two courts should resolve the issue, the Federal Circuit has a well-established "general rule" that the forum of the first-filed action is favored unless there is "sound reason that would make it unjust or inefficient to continue the first-filed action." *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993); *see also Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081-82 (Fed. Cir. 1989) (holding "presumptive right of the first litigant to choose the forum weigh[s] heavily in [that litigant's] favor" and that right should be disturbed "only to prevent wrong or injustice."). Because this action preceded the Delaware action, and because the issues in dispute in Delaware are also before this Court (but not vice versa), Innovatio has a presumptive right to have this Court decide its infringement case, unless so proceeding would result in an injustice or wrong.

4

Judicial economy strongly supports having this matter heard in Illinois. Defendants have hundreds of locations (including for some, their corporate headquarters) in Illinois.[2] The issue of infringement will hinge on information regarding Defendants' WLAN equipment and how such equipment is used and configured in the infringing networks. Such information will likely be in Illinois. According to the patents, many of the inventors reside in Iowa, just a few hours from Chicago. Moreover, Defendants have identified the prosecuting attorneys as being persons of interest to their case. These attorneys reside in the Chicago area. On the contrary, there are only tenuous ties to Delaware, and at least two of the current Defendants are likely not subject to the jurisdiction of the Delaware court.[3] As such, Illinois is the epicenter of this dispute.

In addition, as will be explained below, the Delaware action will resolve only a fraction of the issues currently before this Court. Moreover, none of the Defendants have agreed to be bound by the decision of the Delaware Court. Thus, it is almost certain that staying the present suit in favor of the later-filed Delaware action will result in duplicative litigation.

Finally, the current action has advanced significantly farther than the Delaware action. Here, the parties have exchanged initial disclosures, and Innovatio has served discovery requests. The parties are scheduled to serve their infringement and invalidity contentions soon. Thus, the parties have made, and are continuing to make, significant progress in this action. In contrast, the Delaware case is still in its infancy, as the parties are still in the midst of briefing Innovatio's

---

[2] Motorola's headquarters are also in the Northern District of Illinois. (Ex. D to McAndrews Decl.; Del. Compl., at ¶ 3.) Accordingly, it would have been more convenient for it to file its complaint in Illinois, its home forum, or seek to intervene in the pending Illinois action. Instead Motorola and Cisco filed their action in Delaware, where many of the Illinois defendants do not have any locations, where certain of the Illinois defendants are not subject to jurisdiction, and where none of the relevant witnesses reside.

[3] Caribou Coffee Co., Inc. is a Minnesota corporation with a principal place of business in Minnesota, while Meijer, Inc. is a Michigan corporation with a principal place of business in Michigan. Neither Caribou Coffee nor Meijer have any locations in Delaware. And, both Caribou and Meijer have admitted to using wireless products manufactured by entities other than Cisco or Motorola.

motion to dismiss the Delaware action.[4] Each of these factors weighs heavily in favor of proceeding in Illinois. Defendants' motion should be denied for this reason alone.

## B.    The Customer Suit Exception Does Not Apply to the Current Proceeding

As noted, absent exceptional circumstances, where proceedings involving similar parties and issues are pending in different courts, the first filed case should have priority. *See Kahn,* 889 F.2d at 1081. Courts have tailored a narrow exception to this rule when a patentee files a suit against a customer, which is simply a reseller of the accused goods, while the manufacturer of the accused goods files a second suit, seeking a judgment that the accused products do not infringe. In this scenario, courts may invoke the "customer suit exception" to stay the first-filed customer suit. However, this exception is not applicable to the present case.

### 1.    Innovatio Has Ample Justification for Proceeding Against Defendants

As this Court has noted, the customer suit should not be stayed if the patentee has a legitimate purpose for proceeding against the customer instead of the manufacturer:

> [C]ourts give priority to the manufacturer's suit because all the necessary and real parties are before the court. **However, where the patentee has a separate interest in litigating against the customer, the "real party in interest" rationale for giving priority to the manufacturer's lawsuit is inapplicable. In these situations courts do not apply the customer suit exception.**

*A.P.T., Inc. v. Quad Environmental Techs.*, 698 F. Supp. 718, 721 (N.D. Ill. 1988) (emphasis added); *see also Emerson Elect. Co. v. Black & Decker Mfg.*, 606 F.2d 234 (8th Cir. 1979) (denying to apply customer suit exception where patentee had a reasonable basis for maintaining its action against the customer); *Codex Corp. v. Milgo Elect. Corp.*, 553 F.2d 735, 738 n.6 (1st

---

[4] Delaware courts adhere to the first-to-file rule. *See, e.g., Chase Manhattan Bank, USA v. Freedom Card, Inc.*, 265 F. Supp.2d 445, 448 (D. Del. 2003) (citations omitted). Denying Defendants' motion to stay may increase the chance that the Delaware court grants Innovatio's motion to dismiss, thereby allowing resolution of all of the issues in dispute in a single case and in the most convenient forum for the parties. *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952) (staying manufacturer's later-filed action in Delaware because it would not resolve all issues in the first-filed Illinois action).

Cir. 1977). This is especially true where the manufacturer makes only a component of the infringing good, making the end customer the direct infringer. *See Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.*, 2007 WL 4376104 at **2-3 (E.D. Tex. 2007) (holding that the customer suit exception was inapplicable where manufacturer supplied only a part of the infringing device); *Air Prods. and Chems., Inc. v. MG Nitrogen Services., Inc.*, 133 F. Supp.2d 354, 357 (D. Del. 2001) (same).

Defendants admit to operating and using wireless networks in connection with their business. Defendants have derived significant financial benefit, for example, by charging customers to use their wireless networks, by luring customers into their premises by offering free wireless network access, or by advertising on their networks. Likewise, these businesses realize significant efficiency gains in their business by, for example, using wireless devices for taking customer's orders or wireless networks for inventory purposes. Thus, to be fully compensated for the infringement, Innovatio will likely have to proceed against the customers. While a majority of Defendants' infringing networks do not use any Cisco or Motorola products, even in these networks that do use Cisco or Motorola products, such products are only one component of the overall wireless network. Because Innovatio has a substantial interest in proceeding against Defendants, the customer suit exception does not apply for this reason alone.

Defendants argue that Cisco and Motorola should defend these infringement claims because they were involved in the design and development of the accused products and the 802.11 standard. While peripherally interesting, this argument does not establish that either party is essential or even convenient for the resolution of Innovatio's claims against Defendants. This dispute focuses on (1) the identification and configuration of Defendants' WLAN

equipment; and (2) the benefits received by Defendants through the use of such equipment and networks.  Information regarding Cisco's or Motorola's design or marketing efforts is irrelevant.[5]

Defendants have also suggested that Cisco or Motorola should defend against these claims because these entities may be liable to indemnify their customers.  However, at no point has either Cisco or Motorola admitted that they will, in fact, indemnify their customers.[6]  Until Cisco and Motorola identify something more than a purely speculative future exposure, this Court should give no weight to Defendants' argument.  Defendants' motion to stay should be denied for this reason as well.[7]

### 2.      The Delaware Action Will Not Resolve Most Issues Before This Court

The primary question in evaluating the customer suit exception "is whether the issues and parties are such that the disposition of one case would be dispositive of the other."  *Katz v. Siegler*, 909 F.2d 1459, 1463 (Fed. Cir. 1990).  It does not make sense to stay the customer suit if there will be significant issues to still be litigated after the manufacturer suit.  As the Federal Circuit noted in denying a prior attempt by Motorola to invoke the customer suit exception:

> [I]n those cases in which a customer suit exception has been held to favor the forum of the second-filed action, **the second action would resolve all charges against the customers in the stayed suit, including liability for damages**. Such undertaking is absent in the case at bar. Were Kahn to prevail against Motorola on the issues raised in Illinois, he would still have to relitigate the question of infringement against General Motors, and perhaps also of validity.

---

[5] In addition, Defendants note that the accused Cisco and Motorola products contain wireless chips that these companies purchase from third parties.  Thus, in the event that detailed technical information is needed, it is possible that neither Cisco nor Motorola will have the relevant information.

[6] In response to one indemnification request, Cisco stated that the party seeking indemnification "must determine for itself whether it believes it needs to separately resolve this issue with Innovatio."  (*See* Ex. C to McAndrews Decl.; letter from Cisco to Rosen Hotels & Resorts dated May 23, 2011.)  While Cisco also suggests that this action would resolve all issues with respect to Cisco's products (a point that Innovatio contests), at a minimum this letter is further proof that the "customers" or network providers may still be liable for infringement even after the Delaware action is resolved.

[7] Defendants also note that Cisco has asserted that certain products contain chips from companies such as Broadcom, which are licensed to the Innovatio patents.  Not only is Innovatio not seeking damages for such products, but Defendants have not explained why they cannot assert the same defense, if applicable.

*Kahn*, 889 F.2d 1078, 1081-82 (Fed. Cir. 1989) (emphasis added). Other courts, have reached similar conclusions. *See Teleconference Sys. v. Proctor & Gamble Pharm.,* 676 F. Supp.2d 312, 321 (D. Del. 2009) (denying Cisco's motion to stay Delaware customer suit where Cisco's suit would not substantially streamline issues); *see also Cherdak v. The Stride Rite Corp.*, 396 F. Supp.2d 602, 605 (D. Md. 2005) (refusing to apply doctrine unless "second action would resolve *all* charges against the customers in the stayed suit.") (citations omitted; emphasis in original). Courts also consider whether the customers agree to be bound by the decision in the manufacturer's suit, which insures that duplicative litigation will not be necessary. *See id.* (holding customer suit exception not applicable where Cisco's customers did not agree to be bound, and thus, Cisco's manufacture suit would not be "outcome determinative.")

### a. The Delaware Action Will Not Resolve Issues of Infringement Regarding Non-Cisco or Non-Motorola Products

One typical wireless network configuration includes a wireless router that is connected to the Internet. The wireless router acts as an access point, which communicates with a terminal (*e.g.*, a laptop), allowing the user to wirelessly access the Internet. Innovatio's Complaint identified more than 340 asserted claims, including apparatus, system and method claims related to access points, terminals, and, importantly, **combinations including the two**.

There are dozens, if not hundreds, of entities that manufacture and sell wireless access points and terminals for use in wireless networks. Innovatio has requested that Defendants produce a complete listing, by make and model, of the wireless products that Defendants use in their infringing networks. Despite numerous requests, Defendants have yet to produce that information.[8] Defendants have, however, admitted to using wireless routers from numerous

---

[8] Patent Local Rule 2.1(b)(1) requires Defendants to produce documents sufficient to show the construction and operation of all accused products. In their Initial Disclosures, many of the Defendants alleged that they did not have such information because they did not manufacture or install the (cont.)

different manufacturers, including SonicWALL, Hewlett-Packard, Colubris Networks, Aruba Networks, Motorola and Cisco. (*See* Exs. E-K to McAndrews Decl.) Of the seven remaining Defendants, only two (Cosi and Meijer) appear to use mostly Cisco/Motorola products. Based on Defendants' moving papers (including Exs. 3-9 thereto), the remaining five Defendants use a small percentage of Cisco or Motorola products in their restaurants, hotels or retail stores:

- While Dominick's may use Motorola devices in its warehouses, the 700+ wireless devices used in Dominick's grocery stores are manufactured by Aruba Networks or HP. Less than 25% of Dominick's wireless equipment is manufactured by Motorola.

- Panera has admitted to using wireless devices from HP, Nomadix and Cisco. Despite the Court's request for such information, Panera has yet to identify what percentage of its wireless equipment is from Cisco.

- LQ Management has admitted that approximately one-quarter of the wireless products used at LQ's corporate office and La Quinta Inn hotel properties are from Cisco or Motorola. LQ has not identified what percentage of Cisco/Motorola products are in the corporate office as opposed to in its hotels.

- Caribou has admitted that it has purchased Motorola products for its Support Center and that "less than 2% of Caribou's overall wireless access points" are from Motorola. Caribou has not identified whether any of its coffee shops have Motorola equipment.

- Accor has admitted that it purchases its wireless products from third-party vendors. To date, Accor has not provided any indication that it has purchased or used any Cisco or Motorola product in connection with its business.

Rather than continuing to wait for a complete list of the accused products from the Defendants, Innovatio visited about 80 of the Defendants' locations in the Chicagoland area to test the equipment being used at these locations. Innovatio's investigation confirmed the limited information provided to date by Defendants, namely that an **overwhelming majority (~80%) of Defendants' locations do not use any wireless network equipment from either Cisco or**

---

products. Nevertheless, Defendants could have (and should have) at least identified the make and model of the accused routers and terminals, which are within the confines of the Defendants' premises. Innovatio also requested this information in a first set of discovery requests. Defendants' responses were due on July 11. Certain Defendants requested a three-week extension to serve their responses. As for the responses that Innovatio received, none included a complete list of Defendant's WLAN equipment.

**Motorola.**  (*See* Ex. M to McAndrews Decl.; chart summarizing certain equipment used by Defendants.)  Because these non-Cisco and non-Motorola products are not before the Delaware court, the Delaware action will not resolve whether these products infringe.  The customer suit exception does not apply for this reason alone.

Faced with the realization that most of their products are not before the Delaware court, Defendants have nevertheless argued that a decision in Delaware will resolve all infringement issues as to all products, regardless of manufacturer, because Innovatio's claims are directed to the "802.11 standard" and are the same for all parties.  This position is unfounded because it ignores that the 802.11 standard defines both features that are mandatory to practice the standard and features that are optional.  (*See* McAndrews Decl. at ¶¶ 19-20; providing examples from 802.11 standard.)  While Innovatio has asserted mandatory claims, it has also asserted many claims that cover optional features, as well as WLAN implementations.  (*See id.*)

The individual device manufacturer must determine which, if any, of the optional features to include in a wireless device.  Likewise, the end user must determine which optional features to activate and use in its wireless networks, and how to implement those networks.  The fact that a Cisco product has a feature does not mean that the same feature will be present in another manufacturer's device.  Also, the fact that a feature is present in a Cisco device does not mean that the end user has activated the feature.  Thus, a finding in the manufacturers' suit as to whether a Cisco or Motorola product infringes a claim covering an optional feature has little impact regarding infringement by another manufacturer's product or the end user's network.  Because the Delaware action will not resolve the issue of infringement as to numerous non-Cisco/Motorola products, particularly as to claims covering optional features or WLAN implementations, the customer suit exception does not apply to this case.

11

**b.** **The Delaware Action Will Not Resolve Issues of Infringement of Combination Claims**

In addition to not resolving infringement issues as to non-Cisco/Motorola equipment, the Delaware action will not resolve **any** issues as to the infringement of the asserted combination claims, regardless of whose equipment is used. Given that it is the Defendants who have put the wireless networks as a whole into service, including having configured/operated those networks and obtained the benefit from such networks, Innovatio will have to proceed against these Defendants for direct infringement of the asserted combination claims.

Defendants may argue that the Delaware action can address whether Cisco/Motorola are liable for indirect infringement by inducing others to infringe. Even this decision, though, will not be dispositive of whether the Defendants directly infringe. *See, e.g., Broadcom Corp. v. International Trade Comm'n*, 542 F.3d 894, 898 (Fed. Cir. 2008) (affirming holding that manufacturer did not induce infringement despite prior finding that network operators may have directly infringed). Because the Delaware action will not completely resolve issues related to the combination claims, the customer suit exception does not apply for this reason as well.

**c.** **The Delaware Action, In Its Current Form, Will Likely Not Resolve The Issue of Damages**

Finally, even for the relative few liability issues that may be addressed by the Delaware court (i.e., infringement of only the standard-essential apparatus claims and only as to the Cisco/Motorola products used by Defendants), the Delaware court may not be able to award damages sufficient to fully compensate Innovatio. As previously noted, Defendants have significantly benefitted from operating and using the infringing networks. Thus, Innovatio can only be fully compensated if any damages award includes compensation for the benefits of the inventions obtained by the Defendants. Cisco and Motorola do not have information in their possession regarding the extent of such benefits, nor have they admitted liability to the full extent

12

of such amounts. Thus, unless: (1) Cisco and Motorola admit that they are responsible for any damages awarded as a result of their customer's use of the infringing products; or (2) Cisco's and Motorola's customers are joined to the Delaware action, it will be impossible for the Delaware court to award damages adequate to fully compensate Innovatio for Defendants' infringement.

### d. It Is Unlikely That The Delaware Action Will Resolve Issues Of Invalidity

All issued patents enjoy a presumption of validity. *See* 35 U.S.C. § 282 (2010). A finding in Delaware that all asserted claims are invalid would dispose of Innovatio's claims against Defendants. Cisco and Motorola, however, must invalidate more than 340 claims in the seventeen asserted patents to get that result. These patents cover different aspects of wireless networks. The patents stem from several different families with different inventors and priority dates. Thus, even in the unlikely event that Cisco or Motorola uncover an invalidating reference, it is unlikely that a single reference will invalidate the entire portfolio. In addition, four of the patents currently asserted have been previously asserted against other major, sophisticated players in the wireless space, including Agere, Qualcomm and ST Micro. These defendants vigorously searched for prior art, which was submitted to the PTO and was considered during the prosecution of the children cases off these four patents. Several of these children cases have since issued as patents and are among the patents currently asserted by Innovatio.

Moreover, one patent has survived an appeal and PTO reexamination, with both the Federal Circuit and PTO confirming the validity of this patent. The arguments raised during those proceedings were also considered during the prosecution of children cases claiming priority to this patent. Thus, many of the asserted patents have survived (directly or indirectly) the scrutiny of the Federal Circuit and PTO (twice). The likelihood that Cisco and Motorola can

invalidate hundreds of "battle-tested" claims in seventeen asserted patents is extremely low. Thus, it is unlikely that the Delaware action will completely resolve the issue of validity either.

> ### e. Defendants Have Not Agreed to be Bound by the Delaware Court's Decision

Defendants are presumably aware that courts consider whether a customer agrees to be bound by the outcome in the manufacturer's suit when deciding whether to apply the customer suit exception. Nevertheless, to date, none of the Defendants has agreed to be bound by the outcome of the Delaware action, further undermining their argument that this case should be stayed. *See IP Innovation L.L.C. v. Dell Computer Corp.*, 2004 U.S. Dist. LEXIS 6129 (N.D. Ill. Apr. 8, 2004) ("Neither does it promote judicial economy to await for ultimate resolution of the manufacturer case when there is no agreement from IP Innovation or Dell to be bound by the outcome of the issues in the manufacturer suit, enabling later disputes over subjects such as collateral estoppel, patent validity, and the party responsible for the manufacture of the products at issue."). The customer suit exception does not apply for this reason as well.

> ### C. The Interest of Judicial Economy Weighs Against a Stay

Courts have the inherent authority to stay cases in the interest of justice. However, where, as here, the non-movant will be prejudiced, the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Defendants have not, and cannot, meet this burden.

First, a stay will not reduce the burden of litigation on the parties or the court. Illinois is the epicenter of this dispute, with key information and witnesses being in, or near, Illinois. The only tie to Delaware is that Innovatio is incorporated there. Moreover, the Delaware action can only resolve a small fraction of the issues before this Court. Thus, if this case is stayed, it is almost certain that Innovatio and Defendants will have to proceed with a duplicative action

before this Court regardless of the outcome of the Delaware action. On the other hand, denying the requested stay will increase the likelihood that the Delaware court grants Innovatio's pending motion to dismiss, resulting in a single case in the most convenient forum for the parties.

Second, the Delaware action will not simplify the issues in dispute. The Delaware action will not address **any** of the asserted combination claims, nor will it address the vast majority of the wireless products used by Defendants from manufacturers other than Cisco and Motorola. Because each manufacturer and network operator decides on the features to implement, a ruling in Delaware will have little, if any, impact on this action. And while Defendants argue that the Delaware action may resolve issues of validity (a point that Innovatio disputes), this Court has declined to stay patent cases simply because the issue of validity is being addressed in another case, particularly where, as here, the patent's validity had already been tested. *See Itex, Inc. v. Mount Vernon Mills, Inc.*, 2010 U.S. Dist. LEXIS 93987 at *7 (N.D. Ill. Sept. 9, 2010) (holding it was "overly speculative to stay this case based on the possibility that the [other] defendants will overcome the presumption of patent validity" where patent had survived reexamination).

Finally, Innovatio will be severely prejudiced by a stay. Innovatio would be forced to spend significant resources litigating a suit in Delaware that resolves few, if any, issues, all the while Defendants and other entities continue to infringe Innovatio's patents. Given that the Delaware case is still in its infancy, and taking into consideration the time for an appeal, it could be years before this case would resume. This would prejudice Innovatio, as witness's memories will have likely faded, infringing equipment and networks changed and/or been discarded and documents lost or destroyed. *See, e.g., Cherokee Nation v. United States*, 124 F.3d 1413, 1418 (Fed. Cir. 1997). Thus, the Court should decline to exercise its authority to stay this suit.

## IV. CONCLUSION

For the foregoing reasons, Innovatio requests that Defendants' motion be denied.

Respectfully submitted,


Dated: July 20, 2011                    /s/ Matthew G. McAndrews
                                        Matthew G. McAndrews
                                        Raymond P. Niro, Jr.
                                        Brian E. Haan
                                        Gabriel I. Opatken
                                        NIRO, HALLER & NIRO
                                        181 West Madison St., Suite 4600
                                        Chicago, Illinois 60602
                                        Telephone: (312) 236-0733
                                        Facsimile: (312) 236-3137
                                        E-mail: mmcandrews@nshn.com
                                        E-mail: rnirojr@nshn.com
                                        E-mail: bhaan@nshn.com
                                        E-mail: gopatken@nshn.com

                                        *Attorneys for Plaintiff,*
                                        INNOVATIO IP VENTURES, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 20, 2011 the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' AMENDED MOTION TO STAY THIS MATTER PENDING RESOLUTION OF CISCO SYSTEMS, INC. AND MOTOROLA SOLUTIONS, INC. V. INNOVATIO IP VENTURES, LLC, CASE NO. 1:11-CV-00425 (D. DEL.)** was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.

Matias Ferrario
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston Salem, NC 27101
mferrario@kilpatricktownsend.com

Vaibhav P. Kadab
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
wkadaba@kilpatricktownsend.com

Taylor H. Ludlam
Kilpatrick Townsend & Stockton LLP
3737 Glenwood Ave., Suite 400
Raleigh, NC 27612
taludlam@kilpatricktownsend.com

Daniel O. Canales
Jennifer L. Colvin
Matthew J. Straub
Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
155 N. Wacker Dr.. Suite 4300
Chicago, Illinois 60606
Daniel.canales@ogletreedeakins.com
Jennifer.colvin@ogletreedeakins.com
Matthew.straub@ogletreedeakins.com

*Attorneys for Caribou Coffee Co., Inc.*

R. David Donoghue
Daniel L. Farris
Holland & Knight LLP
131 S. Dearborn St., 30th Floor
Chicago, Illinois 60603
david.donoghue@hklaw.com
daniel.farris@hklaw.com

*Attorneys for Accor North America*

Matias Ferrario
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston Salem, NC 27101
mferrario@kilpatricktownsend.com

Vaibhav P. Kadab
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
wkadaba@kilpatricktownsend.com

Taylor H. Ludlam
Kilpatrick Townsend & Stockton LLP
3737 Glenwood Ave., Suite 400
Raleigh, NC 27612
taludlam@kilpatricktownsend.com

Daniel O. Canales
Jennifer L. Colvin
Matthew J. Straub
Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
155 N. Wacker Dr.. Suite 4300
Chicago, Illinois 60606
Daniel.canales@ogletreedeakins.com
Jennifer.colvin@ogletreedeakins.com
Matthew.straub@ogletreedeakins.com

Kevin J. O'Shea
Greenberg Traurig, LLP
77 West Wacker Drive
Chicago, Illinois 60601
osheak@gtlaw.com

*Attorneys for Defendant Panera*
*Bread Company*

17

Amanda J. Hollis
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Amanda.hollis@kirkland.com

Adam R. Alper
Kirkland & Ellis LLP
55 California Street
San Francisco, CA 94104

Steven P. Mandell
Steven L. Baron
Sharon R. Albrecht
Mandell Menkes LLC
333 W. Wacker Drive, Suite 300
Chicago, Illinois 60606
smandell@mandellmenkes.com
sbaron@mandellmenkes.com
salbrecht@mandellmenkes.com

*Attorneys for Dominick's Supermarkets, Inc.*

Enrique D. Duarte
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Duarte@fr.com

Neil J. McNabnay
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
mcnabnay@fr.com

Joel D. Bertocchi
Hinshaw & Culbertson, LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
jbertocchi@hinshawlaw.com

*Attorneys for LQ Management, LLC*

Amanda J. Hollis
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Amanda.hollis@kirkland.com

Adam R. Alper
Kirkland & Ellis LLP
55 California Street
San Francisco, CA 94104

James G. Goggin
Verrill Dana, LLP
1 Portland Square
Portland, ME 04112
jgoggin@verrilldana.com

Kevin J. O'Shea
Greenberg Traurig, LLP
77 West Wacker Drive
Chicago, Illinois 60601
osheak@gtlaw.com

*Attorneys for Cosi, Inc.*

Amanda J. Hollis
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Amanda.hollis@kirkland.com

Adam R. Alper
Kirkland & Ellis LLP
55 California Street
San Francisco, CA 94104

R. David Donoghue
Daniel L. Farris
Holland & Knight LLP
131 S. Dearborn St., 30th Floor
Chicago, Illinois 60603
david.donoghue@hklaw.com
daniel.farris@hklaw.com

*Attorneys for Meijer, Inc.*

/s/ Matthew G. McAndrews
*Attorney for Plaintiff,*
INNOVATIO IP VENTURES, LLC

18